## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| AKH COMPANY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  13-cv-2003 JAR/KGG |
| | ) | |
| UNIVERSAL UNDERWRITERS INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## AKH COMPANY'S OPPOSITION TO
## <u>UNIVERSAL'S MOTION TO BIFURCATE</u>

## TABLE OF CONTENTS

**Page**

I.    NATURE OF MATTER BEFORE THE COURT ........................................................... 1

II.    CONCISE STATEMENT OF FACTS .......................................................................... 1

III.    QUESTION PRESENTED ............................................................................................ 5

IV.    BIFURCATION IS NOT WARRANTED .................................................................... 5

    A.    Universal Has Not Demonstrated an Actual Conflict Even Requiring a Choice of Law Analysis ......................................................................................... 5

    B.    Bifurcation of Choice of Law Will Not Expedite or Economize This Case ............................................................................................................................ 5

    C.    Universal Shows No Conflict of Laws Requiring a Choice of Law Analysis ..................................................................................................................... 8

        1.    California Law Does Not Support Universal's Reimbursement Claim ............................................................................................................... 8

        2.    Kansas Would Likely Also Deny Universal Reimbursement ............. 10

        3.    Where The Outcome Will Not Change, There Is No Conflict of Laws .............................................................................................................. 10

V.    NO DISCOVERY IS NECESSARY ON CHOICE OF LAW ................................... 10

    A.    Universal Fails to Identify Any Specific Discovery Needed ............................ 10

    B.    Prior Declarations Sufficient To Determine Where Policy Was Made ......... 12

VI.    INTERLOCUTORY APPEAL IS INAPPROPRIATE ............................................. 14

VII.    CONCLUSION ............................................................................................................ 15

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Angelo v. Armstrong World Industries, Inc.*,
    11 F.3d 957 (10th Cir. 1993) ................................................................7

*Conrad v. Phone Directories Co., Inc.*,
    585 F.3d 1376 (10th Cir. (Okla.) 2009) ...............................................15

*Easton v. City of Boulder*,
    776 F.2d 1441 (10th Cir.1985) ...........................................................14

*Garcia v. United States Air Force*,
    533 F.3d 1171 (10th Cir.2008) ...........................................................12

*Gonzalez-Marin v. Equitable Life Assurance Soc'y of U.S.*,
    845 F.2d 1140 (1st Cir. (P.R.) 1988) ..................................................14

*Nunez v. City of San Diego*,
    114 F.3d 935 (9th Cir. (Cal.) 1997) ......................................................9

*Pimentel & Sons Guitar Makers, Inc. v. Pimentel*,
    477 F.3d 1151 (10th Cir.2007) ...........................................................15

*Price v. Western Resources, Inc.*,
    232 F.3d 779 (10th Cir.2000) .............................................................11

*Soma Med. Int'l v. Standard Chartered Bank*,
    196 F.3d 1292 (10th Cir. (Utah) 1999) ...............................................14

*Stevens v. Water Distr. One of Johnson County*,
    561 F. Supp. 2d 1224 (D. Kan. 2008) ...................................................1

*Tri-State Contractors, Inc. v. Fagnant*,
    393 F. App'x 580 (10th Cir. (Wyo.) 2010) .........................................15

*United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*,
    210 F.3d 1207 (10th Cir. (Colo.) 2000) ................................................8

*United Wats, Inc. v. Cincinnati Ins. Co.*,
    971 F. Supp. 1375 (D. Kan. 1997) ......................................................10

*York. v. Am. Tel. & Tel. Co.*,
    95 F.3d 948 (10th Cir. (Okla.) 1996) ..................................................14

*Zurich Ins. Co. (U.S. Branch) v. Killer Music, Inc.*,
    998 F.2d 674 (9th Cir. (Cal.) 1993) ......................................................8

**STATE CASES**

*Aerojet-General Corp. v. Transp. Indem. Co.*,
    17 Cal. 4th 38 (1997) ........................................................................................8

*Blue Ridge Ins. Co. v. Jacobsen*,
    25 Cal. 4th 489 (2001) .....................................................................................9

*Buss v. Superior Court*,
    16 Cal. 4th 35 (1997) ........................................................................................8

*Horace Mann Ins. Co. v. Barbara B.*,
    4 Cal. 4th 1076 (1993) .....................................................................................8

*In re K.M.H.*,
    285 Kan. 53 (2007) ...........................................................................................6


**DOCKETED CASES**

*Bar-K, Inc. v. Sec. Title Corp.*,
    No. A115199, 2010 WL 3333391 (Cal. Ct. App. Aug. 25, 2010)......................9

