# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

AKH COMPANY, INC.,          )
                                      )
           Plaintiff,         )
                                      )     Case No. 13-2003-JAR-KGG
v.                           )
                                      )
UNIVERSAL UNDERWRITERS      )
INSURANCE COMPANY,         )
                                      )
           Defendant,      )
_____ )

## ORDER ON PLAINTIFF'S MOTION TO COMPEL

Now before the Court is Plaintiff's "Motion to Compel Production of Documents." (Doc. 117.) For the reasons set forth below, the Court **GRANTS in part** and **DENIES in part** this motion.

## BACKGROUND

The above-captioned matter is a declaratory judgment action based on a dispute concerning insurance coverage and the settlement of a trademark dispute involving Plaintiff and a third party. (*See* Doc. 1; Doc. 75, sealed, at 5-6 (underlying litigation hereinafter referred to as "RT litigation" or "RT case").) The facts of the case were summarized by District Court in its Order (Doc. 75, sealed) denying Plaintiff's Motion for Partial Summary Judgment (Doc. 7) and

Defendant's Motion to Bifurcate (Doc. 68).  The Court incorporates that factual

summary herein.  (*See* Doc. 75, sealed, at 4-7.)

The present motion involves Plaintiffs request for an order compelling

Defendant to produce documents responsive to certain of Plaintiff's second, third,

and fourth sets of Requests for Production of Documents.[1]  Plaintiff contends

Defendant's responses to the second and third sets were untimely (resulting in a

waiver of any objections) and incomplete.  Plaintiff further contends that no

responses were given to the fourth set.  (Doc. 118, at 8.)  Plaintiff also disputes

certain objections raised by Defendant in response to the discovery requests.  Each

issue will be addressed in turn.

## DISCUSSION

A.      **Timeliness.**

Plaintiff contends that Defendant waived its objections to Plaintiff's second

and third document requests by failing to respond within the thirty days allotted by

Fed.R.Civ.P. 34.  (Doc. 118, at 11-13.)  Plaintiff continues that although Defendant

sought an extension to respond to the second set, the responses were still late and

---

[1] Defendant asserts that it has produced all documents responsive to Plaintiff's
Second Requests Nos. 20, 21, and 47 and Third Requests Nos. 31, 80, 82, 83, 86, 87, 93,
104, and 105.  (Doc. 129, at 32, 42-44.)  Plaintiff does not contradict these assertions in
its reply brief.  (*See* Doc. 135.)  As such, the Court considers these issues resolved.

2

that no extension was requested or received for the third set.  (*Id*.)  Plaintiff also contends that Defendant did not respond to Plaintiffs Fourth Requests in a timely fashion, thus waiving all objections.  (Doc. 118, at 36-37.)  Defendant responds that its discovery responses and privilege log were timed according to agreements between the parties. Thus, the responses were not "late" and no objections have been waived.  (Doc. 129, at 15-17.)  These issues are not addressed in Plaintiff's reply.  (Doc. 135.)  As such, the Court will accept Defendant's representations as true and decide the issues between the parties on the merits.

**B.     Standards for Discovery.**

Fed.R.Civ.P. 26(b) states that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  As such, the requested information must be both nonprivileged and relevant to be discoverable.

"'Discovery relevance is minimal relevance,' which means it is possible and reasonably calculated that the request will lead to the discovery of admissible evidence." ***Teichgraeber v. Memorial Union Corp. of Emporia State University***, 932 F.Supp. 1263, 1265 (D. Kan. 1996) (internal citation omitted).  "Relevance is

broadly construed at the discovery stage of the litigation and a request for

discovery should be considered relevant if there is any possibility the information

sought may be relevant to the subject matter of the action." *Smith v. MCI*

*Telecommunications Corp.*, 137 F.R.D. 25, 27 (D.Kan.1991).  Stated another way,

"discovery should ordinarily be allowed unless it is clear that the information

sought can have no possible bearing on the subject matter of the action." *Snowden*

*By and Through Victor v. Connaught Lab.*, 137 F.R.D. 325, 341 (D.Kan.1991),

appeal denied, 1991 WL 60514 (D.Kan. Mar. 29, 1991).

The scope of discovery is broad, but not unlimited.  If the proponent has

failed to specify how the information is relevant, the Court will not require the

respondent to produce the evidence.  *Gheesling v. Chater*, 162 F.R.D. 649 (D.