*Black & Veatch Int'l Co. v. Foster Wheeler Energy Corp.*,
    No. 00–2402–JAR, 2002 WL 1934372 (D. Kan. Aug. 12, 2002) .................1, 6

*Emp'rs Reinsurance Corp. v. Swan*,
    No. 91–2459, 1993 WL 339068 (D. Kan. Aug. 3, 1993) ................................14


**FEDERAL RULES AND STATUTES**

28 U.S.C. § 1292(b) ...............................................................................................15

Fed.R.Civ.P. 26(d) .................................................................................................11

Fed. R. Civ. P. 42(b) .......................................................................................1, 5, 7

Rule 56(d) ...............................................................................................................11


**OTHER AUTHORITIES**

David A. Gauntlett, *No Discovery Is Appropriate in Addressing Coverage for Intellectual
    Property Disputes*, Coverage (A.B.A. Comm. on Ins. Coverage Litig.), July/August
    2009....................................................................................................................12

## I.    NATURE OF MATTER BEFORE THE COURT

AKH Company ("AKH") opposes Universal Underwriters Insurance Company's ("Universal's") motion for bifurcation of the choice of law issue from other issues [Doc. 68] ("Motion"). The Motion should be denied because choice of law is decided on an issue-by-issue basis that first requires individual analysis of a particular issue to determine whether an actual conflict of law exists.[1] Bifurcating the case would require the parties and the Court to address speculative issues before determining that any conflict exists and then address issues twice—first on the choice of law, then on the merits of the issue itself. This redundant approach is particularly inefficient because no choice of law need even be considered until there is an actual conflict (i.e., a conflict that results in a different outcome). If the application of either state's law has the same result, there is no need to engage in a choice of law analysis, let alone beforehand.

Furthermore, Universal's motion fails to clearly identify all distinct issues it wants choice of law to be decided about, leaving AKH to guess what it needs to respond to in addressing the Motion. Universal cannot later identify those specific issues as an afterthought in its Reply,[2] leaving AKH no opportunity to address them. Universal has failed to show that bifurcation is necessary for "convenience, to avoid prejudice, or to expedite and economize" the case under Fed. R. Civ. P. 42(b).

## II.    CONCISE STATEMENT OF FACTS

1.    On February 12, 2013, Universal suggested in its Motion to Transfer Venue [Doc. 18] that "UUIC will call AKH's Hratch Andonian to testify about the facts surrounding the issuance of the UUIC Policy to AKH in California. Mr. Andonian was an active participant in AKH's negotiations with UUIC for the coverages afforded under the UUIC Policy, AKH's approvals of the policy binder, AKH's negotiations for the renewals of the UUIC Policy, and

---

[1] *Black & Veatch Int'l Co. v. Foster Wheeler Energy Corp.*, No. 00–2402–JAR, 2002 WL 1934372, at *1 (D. Kan. Aug. 12, 2002) ("[A] choice of law determination is made on an issue-by-issue, and not case-by-case, basis.").

[2] Universal may not raise new arguments in its Reply. *Stevens v. Water Distr. One of Johnson County*, 561 F. Supp. 2d 1224, 1232 (D. Kan. 2008).

AKH's acceptance of the UUIC Policy, all of which occurred at AKH's California headquarters. (Perez Decl., ¶¶5-7.)" [Doc. 18:16–17.]

a. In support of that Motion to Transfer, Universal offered the Declarations of Jena Palmer [Doc. 20-1] and Brent Perez. [Doc. 18-3.]

b. The February 8, 2013 Declaration of Jena Palmer discusses her handling of AKH's claim and her issuance of the first reservation of rights letter from Texas, but does not discuss policy issuance/formation. [Doc. 20-1.]

c. The February 12, 2013 Declaration of Brent Perez does not state when he first became employed with Universal or when he first dealt with AKH. [Doc. 18-3.] It states only that "I was formerly employed as an account executive by Zurich American Insurance Company ('ZAIC'), the parent company of Universal Underwriters Insurance Company ('UUIC')," [Doc. 18-3:2 ¶ 2], and that "I took over handling of this account from Earl Wong, another ZAIC account executive. At that time, Mr. Wong was also a licensed Property & Casualty agent in California, and a California resident." [Doc. 18-3:2–3 ¶ 3.]