Kan. 1995).  In this context, the Court will address the various objections raised

document requests at issue.

**C.     Specific Requests.**

**1.     Claims file.**

Plaintiff argues that it "needs the entire claims file to establish its rights" but

that Defendant has failed to produce it in its entirety "relying on unsupported

claims of privilege."  (Doc. 118, at 14.)  Plaintiff continues that Defendant has

"withheld thousands of pages of claims file documents based on claims of privilege

and has provided other documents with extensive redactions." (*Id.*)  Plaintiff

argues that these documents are not privileged because "decisions on claims

handling are part of the insurance company's everyday business." (*Id.*)  Plaintiff

also argues that "communications explaining, justifying and acting on decisions

about defense and settlement are not only highly relevant to proving [Plaintiff's]

claims of a duty to defend and settle, but are essential to claims of bad faith."[2] (*Id.*,

at 15.)  "There is no substitute and no alternative," according to Plaintiff.  (*Id.*)

Defendant responds that it "did not withhold any documents that pertained to

the ordinary course of handling [Plaintiff's] claim." (Doc. 129, at 17-18.)

Defendant argues that it a) "withheld a small volume of documents" encompassing

communications between its claim professional and in-house counsel "providing

legal advice about coverage issues" and b) documents created within 2 months of

the filing of the present action "concern[ing] communications involving legal

advice about settlement of the RT Lawsuit and responding to this coverage action."

(*Id.*, at 18.)

The crux of the issue between the parties relates to the point at which

Defendant was reasonably anticipating litigation, thus creating a privilege for the

---

[2] As discussed below, Plaintiff incorrectly characterizes its breach of the covenant of good faith and fair dealing," which is a contract claim, as one for "bad faith."  This is incorrect.

documents at issue based on the work product doctrine.  The work product doctrine

is contained in Fed.R.Civ.P. 26(b)(3)(A) and

> protects from discovery all documents and materials
> prepared by an attorney, a party, or an agent of either, in
> anticipation of litigation.  To establish work product
> protection, the party seeking to invoke work product
> immunity must show that (1) the materials sought to be
> protected are documents or tangible things; (2) they were
> prepared in anticipation of litigation or for trial; and (3)
> they were prepared by or for a party or a representative of
> that party.  The party invoking work product immunity
> for a document has the burden to establish all the
> elements of the immunity, and a mere allegation that the
> work product privilege applies is insufficient to prove
> applicability.

*McNabb v. City of Overland Park*, No. 12-2331-CM-TJJ, 2014 WL 1152958, at

*8 (D. Kan. March 21, 2014) (citations omitted).  Although certain actions by an

adverse party, such as submitting a reservation of rights letter, might be considered

precursors to litigation, "the work product doctrine requires more than a mere

possibility of litigation."  *Pouncil v. Branch Law Firm*, No. 10-1314-JTM-DJW,

2011 WL 5025033, *4 (D. Kan. Oct. 21, 2011) (holding that the filing of a

complaint with the Disciplinary Board "might reasonably be expected to be the

precursor to a [legal] malpractice claim," it did not create a reasonable anticipation

of litigation).

Courts have routinely applied a rebuttable presumption "that neither attorney

work product nor attorney-client privilege protects an insurer's investigatory file

on an insured's claim from discovery before a final decision is made" as to that

claim. *Lindley v. Life Investors Ins. Co. of America*, 267 F.R.D. 382, 399 (N.D.

Okla. 2010).

> Fed.R.Civ.P. 26(b)(3) requires that a document or thing
> produced or used by an insurer to evaluate an insured's
> claim in order to arrive at a claims decision in the
> ordinary and regular course of business is not work
> product regardless of the fact that it was produced after
> litigation was reasonably anticipated. It is presumed that
> a document or thing prepared before a final decision was
> reached on an insured's claim, and which constitutes part
> of the factual inquiry into or evaluation of that claim, was
> prepared in the ordinary and routine course of the
> insurer's business of claim determination and is not work
> product. Likewise, anticipation of litigation is presumed
> unreasonable under the Rule before a final decision is
> reached on the claim. The converse, of course, is
> presumed for documents produced after claims denial. To
> overcome these presumptions, the insurer must
> demonstrate, by specific evidentiary proof of objective
> facts, that a reasonable anticipation of litigation existed
> when the document was produced, and that the document
> was prepared and used solely to prepare for that
> litigation, and not to arrive at a (or buttress a tentative)
> claim decision.