2.  Two days later, on February 15, 2013 Universal filed its Motion to Stay the Deadline to Respond to AKH's Motion for Partial Summary Judgment. [Doc. 21.]

a. In that Motion to Stay, Universal claimed "UUIC will need to depose Michael Schaeper (AKH's President) and Hratch Andonian (founder, Secretary/Treasurer and Vice-Chairman of AKH) regarding the following issues before responding to AKH's motion for partial summary judgment:  a.  AKH's involvement in the negotiations, issuance, and delivery of the UUIC Policy to AKH each year, as well as AKH's tender of the RT Lawsuit to UUIC through the California account executive, to establish that California law should apply to this coverage action …." [Doc. 21:3–4.]

b. In support of that Motion to Stay, Universal offered the February 15, 2013 Declaration of Karen Bizzini which averred "When one compares the declarations

2

of Jena Palmer and Brent Perez filed in support of UUIC's motion to transfer venue with the Declaration of Michael Schaeper filed in support of AKH's motion for partial summary judgment, it is apparent that the parties completely disagree on the facts concerning the negotiation, issuance, and delivery of the UUIC Policy to AKH." [Doc. 21-1 ¶ 6.]

3.      About one month later, on March 13, 2013 Universal filed its Reply in Support of its Motion to Transfer. [Doc. 32.]

   a.  In support of that Motion to Transfer, Universal offered the March 11, 2013 Declaration of Earl Wong which revealed that it was he—not Brent Perez—who was involved in the initial policy formation: "I was the original account executive for policy no. 268140 issued by UUIC to AKH for the coverage period of May 1, 2007 – May 1, 2008 ('UUIC Policy')." [Doc. 32-1:3 ¶ 5.]

   b.  Later, in its Opposition to AKH's Motion for Partial Summary Judgment, Universal would argue that it was this initial policy (handled by Mr. Wong) that was operative: "[F]or purposes of the court's expected conflicts of law analysis, it is UUIC's position that **if** any coverage is owed, it would be owed under policy no. 268140 issued to AKH for the original coverage period of May 1, 2007 – May 1, 2008 (the 'UUIC Policy')." [Doc. 44:13 (emphasis Universal's).]

   c.  Mr. Wong also stated that "Part of my responsibilities as an account executive for UUIC and manager of the AKH account included keeping records of my communications with AKH. I recorded the in-person meetings I held with personnel from AKH and its local insurance broker RJL Insurance Services ('RJL'), at AKH's corporate headquarters. I recorded the sales calls I made to AKH's corporate headquarters, and the telephone conferences I participated in with personnel from AKH and RJL. This information I recorded is included in an electronic file of information referred to as the 'Avenue' database. The

information contained in the Avenue database is part of the underwriting record for the UUIC Policy." [Doc. 32-1:3 ¶ 6.]

d.  That Universal recorded its personal and written communications with AKH confirmed by the concurrently-submitted March 8, 2013 Declaration of Kelli Brock: "Part of my responsibilities as a Regional Account Specialist for UUIC included keeping records of my communications with AKH. I recorded all oral and written communications I received and sent, documents I received and sent, and decisions of AKH and UUIC personnel communicated to me concerning insurance coverage requests pertaining to the UUIC Policy. This AKH account history is kept as part of the regular course of business. This information is recorded electronically in a database known as 'Avenue.'" [Doc. 32-7:3 ¶ 6.]

4.    Universal argued that this case should be transferred, based on the declaration of an account representative (Perez) [Doc. 18:16–17], who, Universal later revealed, did not even work on the policy it deemed operative. [Doc. 44:13.] Universal's coverage attorney declared that a comparison of the declarations of its claims handler in Texas (Palmer, who had nothing to do with contract formation) and the account representative Perez (who did not work on Universal's claimed operative policy) established that "the parties completely disagree on the facts concerning the negotiation, issuance, and delivery of the UUIC Policy to AKH." [Doc. 21-1 ¶ 6.] Universal's early arguments for its need for discovery, therefore demonstrated a misunderstanding of its own facts, not those in possession of AKH.

5.    Later Universal revealed that Mr. Wong was the one who actually worked on the policy which Universal deemed operative [Doc. 32-1:3 ¶ 5], and that his communications with AKH as well as that of other Universal employees were recorded. [Docs. 32-1:3 ¶ 6; 32-7:3 ¶ 6.] Since Universal is apparently in possession of such detailed information regarding the parties' contract formation communications (which AKH is not), it is unclear what Universal expects to accomplish with formal discovery. Universal is in

4

possession of information about making of the policy—far beyond any testimony that could be offered from the memories of AKH's personnel—yet it demands discovery.

## III.   QUESTIONS PRESENTED

Should this lawsuit be bifurcated so that choice of law can be decided separately, prior to resolution of the other issues in the case? Should Universal be permitted to conduct discovery on choice of law issues? If these requests are denied, should the questions be certified for interlocutory appeal?