*Id*. (quoting *Harper v. Auto–Owners Ins. Co.*, 138 F.R.D. 655, 663–664 (S.D.

Ind.1991).) ""[T]he question of whether insurer and adjuster documents were

created in anticipation of litigation depends on whether the party seeking

protection can point to a definite shift made by the insurer or adjuster from acting

7

in its ordinary course of business to acting in anticipation of litigation." *U.S. Fire*

*Ins. Co. v. Bunge North America, Inc.*, 247 F.R.D. 656, 659 (D.Kan.2007).

Based on arguments and representations of the parties (*see e.g.*, Doc. 129, at

18-19), and considering the burden is on Defendant to establish the existence of the

privilege, the Court finds that the date Defendant would have reasonably

anticipated litigation was when Defendant made the decision to send the December

28, 2012, letter regarding the settlement check from the RT litigation wherein

Defendant

> repeated that the payment was subject to a reservation of
> its right to file a declaratory relief action against AKH to
> seek reimbursement of the settlement contribution, as
> well as a reservation of its right to seek reimbursement
> and defense fees and costs it paid for claims never
> potentially covered and pre-judgment interest.

(Doc. 75, sealed, at 7.)  Any information withheld on the basis of attorney-client

privilege or the work product doctrine after this time must be produced.

**2.      Electronically Stored Information ("ESI").**

Prior to Defendant responding to Plaintiff's second set of discovery requests,

Plaintiff realized that "the number of documents in this case would be extensive,

that electronic copies would be the most economically efficient, that native format

would allow [Plaintiff] to properly search for and organize documents, and that of

*all* of [Defendant's documents were stored electronically." (Doc. 118, at 25.)

8

Plaintiff thus asked for the documents to be produced in native electronic format. Even so, according to Plaintiff, Defendant "refused to produce documents in any form but paper and proceeded to deliver thousands of pages of paper contrary to [Plaintiff's] request for electronic versions of the documents." (*Id.*)  Although Defendant ultimately produced documents in "a few very large PDF files," Plaintiff contends that the documents "were not produced in the form maintained by [Defendant] or in any reasonably usable form." (*Id.*, at 26.)  Specifically, Plaintiff contends that "it cannot search across multiple PDF's [sic] at once and organize individual documents into relevant categories or into relevant witness files." (*Id.*)

Requests for Production of Documents relating to electronically stored information are governed by Fed.R.Civ.P. 34(b)(2)(D) and (E), which state:

> (D)   *Responding to a Request for Production of Electronically Stored Information*.  The response may state an objection to a requested form for producing electronically stored information.  If the responding party objects to a requested form – or if no form was specified in the request – the party must state the form or forms it intends to use.

> (E)   *Producing the Documents or Electronically Stored Information*.  **Unless otherwise stipulated or ordered by the court**, these procedures apply to producing documents or electronically stored information:

(I)     **A party must produce documents as they
        are kept in the usual course of business or
        must organize and label them to
        correspond to the categories in the
        request**;

(ii)    **If a request does not specify a form** for
        producing electronically stored information,
        **a party must produce it in a form or
        forms in which it is ordinarily maintained
        or in a reasonably usable form or forms**;
        and

(iii)   A party need not produce the same
        electronically stored information in more
        than one form.

(Emphasis added.)

The Court acknowledges the statement in the Report of Parties' Planning

Conference.  For purposes of this motion, the Court also acknowledges that

Plaintiff may have accepted or previously requested documents in a certain format.

Even so, "Rule 34(b) allows, but does not require, the requesting party to specify

the form in which it is requesting electronic data." STEVEN BAICKER-MCKEE ET

AL., FEDERAL CIVIL RULES HANDBOOK 887 (2013 ed.).  There is nothing in the

rule that prohibits a party from changing the requested format from one set of

discovery request to the next.

The rule does, however, allow the responding party to object to the

requested form.  The Court finds that Defendant has adequately explained why the documents were not produced in their native form.  The Court considers the proprietary nature of certain software used by Defendant, Defendant's right to withhold privileged information, the need to limit the production of information regarding unrelated policyholders that is irrelevant to this case, and the added costs of re-producing information already submitted to Plaintiff in converted PDF format to be valid reasons not to require Defendant to re-produce the information at issue. (*See* Doc. 129, at 37-39.)  Defendant expended the time, effort, and expense to produce documents in PDF form as initially requested by Plaintiff.  Absent a need for metadata that potentially would be attached to the native format of this information – a need which Plaintiff has not established – the Court will not require Defendant to re-produce the information.  This portion of Plaintiff's motion is **DENIED**.