## IV.   BIFURCATION IS NOT WARRANTED

### A.   Universal Has Not Demonstrated an Actual Conflict of Laws, Necessary Before Any Choice of Law Analysis

The Motion simply assumes that if California law were applied Universal would be entitled to reimbursement. But that argument glosses over the stringent requirements to actually obtain reimbursement under California law—in fact, few reported cases have ever permitted it.

Unless Universal can demonstrate that it is entitled to reimbursement under the *Buss* and *Blue Ridge* requirements, there is no need to engage in a speculative choice of law analysis.

### B.   Bifurcation of Choice of Law Will Not Expedite or Economize This Case

#### 1.   The Requested Bifurcation Is Illogical and Inefficient

Bifurcation of the choice of law issue is illogical and not justified under Fed.R.Civ.P. 42(b). Universal has made no showing that bifurcation will expedite or economize resolution of this suit. Universal's proposal will require the expenditure of additional time, to no useful effect, and will cost the parties and the Court additional time, money and effort. This will occur because it will be necessary for the parties and the Court to review the same evidence twice: first because the underlying facts must be determined and considered to make any conflict of laws determination followed by a choice of law analysis; second to make the same factual review in order to rule on the pending motions. Universal has not shown that duplication of effort can be avoided. Perhaps Universal simply prefers to have two bites of the apple. But the most expeditious and economical approach is to consider the facts and the law together one time.

5

Universal has not even explained what is to be bifurcated from what. As this Court has previously held, "a choice of law determination is made on an issue-by-issue, and not case-by-case, basis."[3] Universal's motion suggests that the only question before the Court is whether it is entitled to reimbursement of defense or settlement payments. But that is perhaps the last of many questions in this case, albeit the focus of Universal's counterclaim.

The Court must resolve several other preliminary questions before it will be in a position to consider any question of reimbursement: Universal's duty to defend; Universal's breach of its duty to defend; Universal's duty to settle; and Universal's settlement conduct. Then there are numerous factual determinations relevant to any reimbursement rights as considered by various states including: whether Universal's insurance policy provides a right to reimbursement; what public policy might permit reimbursement under the totality of circumstances of the case; and whether Universal's conduct would satisfy any reimbursement requirements.

Only then would it be logical to consider whether Kansas would permit reimbursement under the facts of the case. If that answer is no, then the Court could consider whether, under the facts found in this case, some other state's law might permit reimbursement. Only if that answer is yes would the Court even be faced with a potential conflict of laws. But Kansas law requires the Court to follow the law of the forum, absent "a clear showing" that another state's law should apply.[4] Only if Kansas law would not permit reimbursement in this particular situation and after Universal makes a clear showing why another state's laws should apply would the Court even need to conduct a choice of law analysis by comparing Kansas law with the law of another state.

Universal's motion puts the cart before the horse by claiming that choice of law should be decided before everything that must logically come first. Universal presumes that Kansas would not permit reimbursement of defense or settlement payment, presumes that California

---

[3] *Black & Veatch Int'l Co. v. Foster Wheeler Energy Corp.*, No. 00–2402–JAR, 2002 WL 1934372, at *1 (D. Kan. Aug. 12, 2002).

[4] *In re K.M.H.*, 285 Kan. 53. 60–61 (2007) ("Kansas courts have often leaned toward a *lex fori*, or law of the forum, approach, opting to apply Kansas law absent a clear showing that another state's law should apply.").

would permit reimbursement of both in this case, and presumes that California law should therefore be applied. But Universal has made no suggestion that it could support these presumptions with evidence or that it will be able to "make a clear showing that another state's law should apply," *id*, to a particular issue in this case, even if given the undefined discovery opportunity it seeks again.

**2.     Requested Bifurcation Does Not Meet Tenth Circuit Requirements**

As *Angelo v. Armstrong World Industries, Inc.*, 11 F.3d 957, 964 (10th Cir. 1993) held, '"[a]court may order a separate trial of any claim or separate issue 'in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy.' Fed.R.Civ.P. 42(b). Bifurcation is not an abuse of discretion if such interests favor separation of issues and the issues are clearly separable. Regardless of efficiency and separability, however, bifurcation is an abuse of discretion if it is unfair or prejudicial to a party." (Citations omitted) Here Universal not shown that "issues are clearly separable." Nor has Universal shown that bifurcation is necessary or even desirable for "convenience," "to avoid prejudice," or that it "will be conducive to expedition and economy." But bifurcation of the choice of law issue would be prejudicial to AKH because it would be more costly and time consuming.

"While separation of issues for trial is not to be routinely ordered, it is important that it be encouraged **where experience has demonstrated its worth**."[5] There is no precedent or experience to suggest that it is valuable in any case like this. AKH has found no case in American jurisprudence bifurcating the question of choice of law.