### 3.    "Similar" Claims Files.

Requests Nos. 41-45 and 47-79 of Plaintiff's third set of document requests seek information regarding various complaints against Defendant, including those regarding delayed payments, the duty to defend, the refusal to provide independent counsel, and reimbursement for defense costs.  (*See* Doc. 119-5.)  Plaintiff contends that the "factual scenarios" posed by these more than 30 requests all

"involv[e] issues in the RT case."  (Doc. 118, at 30.)

Defendant describes the subject matter of these requests as "broad and far-reaching . . . ."  (Doc. 129, at 26.)  Defendant states that Plaintiff has asserted three causes of action (the breach of the duty to defend, the breach of the duty to settle, and the breach of the covenant of good faith and fair dealing).  (*Id.*)  As such, Defendant argues that the discovery requests at issue do "not seek discovery of 'similar claims files,' [and] they do not even seek discovery of other matters [Defendant] has handled for other policyholders containing like allegations."  (*Id.*)  Defendant argues that the requests have been propounded "for an improper purpose, such as to harass or cause [Defendant] to incur unnecessary costs and burdens, which is forbidden under Federal Rule of Civil Procedure 26(c)."  *Id.*

The Court will not surmise as to the underlying motivation for Plaintiff propounding document requests on these extensive topics.  The Court will, however, opine that the effect of requiring Defendant to respond would be to subject it to undue burden in light of topics which, at best, have limited evidentiary value in this case given the broadly worded nature of the information requested.

Further, Plaintiff mischaracterizes the substance of Count III of its Complaint.  The cause of action has been plead as one seeking declaratory relief for the "breach of the covenant of good faith and fair dealing."  (Doc. 1, at 23.)

12

Plaintiff's motion, however, continually refers to this as a claim for "bad faith," as if the two are interchangeable.  That is not the case.

The duty of good faith and fair dealing is not a recognized, independent tort cause of action.  Rather, the duty "is implied in a contract, and conduct departing from that duty is a breach of a contractual obligation." ***Pizza Management, Inc. v. Pizza Hut, Inc.***, 737 F.Supp. 1154, 1167 (D. Kan. 1990) (citing ***Bonanza, Inc. v. McLean***, 242 Kan. 209, 222, 747 P.2d 792 (1987).) *See also* ***Ritchie Enterprises v. Honeywell Bull, Inc.***, 730 F.Supp. 1041, 1052 (D.Kan.1990); ***Wayman v. Amoco Oil Co***., 923 F.Supp. 1322, 1359 (D. Kan. 1996).  In the context of a breach of contract claim, the good (or bad) faith of a party may be irrelevant. ***Waste Connections of Kansas, Inc. v. Ritchie Corp***., 296 Kan. 943, 974, 298 P.2d 250 (2013).  "A breach is a breach is a breach, even if it occurs with the best of intentions."  In other words, the issue is whether or not the contract was breached – regardless of the motivation of the party allegedly in breach.  If the factfinder determines that a breach occurred, the underlying motives of the breaching party "will not matter." *Id*.  As such, the general information sought in Requests Nos. 41-45 and 47-79, regarding whether Defendant has breached its duties under other contracts (or has been the subject of such complaints), is irrelevant as to whether or not Defendant breached the specific contract at issue.

13

Finally, even if such information were to be considered relevant, the requests, as written, are facially over broad.  Requests Nos. 41-44 generally seek information regarding complaints that Defendant "breached the implied covenant of good faith and fair dealing, acted negligently, committed fraud, misrepresented its duties, breached its fiduciary duties, committed bad faith, breached any statutory duties or violated any statutes or regulations." (Doc. 119-5, at 8-9.)  The requests make no effort to limit such complaints to situations factually similar as those alleged in the present case.