---

[5] Fed.R.Civ.P. 42(b) advisory committee's note (emphasis added).

7

C.    **Universal Shows No Conflict of Laws Requiring a Choice of Law Analysis**

1.    **California Law Does Not Support Universal's Reimbursement Claim**

The preliminary question before any choice of law analysis is even proper is whether there is a conflict of laws on a particular issue in the case.[6] Universal asserts that if California law applies it would be entitled to **reimbursement of a portion** of both the settlement and defense expenses. That argument glosses over the stringent requirements to actually obtain any reimbursement under California law—in fact it is a rare occurrence.

Under California law, an insurer that has not fully and completely defended, as will be shown here since Universal belatedly paid less than 20% of the underlying defense expenses, has the burden of proof in allocating *defense costs* in a mixed action.[7] Allocating between covered and non-covered claims may not be feasible.[8]  When an insurer breaches its contractual duty to defend, as Universal will be shown to have done here, it is "liable for attorneys' fees as provided in the policy or as 'incurred in good faith, and in the exercise of a reasonable discretion' in defending the action."[9]  Further, when "the insurer has breached its duty to defend [the insured need only prove] the existence and amount of … **expenses**, which **are** then **presumed to be reasonable and necessary as defense costs**, and it is the insurer that must carry the burden of proof that they are in fact unreasonable or unnecessary."[10]

Reimbursement of defense expenses has been reported only in California cases where there was **never a duty to defend in the first place**.  AKH knows of no case where an insurer in other circumstances has ever proven an allocated reimbursement. The rule can be no different in

---

[6]*United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1224 (10th Cir. (Colo.) 2000) ("[C]ourts routinely decline to consider choice of law issues in the absence of a demonstrated conflict.").

[7] *Buss v. Superior Court*, 16 Cal. 4th 35, 53 (1997).

[8] *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1081 (1993) ("Once the defense duty attaches, the insurer is obligated to defend against all of the claims involved in the action, both covered and noncovered, until the insurer produces undeniable evidence supporting an allocation of a specific portion of the defense costs to a noncovered claim.").

[9] *Zurich Ins. Co. (U.S. Branch) v. Killer Music, Inc.*, 998 F.2d 674, 680 (9th Cir. (Cal.) 1993) (quoting CAL. CIV. CODE § 2778) (rules of interpretation for indemnity contracts)).

[10] *Aerojet-General Corp. v. Transp. Indem. Co.*, 17 Cal. 4th 38, 64 (1997) (emphasis added).

allocating settlement costs.  Outside a context where there was **never any duty to defend at all**, *Blue Ridge* did not suggest that a settlement could be parsed.  Nor has Universal shown that it could satisfy all three prerequisites for *any* reimbursement under *Blue Ridge*,[11] let alone an allocated reimbursement.

Universal cannot deny that its policy covers trademark claims such as those made and settled in the underlying case, although it may argue application of some exclusion. Yet Universal only seeks partial reimbursement for defense and settlement of allegedly noncovered claims. [Doc. 68:2–3.]  Despite repeatedly making its reimbursement argument to this Court, Universal still offers no California authority about what happens in a "mixed case" where there are both covered and *possibly* uncovered claims defended or where a settlement is made of an admittedly covered claim while there *may* be some uncovered claim also resolved in the settlement.

AKH's own review has not revealed any controlling authority concerning allocating a settlement between covered and uncovered claims.  An unpublished California Court of Appeals decision[12] supports a finding that no allocation is appropriate:

> [Insurer] … argues that the trial court was required to allocate at least some settlement payment to it for uncovered claims. … '[T]here is no precedent in the annals of California insurance law for a court to do what [insurer] has requested,' and, furthermore, that "with respect to *settlement payments,* any 'allocation' would be an impossible task."[13]

Universal has not established that California law permits the reimbursement that it seeks. Even if theoretically possible, the determination would be factually intense.

---

[11] *Blue Ridge Ins. Co. v. Jacobsen*, 25 Cal. 4th 489, 502 (2001) ("(1) a timely and express reservation of rights; (2) an express notification to the insureds of the insurer's intent to accept a proposed settlement offer; and (3) an express offer to the insureds that they may assume their own defense when the insurer and insureds disagree whether to accept the proposed settlement.").

[12] *Nunez v. City of San Diego*, 114 F.3d 935, 943 n.4 (9th Cir. (Cal.) 1997) (federal court is "not precluded from considering unpublished state court opinions").

[13] *Bar-K, Inc. v. Sec. Title Corp.*, No. A115199, 2010 WL 3333391, at *26 (Cal. Ct. App. Aug. 25, 2010).