The same lack of specificity is true for Request No. 45 (complaints that Defendant "breached any statutory duties" of any kind), No. 47-52 (complaints about Defendant's claims handling[3] and investigation of any unspecified types of claims), Nos. 53-54 (complaints about delays in payment generally regarding unspecified types of claim), Nos. 55-56 (complaints about the determination of whether Defendant owed a duty to defend on any type of unspecified claim), Nos. 57-58 (complaints about how long it took Defendant to pay defense costs after a court determined a party was owed a defense on any type of unspecified claim),

---

[3]  The discovery requests define "claims handling" as "everything done by UNIVERSAL in response to UNIVERSAL's receipt of a claim by an insured seeking a defense or any coverage in a third party lawsuit, including but not limited to, processing, handling, investigating, reviewing, approving, defending, paying, settling or denying claims or requests for defense." (Doc. 119-5, at 3.)  The definition – and corresponding discovery requests – provide no limitation as to the type of substance of cases involved.

Nos. 59-60, 71-72, 75-78 (complaints about Defendant's refusal to pay, apportionment of, or request/threat for reimbursement of, defenses costs on any unspecified type of claim), Nos. 61-64 (complaints about the assignment or qualifications of counsel in any unspecified type of case), Nos. 65-66 (Defendant's refusal to provide independent counsel in any unspecified type of case), Nos. 67-68 (Defendant's refusal to pay defense costs on any unspecified types of claims that were potentially not covered by any unspecified policy), Nos. 69-70 (the refusal to pay costs relating to any unspecified claims asserted by an insured against a third party), and Nos. 73-74 (complaints that Defendant misrepresented its duties under any unspecified type of policy).  Request No. 79 seeks Defendant's "logs, list, or computer record of complaints" regarding all of the aforementioned litany of issues relating in general to any unspecified type of claim.

The Court finds these generalized discovery requests, for which Plaintiff has failed to provide a sufficient, substantive limitation, to be facially over broad as well as irrelevant.  Plaintiff's motion is **DENIED** in regard to these requests.

### 4.    Personnel files.

Plaintiff also seeks "the complete personnel files for Jena Palmer, Stephanie Cole, and any other claims handling or claims handling supervising personnel involved in the AKH claim."  (Doc. 118, at 32.)  Defendant objects that these

15

requests seek "personal, confidential, private information . . . ."  (Doc. 129, at 29.)
As this Court has held repeatedly, "confidential" does not equate to "non-
discoverable" or privileged.  ***Williams v. Evogen, Inc.***, No. 12-2620-JWL-KGG,
2013 WL 3773840, *3 (July 17, 2013).  *See also* ***Kendall State Bank v. West Point
Underwriters, LLC***, No. 10–2319–JTM–KGG, 2013 WL 593957, at *2 (D.Kan.
Feb.15, 2013); ***McCloud v. Board of Geary County Comm'rs***, No.2008 WL
1743444, at *4 (D. Kan. April 11, 2008) (holding that even assuming certain
records are " 'private' or confidential, this does not mean the records are privileged
and/ or nondiscoverable").

Plaintiff is correct that courts have found personnel files of claims handlers
to be discoverable in cases alleging the bad faith handling of an insurance claim.
***Waters v. Continental General Ins. Co.***, No. 07-282-TCK-FHM, 2008 WL
2510039, *1 (N. D. Okla. June 18, 2008).  The Court will limit this to "information
from the personnel files which pertains to the adjusters' background, qualifications,
training and job performance" and exclude "sensitive personal or medical
information" regarding these individuals.  *Id.*  The production will be limited to
"only . . . those adjusters who actually handled some aspect of Plaintiff's claim.
Therefore, Defendant need not produce the foregoing information for the
supervisors identified unless those supervisors participated in adjusting the claim

in some manner." *Id.*

These parameters shall also apply to Request No. 36, which seeks documents regarding "any disciplinary action, reprimands, positive reports, praise, or commendation of any of Defendant's] personnel or OUTSIDE VENDORS who performed work on the CLAIM." (Doc. 119-5, at 7 (capitalization in original).) Further, such information, whether it be disciplinary or commendatory in nature, shall be limited to issues relating to claims handling and only by such individuals who actually participated in adjusting the claim at issue. This portion of Plaintiff's motion is, therefore, **GRANTED in part** and **DENIED in part**.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Compel Production of Documents (Doc. 117) is **GRANTED in part** and **DENIED in part** as more fully set forth herein.

**IT IS SO ORDERED**.

Dated at Wichita, Kansas, on this 18th day of June, 2014.

 s/ KENNETH G. GALE
KENNETH G. GALE
United States Magistrate Judge