### 2.     Kansas Would Likely Also Deny Universal Reimbursement

Universal appears to believe that Kansas would not recognize an insurer's right to reimbursement that is not contained in the policy. Pointing out that no Kansas court has addressed reimbursement, Universal still suggests that one federal district court sixteen years ago "assumed that defense costs could be allocated …." [Doc. 68:3.]   But *United Wats, Inc. v. Cincinnati Ins. Co.*, 971 F. Supp. 1375, 1385 (D. Kan. 1997), neither considered nor ruled on allocation of reimbursement to an insurer.   That court simply said "[t]here is neither adequate briefing on this issue nor sufficient information in the record for the court to calculate independently how much of [what the insureds] seek is attributable to their defense of Coast's tortious interference counterclaim."   Supplemental briefing was required.   This undecided issue had nothing to do with reimbursement to an insurer.

Even if Kansas courts recognized an insurer's right to reimbursement, the facts of *United Wats* would not support such a claim from Universal; it only dealt with additional payments demanded by the policyholder.   Universal has presented no authority from any jurisdiction that supports its claim to reimbursement of defense or settlement payments.

### 3.     Where The Outcome Will Not Change, There Is No Conflict of Laws

There is no potential conflict of laws if neither Kansas nor California law would lead to reimbursement of any monies paid by Universal. Since Universal presents no evidence and no authority that it would be entitled to reimbursement in California—but merely presents unsupported conclusions—there is no reason to believe that the result would be different regardless of which law might apply.   Without an actual conflict of laws, a choice of law analysis would be an unnecessary academic exercise.   There is no reason to bifurcate such a question.

## V.     NO DISCOVERY IS NECESSARY ON CHOICE OF LAW

### A.     Universal Fails to Identify Any Specific Discovery Needed

Universal's motion to bifurcate seeks to conduct discovery "on the choice of law issue," particularly "discovery as to the facts regarding the place where the contract was made and where the contract was performed." Universal wants "the opportunity to engage in written

discovery on AKH and to depose" AKH witnesses. [Doc. 68:4] Universal has already submitted multiple declarations of its employees and lawyers from which it has repeatedly argued that the policy was both made and performed in California but not Kansas. Universal has not, however, submitted an underwriter's declaration claiming to have made or issued the policy anywhere other than Kansas. Universal does not suggest what information it is likely to get from AKH witnesses bearing on this question beyond that contained in their previous declarations.

Universal makes its discovery request under Fed.R.Civ.P. 26(d) that gives the Court general authority to regulate discovery. But Universal's request really falls under Rule 56(d) pertaining to summary judgment motions. Universal says it is "likely that the choice of law determination will be accomplished through cross-motions for partial summary judgment after the completion of this discovery regarding the place where the contract was made and performed." [Doc. 68:4] Universal does not mention that AKH's partial summary judgment motion has been filed and is fully briefed. [See Docs. 7, 8, 42-1, 44, 57, 60-1]

The Motion's argument for discovery repeats the arguments in Universal's Opposition to the MPSJ [Doc. 44: 14-17, 60-65] and in Universal's extensively briefed separate Motion to Stay. [See Docs. 21, 29, 35, 39, 39-1, and 48]  As in its many previous briefs about discovery, Universal's motion to bifurcate again fails to state specifically what discovery it intends to take, what expected information will be obtained, and how the material will rebut AKH's summary judgment arguments. When seeking discovery to oppose a summary judgment motion, as Universal is effectively doing in its latest motion, it must submit an affidavit or declaration explaining: (1) why facts precluding summary judgment are unavailable; (2) what probable facts can be found through further discovery; (3) what steps have been taken to obtain such facts; and (4) how additional time will allow the party to controvert facts.[14] "A party may not invoke Rule 56[d] by simply stating that discovery is incomplete but must state with specificity how the

---

[14] *Price v. Western Resources, Inc.*, 232 F.3d 779, 783 (10th Cir.2000) (quoting *Comm. for the First Amendment v. Campbell*, 962 F.2d 1517, 1522 (10th Cir.1992)).

additional material will rebut the summary judgment motion."[15]    The same requirements apply here.

Although no discovery has been done in this case—and discovery is normally unnecessary in insurance coverage determinations for IP suits[16]—Universal has not shown why facts regarding where the insurance contract was made are unavailable. Universal has failed to inform the Court where the underwriting of the policies occurred. AKH believes it was in Kansas at the address prominently displayed on almost every page of Universal's policies. But instead, Universal has tried to obfuscate its connection to Kansas, as the Court has found [Doc. 66:5-11], while withholding testimony about underwriting. Universal has not shown why it does not have access to necessary witnesses and records to determine where its own policy was made. A reasonable inference to be drawn from Universal's policies and evidence, including Universal's inaccurate statements to the Court,[17] is that the policies were made in Kansas. But Universal has made no attempt in all its motions to make the showing necessary to conduct discovery.

## B.    Prior Declarations Sufficient to Determine Where Policy Was Made

No discovery of AKH witnesses is necessary to determine a choice of law question since the prior declarations of the parties in support of various motions provide sufficient information as to where the insurance policy was "made." Universal has suggested in its motion to transfer [Doc. 18] that it wants to depose Hratch Andonian but he has already testified about California activities in negotiating the policies. [AKH's Concise Statement of Facts in this Opposition ("CSF") § 1] Universal has submitted declarations of its employees Jena Palmer (claims handler) and Brent Perez (account executive) but they said nothing about where the policies were "made." [CSF § 1(a), (b) & (c)] Later Universal submitted the conflicting declaration of Earl Wong, an

---

[15] *Garcia v. United States Air Force*, 533 F.3d 1171, 1179 (10th Cir.2008) (quotation omitted).

[16] David A. Gauntlett, *No Discovery Is Appropriate in Addressing Coverage for Intellectual Property Disputes*, COVERAGE (A.B.A. Comm. on Ins. Coverage Litig.), July/August 2009, at 31–36.

[17] Doc. 66:11 n.37.

account executive at the time of the initial policy sale to AKH. [CSF  § 3(a) & (b)] It thus appears that Mr. Wong and not Mr. Perez would have dealt with AKH at the beginning.

Wong testified that he maintained detailed records of dealings with AKH, "record[ing] in-person meetings … sales calls … and the telephone conferences with personnel from AKH and RJL [Insurance Services]. This information I recorded is included in an electronic file of information referred to as the 'Avenue' database. The information contained in the Avenue database is part of the underwriting record for the UUIC policy." [Doc. 32-7:8-29] [CSF § 3(c)]

The portion of the Avenue database submitted with the Kelli Brock declaration [CSF  § 3(d)] appears to reflect California sales office activity only. It reflects events from 4/6/2007 through 1/12/2013 but nothing concerning the underwriting or issuance or "making" of any policy sold to AKH. Among the 441 events recorded over nearly a six year policy period shown in the record attached to Brock's declaration, the exhibit does not show that any Universal policy was "made" in California. Universal does not explain why it did not submit the part of the Avenue database presumably maintained by its underwriters who issued the policy. Perhaps it is because that would reveal the underwriting activity at the Kansas address listed on all the Universal policies.

 Universal never submitted the remainder of the underwriting file. Universal has never produced the full underwriting file, perhaps because it would reveal that the policy was "made" in Kansas. Universal does not explain what information about "making" the policy is not available in its underwriting file. Universal does not explain why it needs to depose AKH when it has already submitted database records containing contemporaneous notes of every California issued document and every California meeting, conversation, and event concerning AKH.

Universal has argued that "the parties completely disagree on the fact concerning the negotiation, issuance, and delivery of the UUIC Policy to AKH." But this allegation refers to a comparison of declarations of Universal employees Palmer and Perez, neither of whom had anything to do with making the policy. [CSF § 4] Universal has never presented testimony of its underwriters or anyone who dealt with Michael Schaeper.

The only Universal employee declaration of anyone who worked on the operative policy is salesman (account representative) Earl Wong who does not explain where the policy was made, despite Universal's detailed records. [CSF § 5] These facts indicate that (1) Universal does not need to depose any AKH witness concerning the making of the policy and (2) its repeated demand for discovery is only to delay this case and waste money of its insured.

As the Court has already held [Doc. 66:15-16], the place of making the contract governs any necessary choice of law determination. The place of performance is not relevant to this case under Kansas law. It is unnecessary to discover anything about the place of performance.

Universal's speculation about what discovery may be necessary at a later point in the case should be ignored. Rulings on pending motions will expedite the case and limit remaining factual questions. There is no value in discovery on issues likely to be decided as matters of law.

## VI.     INTERLOCUTORY APPEAL IS INAPPROPRIATE

Expecting that its Motion will be denied, Universal requests the Court certify its denial order for interlocutory appeal. There is no authority supporting this request. Just as denial of a discovery motion is subject to review only for an abuse of discretion,[18] a denial of a motion to bifurcate will not be disturbed unless the court "clearly abuses" its discretion.[19]  Denial of bifurcation is not likely to be reversible, even if an appellate court would have preferred bifurcation.[20]

Unlike erroneous bifurcation, the only possible harm from a refusal to bifurcate would be inefficiency.  There is therefore no urgency warranting an interlocutory appeal or "substantial

---

[18] *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1300 (10th Cir. (Utah) 1999).

[19] *York. v. Am. Tel. & Tel. Co.*, 95 F.3d 948, 957 (10th Cir. (Okla.) 1996) ("[A] district court possesses 'broad discretion in deciding whether to sever issues for trial and the exercise of that discretion will be set aside only if clearly abused.' *Easton v. City of Boulder,* 776 F.2d 1441, 1447 (10th Cir.1985), *cert. denied,* 479 U.S. 816, 107 S.Ct. 71, 93 L.Ed.2d 28 (1986).").

[20] *See Gonzalez-Marin v. Equitable Life Assurance Soc'y of U.S.*, 845 F.2d 1140, 1145 (1st Cir. (P.R.) 1988) ("Although Equitable urges us to find such an abuse in the instant case, it fails to cite a single case in which an appellate court has reversed a decision for failure to bifurcate and we also have been unable to find any."); *Emp'rs Reinsurance Corp. v. Swan*, No. 91–2459, 1993 WL 339068, at *1 (D. Kan. Aug. 3, 1993) ("ERC and Swan insist that failure to bifurcate is an abuse of discretion and constitutes reversible error.  If they have any legal authority to that effect, the court will reconsider this decision …").

ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation."[21] Interlocutory appeals are discouraged and commonly denied because of the federal policy against piecemeal appeals.[22]  Because this action will not be stayed during an interlocutory appeal petition under 28 U.S.C. § 1292(b), Universal is seeking to multiply the litigation, imposing on its insured the necessity of defending an appeal while this lawsuit proceeds.[23]  An appeal would likely be decided after this Court rules on pending and briefed summary judgment motions.[24]

**VII.    CONCLUSION**

For the foregoing reasons, Universal's Motion to Bifurcate should be denied, together with its renewed request to conduct discovery and its alternative request to certify the case for an interlocutory appeal.

DATED:  July 1, 2013                        Respectfully submitted,

David A. Gauntlett, *pro hac vice*          By:___s/ *Brian E. Sobczyk*_____
James A. Lowe, *pro hac vice*               Scott C. Hecht, KS #16492
GAUNTLETT & ASSOCIATES                      Brian E. Sobczyk, KS #21046
18400 Von Karman, Suite 300                 STINSON MORRISON HECKER LLP
Irvine, California  92613                   1201 Walnut Street, Suite 2900
(949) 553-1010 (telephone)                  Kansas City, Missouri  64106
(949) 553-2050 (facsimile)                  (816) 842-8600 (telephone)
info@gauntlettlaw.com                       (816) 691-3495 (facsimile)
jal@gauntlettlaw.com                        shecht@stinson.com
                                            bsobczyk@stinson.com

Attorneys for Plaintiff
AKH COMPANY, INC.

---

[21] 28 U.S.C. § 1292(b).

[22] *Conrad v. Phone Directories Co., Inc.*, 585 F.3d 1376, 1382 (10th Cir. (Okla.) 2009) ("[T]here is a long-established policy preference in the federal courts disfavoring piecemeal appeals. *See Pimentel & Sons Guitar Makers, Inc. v. Pimentel*, 477 F.3d 1151, 1153 (10th Cir.2007) (citing *Gardner v. Westinghouse Broad. Co.*, 437 U.S. 478, 480 (1978)).").

[23] 28 U.S.C. § 1292(b) ([A]application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.")

[24] *Tri-State Contractors, Inc. v. Fagnant*, 393 F. App'x 580, 586 (10th Cir. (Wyo.) 2010) (unpublished) ("Protracted litigation in the form of piecemeal appeals consumes considerable amounts of both the court's and the parties' time and resources, with little practical benefit.")

## CERTIFICATE OF SERVICE

I hereby certify that on July 1, 2013, I electronically filed the foregoing **AKH Company's Opposition To Universal's Motion To Bifurcate** with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to the following:

Bradley J. Baumgart
Eric J. Aufdengarten
KUTAK ROCK LLP
1010 Grand Boulevard, Suite 500
Kansas City, MO 64106
Tel:    (816) 502-4651
Fax:    (816) 960-0041
brad.baumgart@kutakrock.com
eric.aufdengarten@kutakrock.com

Karen L. Bizzini
SINNOTT, PUEBLA, CAMPAGNE & CURET, APLC
550 South Hope Street, Suite 2350
Los Angeles, CA 90071
Tel:    (213) 996-4201
Fax:    (213) 892-8322
kbizzini@spcclaw.com

Attorneys for Defendant
Universal Underwriters Insurance Company

s/ *Brian E. Sobczyk*
Attorney for Plaintiff

16