IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| AKH COMPANY, INC., | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | |
| | ) | CIVIL ACTION |
| v. | ) | |
| | ) | No. 13-2003-JAR |
| UNIVERSAL UNDERWRITERS | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant/Counter-Claimant. | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

This case comes before the Court on the parties' cross-motions to determine choice of

law (Docs. 164, 168).  Also before the Court is Defendant/Counter-Claimant Universal

Underwriters Insurance Company's Motion to Strike Affidavit in Support (Doc. 184), which

asks the Court to strike two declarations of Vatche Chorbajian that were filed in support of

Plaintiff/Counter-Defendant AKH Company, Inc.'s ("AKH") motion to determine choice of law.

As described below, the Court grants in part and denies in part both parties' choice of law

motions.  Universal Underwriters Insurance Company's ("UUIC") motion asking the Court to

apply California law to issues of reimbursement and good faith and fair dealing is granted; it is

otherwise denied.  AKH's motion to apply Kansas law to its claim for attorney fees is granted; it

is otherwise denied.  The Court grants in part and denies in part UUIC's motion to strike the

Chorbajian's declarations.  The Court grants the motion to strike Exhibit 1; the motion is

otherwise denied.

## I.      Background

This is an insurance coverage dispute filed by AKH against UUIC, arising out of a

trademark infringement action against AKH which UUIC defended and settled under a

reservation of rights.  The Court exercises diversity jurisdiction.  In May of 2010, the Reinalt-Thomas Corporation dba Discount Tire ("R-T") filed a civil action against AKH in the District of Arizona, alleging that AKH infringed upon and diluted its trademark under state and federal law.  AKH in turn filed its own civil action against R-T in the Central District of California and successfully moved to transfer venue of the first action to the Central District of California.  The two lawsuits were consolidated.  In December of 2012, after extensive litigation, the consolidated lawsuits were settled.  UUIC asserts that R-T and AKH engaged in settlement negotiations between late September and November 20, 2012, but that AKH did not notify UUIC of these discussions until R-T had presented AKH with a settlement demand.  AKH asked UUIC for settlement authority, and UUIC authorized a $5 million payment on behalf of AKH to settle the lawsuit filed by R-T against AKH.  In the second half of December, R-T and AKH settled the consolidated lawsuits.  R-T accepted UUIC's $5 million offer.  Simultaneously, R-T agreed to pay $13 million to AKH to settle the AKH lawsuit.

In this case, AKH seeks declaratory relief that UUIC breached its duties to defend, settle, and act fairly and in good faith with respect to the R-T lawsuits.  UUIC brought counterclaims for declaratory relief and breach of contract arising out of its defense and settlement of the R-T lawsuit.  It seeks reimbursement of the settlement funds.  After the parties filed the instant motions to determine choice of law issues on these contract claims, they amended their pleadings. On November 14, 2014, UUIC filed its Third Amended Answer and Counterclaim, adding counterclaims for negligent misrepresentation, intentional or affirmative misrepresentation, concealment or fraud by silence, and statutory claims under California and Kansas insurance codes.  On November 25, 2014, AKH filed an Amended Complaint adding

claims for negligent misrepresentation, negligence, and intentional misrepresentation.[1]  The parties have filed dispositive motions on many of these new claims, which are not the subject of this Order.  Moreover, the Court disregards AKH's attempts to argue the merits of the contract issues affected by the choice of law analysis; these motions were to be filed on the narrow issue of choice of law only and the Court's decision is confined to this issue only.

## II.    Discussion

The parties have identified differences between California and Kansas law with respect to certain issues presented by the contract claims in this case.  The parties generally do not dispute the appropriate standards that apply to determine the choice of law in this matter.  "[A] federal court sitting in diversity must apply the substantive law of the state in which it sits, including the forum state's choice-of-law rules."[2]  Kansas applies the Restatement (First) of Conflict of Laws in addressing choice of law issues.[3]  In a contract dispute, the Court should apply *lex loci contractus*, or the law of the state where the contract was made, to determine "the nature and extent of the duty of each party to the contract."[4]  When the issue goes to the manner and method of performance, the Court is to apply the law of the place where performance occurred.[5]  UUIC, as the party moving the Court to apply the law of California, has the burden to present sufficient

---

[1]Doc. 227, Counts IV–VI.

[2]*Boyd Rosen & Assocs., Inc. v. Kan. Mun. Gas Agency*, 123 F.3d 1351, 1352–53 (10th Cir. 1997).

[3]*See, e.g.*, *In re K.M.H.*, 169 P.3d 1025, 1031–32 (Kan. 2007).

[4]*Ctl. Power Sys. & Servs., Inc. v. Universal Underwriters Ins. Co.*, 319 P.3d 562, 566 (Kan. Ct. App. 2014) (applying *Layne Christiansen Co. v. Zurich Can.*, 38 P.3d 757, 766–67 (Kan Ct. App. 2002)); *Moses v. Halstead*, 581 F.3d 1248, 1252 (10th Cir. 2009) (finding *lex loci contractus* applies when the question goes to the substance of the obligation).

[5]*Ctl. Power Sys. & Servs., Inc.*, 319 P.3d at 566; *Moses*, 581 F.3d at 1252.

facts to show that California law should apply.[6]  Where "a party fails to make 'a clear showing

that another state's law should apply,' Kansas choice of law principles require a court to default

to Kansas substantive law."[7]

### A.    Actual Conflicts

The first step in any conflicts analysis is to determine whether an actual conflict exists

between the law of Kansas and the law of the foreign jurisdiction, because if there is no actual

conflict, then the Court need not decide the choice of law issue.[8]  It appears that the parties

attempted to stipulate to the issues for which a conflicts analysis is required.[9]  Yet, their briefs

suggest limited agreement.  The issues addressed by the parties in the briefs are: (1) whether an

insurer possesses a right to reimbursement of settlement funds it paid to defend and settle; (2)

whether the claims that R-T alleged against AKH in the R-T lawsuit are excluded from coverage

by the prior publication exclusion; (3) whether either party breached the implied covenant of

good faith and fair dealing, and if so, what damages are available for that breach, if any; and (4)

the scope of AKH's right to attorney fees and costs.

Based on the issues presented in the briefs, the Court finds that an actual conflict exists

with respect to UUIC's right to reimbursement.  The parties stipulate to this and the authority

cited by UUIC makes clear that California recognizes a right to reimbursement while Kansas

---

[6]*In re K.M.H.*, 169 P.3d at 1032.

[7]*Howard v. Ferrellgas Partners, L.P.*, 749 F.3d 975, 982 (10th Cir. 2014) (quoting *In re K.M.H.*, 169 P.3d at 1032).

[8]*Brenner v. Oppenheimer & Co.*, 44 P.3d 364, 372 (Kan. 2002); *Shutts v. Phillips Petroleum Co.*, 732 P.2d 1286, 1291 (Kan. 1987).

[9]Doc. 172 at Exs. A–C.

may not.[10]

UUIC argues that under California law, the prior publication exclusion is a bar to coverage, pointing to California cases that specifically address the exclusion, compared to an absence of Kansas cases on this topic.  AKH spends its time arguing that the prior publication exclusion does not apply to the facts of this case under either body of law, a substantive question that is not before the Court at this time.  A false conflict exists if the Court determines that  "the outcome of this dispute would be the same under the laws of [California] as under the laws of Kansas."[11]  In the case of a false conflict, the Court should default to Kansas law.[12]

Here, UUIC points not to a conflict, but to an absence of law on this issue in Kansas.  In the absence of clear authority from the Kansas Supreme Court, this Court must predict how the Kansas Supreme Court would address the exclusion if faced with the same facts.[13]  To do this, the Court is to look to "analogous decisions by the state supreme court, decisions of lower courts in the state, decisions of federal and other state courts, and the general weight and trend of authority."[14]  Neither party provides this Court with arguments or authorities to help it predict how the Kansas Supreme Court would apply the prior publication exclusion, in order to determine if it is different from how the California courts apply it.  Instead, they both discuss California law.  Of course, the Court may look at authority from other state courts in predicting

---

[10]*See* Doc. 166 at 26–27.

[11]*Brenner*, 44 P.3d at 372.

[12]*Id.*

[13]*Oliveros v. Mitchell*, 449 F.3d 1091, 1093 (10th Cir. 2006).

[14]*First State Bank v. Daniel & Assocs., P.C.*, 519 F. Supp. 2d 1157, 1160–61 (D. Kan. 2007) (citing *MidAmerican Constr. Mgmt., Inc. v. MasTec N. Am., Inc.*, 436 F.3d 1257, 1262 (10th Cir. 2006)).

how the Kansas Supreme Court would handle the prior publication exclusion, so the California authority cited by the parties may be persuasive.[15]  Based on the limited authorities presented by the parties, the Court is unable to find that the outcome of this case would be different if the Court applied California law rather than Kansas law, as predicted by this Court.  It appears that Kansas law may very well be determined by reference to California law.  Therefore, the Court need not conduct a conflicts analysis as to this issue.

UUIC urges that California and Kansas law differ as to its claim for breach of the implied covenant of good faith and fair dealing.  The Court agrees.  Under California law, an insurer can be found liable for tortious breach of the implied covenant if the insurer's decision is "unreasonable,"[16] whereas under Kansas law, the cause of action sounds in contract only.[17]  As a result, tort damages may be available under California law, while under Kansas law, only pecuniary losses sustained are available.[18]  There is a true conflict of law on this issue.

Finally, AKH asks the Court to resolve whether Kansas law applies to its claim for attorney fees, merely citing the Kansas statute that it claims would apply here without explaining how it differs from California law.  UUIC does not argue for application of California law to this issue.  UUIC carries the burden of showing that California law and not Kansas law applies in this diversity.  Because UUIC does not move for application of California law to this issue, the

---

[15]*See Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 665 (10th Cir. 2007).

[16]*See, e.g.*, *Shade Foods, Inc. v. Innovative Prods. Sales & Mktg., Inc.*, 93 Cal. Rptr. 2d 364, 387–88 (Cal. Ct. App. 2000).

[17]*See, e.g.*, *Terra Venture, Inc. v. JDN Real Estate Overland Park, L.P.*, 443 F.3d 1240, 1244 (10th Cir. 2006).

[18]*See Pizza Mgmt., Inc. v. Pizza Hut, Inc.*, 737 F. Supp. 1154, 1162 (D. Kan. 1990) (citing *Guarantee Abstract & Title Co. v. Interstate Fire & Cas. Co.*, 652 P.2d 665 (Kan. 1982)).

default rule should apply that Kansas law, as the law of the forum state, applies to AKH's claim for attorney fees.

The Court therefore will proceed to resolve whether the law that applies to the reimbursement and implied covenant of good faith and fair dealing claim should be determined by reference to the place where the contract was made or the place where the contract was performed.

### B.    Whether to Apply Law of Contract Formation or Performance

The parties acknowledge that the Kansas state and federal courts have struggled with when to apply the law of contract formation versus contract performance.  UUIC urges that the location of performance controls issues related to the duty to defend and settle, as well as to whether AKH cooperated under the UUIC policy.  Nonetheless, UUIC argues that the insurance contract was both made and performed in California.  AKH argues that the reimbursement issues go to the substance of the rights under the policy and should therefore be determined by the place of contract formation.  AKH does not address the good faith and fair dealing claim.

In *Central Power Systems & Services, Inc. v. Universal Underwriters Insurance Co.*,[19] the Kansas Court of Appeals considered whether the duty to defend should be determined by reference to the law of contract formation or performance—whether it is a substantive question about the meaning of the contract, or instead goes to the method or manner of performance.[20] The appeals court considered its past panel decisions, federal court decisions, as well as the commentary from the Restatement, which requires the court to determine whether the issue

_____

[19]319 P.3d 562 (Kan. Ct. App. 2014).

[20]*Id.* at 566–68.

7

"goes to the heart of the insurance contract."[21]  The court explained, "[e]ven when performance is involved, the comment suggests that 'regulation of the substance of the obligation' generally is determined by the place of contracting, and the law of the place of performance 'is not applicable to the point where the substantial obligation of the parties is materially altered.'"[22]

This Court determines that to the extent reimbursement hinges on whether UUIC had a duty to defend and settle the R-T lawsuit, the issue goes to the substance of the parties' contractual obligations.[23]  But the Court agrees that issues of cooperation and whether AKH complied with the covenant of good faith and fair dealing go to the manner and method of performance of the insurance contract.[24]  Therefore, the Court proceeds to consider the evidence presented by the parties as to both contract formation and performance.  As described more fully in the next section, California law applies under either analysis.

### C.     Evidence of Contract Formation and Performance

### 1.     Motion to Strike

The parties each submit evidence in support of their respective positions as to where the insurance contract was made and performed.  On July 17, 2014, AKH filed the declaration of its counsel Vatche Chorbajian in support of its motion,[25] to which it attached five exhibits: (1) the

---

[21]*Id.* at 566.

[22]*Id.* at 566–67 (quoting Restatement (First) of Conflict of Laws § 358 cmt. b (1934)).

[23]*Id.*; *accord Collective Brands, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, P.A.*, 11-4097, 2013 WL 66071, at *12 (D. Kan. Jan. 4, 2013).

[24]*See Moses v. Halstead*, 581 F.3d 1248, 1254 (10th Cir. 2009); *U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, No. 05-2192-JWL, 2008 WL 3077074, at *15–16 (D. Kan. Aug. 4, 2008).

[25]Doc. 170.

May 1, 2008–May 1, 2009 Policy; (2) Amy McConnell Deposition excerpts; (3) Plaintiff's Request for Production, Set One, Category No. 3, with Defendant's Response; (4) "Defendant's Production in Response to Plaintiff's Request Category 3"; and (5) Universal's Reservation of Rights Letter.  The following day, July 18, AKH filed an amended declaration for Chorbajian.[26] It is identical to the first declaration, except in the list of attached exhibits, Chorbajian clarifies that Exhibit 4 is not actually the production by UUIC in response to Plaintiff's Request Category 3.  Instead,  Chorbajian clarifies that since the production consisted of the entire underwriting file, which is approximately 2000 pages in length, AKH offers to produce the file to the Court for review if it deems such review necessary.  What is actually filed as Exhibit 4 to both Chorbajian affidavits is the same document filed as Exhibit 3—the requests for production and UUIC's responses.

UUIC moves to strike the declaration on the following grounds: (1) it is untimely; (2) AKH misrepresents the contents of the exhibits in these affidavits; and (3) Chorbajian lacks personal knowledge and fails to authenticate the attached exhibits.

The Court declines to strike the amended affidavit as untimely.  Recognizing that the amended declaration was filed one day past the deadline for submitting the choice of law motions to the Court, the amendment was nominal.  It is apparent from the record of the original declaration that Exhibit 4 was not, in fact, the entire production to AKH's category 3 request. AKH made no substantive change in this amended declaration; the exhibits are the same as the ones filed on the day the motion was due.  As such, there is no cognizable prejudice to UUIC by

---

[26]Doc. 174.

allowing this amendment.

UUIC argues that the exhibits are mislabeled.  But the Court agrees with AKH that UUIC's challenges to these exhibits go to the weight and not the admissibility of the evidence. To the extent that the evidence does not support AKH's contentions in the choice of law motion, the Court will consider these arguments in determining whether UUIC met its burden to show that California law should govern certain issues in this matter based on the place the contract was either made or performed.

Finally, UUIC argues that the declarant lacks personal knowledge about and fails to authenticate the attached exhibits.  Although the underlying motions are not presented as summary judgment motions, the Court finds that the rules of admissibility on such motions should also govern the choice of law motions.  Under Fed. R. Civ. P. 56(c), factual support on a motion for summary judgment need only "be presented in a form that would be admissible in evidence."[27]  Therefore, the Court need only decide if these exhibits would be admissible if they are duly authenticated.  Indeed, UUIC does not dispute the authenticity of Exhibits 2–5, but merely objects to whether Mr. Chorbajian is the proper party to authenticate and provide foundation for their admissibility.  The Court finds that Exhibits 2–5 are in a form that would be admissible in evidence through a witness with personal knowledge of their contents, and therefore, for purposes of this motion only, the Court will not strike them for lack of authentication or foundation.

UUIC complains that Exhibit 1, which is labeled by AKH as the May 1, 2008–May 1,

---

[27]Fed. R. Civ. P. 56(c)(2).

2009 policy is not a "true and correct" copy of the first renewal policy because the exhibit includes the wrong declaration pages, dated November 18, 2008.  AKH does not respond to this argument, instead arguing that UUIC does not dispute that the policy was issued in Kansas.  The Court is unable to find that Exhibit 1 is presented in a form that would be admissible in evidence given that Exhibit 1 apparently contains incorrect declaration pages.  The Court therefore grants UUIC's motion to strike Exhibit 1 to the Chorbajian declaration.  The Court will not consider this exhibit in determining where the contract was made or performed.  Nonetheless, the Court notes that the policies and declaration pages for the original and each renewal policy are attached to the Complaint (Doc. 1, Ex. 1–3).  The original policy is also submitted by UUIC.[28]  To the extent the policy language is relevant to the choice of law analysis, the Court will consider those exhibits, rather than the version attached to Chorbajian's declarations.

### 2. Contract Formation

The parties agree that to determine where the contract was made under Kansas law, the Court must ascertain where "the last act necessary" to form the contract occurred.[29]  UUIC argues that the Court should look to delivery of the policy and where the premium payments were made, while AKH urges that the last act necessary was underwriting approval.  In the context of insurance policies, Kansas courts consistently determine the last act of formation to be

---

[28]Doc. 166, Wong. Decl., Exs, C–D.

[29]*See, e.g.*, *Howard v. Ferrellgas Partners, L.P.*, 749 F.3d 975, 982 (10th Cir. 2014) (citing *In re K.M.H.*, 169 P.3d 1025, 1031–32 (Kan. 2007); Restatement (First) of Conflict of Laws § 332 (1934)); *Ctl. Power Sys. & Servs., Inc. v. Universal Underwriters Ins. Co.*, 319 P.3d 562, 567–68 (Kan. Ct. App. 2014).

the place of delivery or payment of premium.[30]  In fact, the Court finds no authority for the

proposition that Kansas considers the place of underwriting approval as the last act necessary to

form an insurance contract.

UUIC argues that the policy was made in California either when AKH accepted UUIC's

proposal and agreement to be bound on April 30, 2007, or when the temporary binder was issued

and delivered to AKH on May 1 and 2, 2007, or when AKH provided its initial premium to

UUIC Account Executive Earl Wong on May 2, 2007.  UUIC urges that each of these three acts

occurred in California.  AKH argues that issuance of the binder should not be considered

because the binder only provided temporary insurance coverage pending underwriting approval.

AKH maintains that the last act necessary to form the contract occurred when the underwriters in

Kansas "accepted" AKH's insurance application on May 1, 2007, the effective date of the

policy.

Both parties rely on the deposition testimony of Amy McConnell, who was UUIC's

Director of Underwriting for the Western Division of the Automotive Aftermarket Program in

2007 and 2008.  She testified about the manner of approving, issuing, and authorizing policies

such as the one at issue in this case.  AKH relies on her testimony that the account executive

could not have approved the AKH policy due to its size, so he "needed to refer to underwriting

---

[30]*Chute v. Old Am. Inc. Co.*, 629 P.2d 734, 741–42 (Kan. Ct. App. 1981), *overruled on other grounds*, 662 P.2d 1264 (Kan. 1983); *Ctl. Power Sys. & Servs., Inc.*, 319 P.3d at 567–68; *Layne Christiansen Co. v. Zurich Can.*, 38 P.3d 757, 767 (Kan. Ct. App. 2002) ("our courts have repeatedly held the contract is made where the policy is delivered"); *see also Coffeyville Res. Ref. & Mktg., LLC v. Liberty Surplus Ins. Corp.*, 714 F. Supp. 2d 1119, 1145, *on reconsideration in part*, 748 F. Supp. 2d 1261 (D. Kan. 2010); *Infinity Energy Res. v. St. Paul Fire & Marine Ins. Co.*, No. 12-2685-JTM, 2013 WL 3792899, at *4 (D. Kan. July 19, 2013); *Atl. Mut. Cos. v. Home Depot U.S.A., Inc.*, No. 02-2241-KHB, 2003 WL 202607, at *4 (D. Kan. Jan. 27, 2003).

to get approval."[31]   AKH also points to her testimony that the effective date of the policy was

agreed to by the insurance company.[32]   But the McConnell testimony cited by AKH lacks

context, as both quotations are provided to the Court as single-page excerpts.  UUIC provides a

more comprehensive excerpt from McConnell's deposition where she explains UUIC's method

of offer and acceptance used to form an insurance policy such as the one entered into between

these parties:

> Q.    And then that information is transmitted back to the customer, this is what we're willing to do; is that right?
> A.    It's transmitted to the account executive and then he delivers the proposal to the customer.
> Q.    And then in order to complete the transaction, the customer has to pay for the policy; right?
> A.    Yes.
> Q.    And the underwriter has to final the policy; am I right?
> A.    Well, coverage is really accepted at the time the customer agrees to the proposal and gives the account executive a check for the down payment.
> Q.    But even without a check, the company has to finally decide yes, we are going to make this—we are going to provide this insurance, is that correct?
> A.    Yeah, but they usually provide that not after the policy is issued but at the time they're offering, you know, a proposal.[33]

McConnell's testimony does not support AKH's contention that underwriting approval is the last

act necessary for contract formation; she maintains that acceptance by the insured in the form of

agreeing to the UUIC proposal and paying the premium is the last act required to form the

contract.  She explains that the May 1 effective date was not a date that was necessarily

---

[31]Doc. 170, Ex. 2 at 121:18–25.

[32]*Id.* at 245:6–24.

[33]Doc. 172, Ex. C at 109:3–25.

"approved by" the underwriting department, but was requested by AKH based on the expiration of its prior policy.

Moreover, the more complete excerpt from McConnell's deposition provided by UUIC clarifies that while underwriting approval is necessary, it is obtained before presenting a proposal to the insured in the first instance. McConnell explains that the underwriter approved the policy offered to AKH by the account executive before the binder was issued so that if AKH accepted the proposal, the binder could be issued.[34]

McConnell's testimony supports UUIC's position that the underwriter approved the insurance proposal before the April 30, 2007 meeting between Earl Wong, Sal Collura, and Kelli Brock from UUIC and Hratch Andonian and Lupe Rosales of AKH. Rich Leibfried and Debbie Boyer of RJL Insurance Services ("RJL"), a California-based insurance agency, were also present for that meeting. At this April 30, 2007 meeting, AKH advised Account Executive Wong that it wanted to buy the insurance presented to it during that meeting for the period of May 1, 2007 through May 1, 2008. On May 2, 2007, Brock prepared and sent the temporary binder by overnight mail from UUIC's Irvine, California office to AKH at its Huntington Beach, California office. UUIC submitted contemporaneous notes evidencing this mailing.[35] Wong declares that he picked up the initial premium check from AKH shortly after the April 30 meeting and gave it to Brock, who sent it to UUIC's bank for deposit. UUIC has presented a contemporaneous note prepared by Brock showing that she received the check on May 7th.[36]

---

[34]Doc. 197, Sanders Decl., Ex. C at 251–54.

[35]Docs. 32 and 166, Wong Decl., Ex. A; Doc. 166, Brock Decl. ¶ 10.

[36]*Id.*

14

The evidence further supports that issuance and delivery of the renewal policy in 2008, as well as acceptance of the premium payment, occurred in California.  Wong's declaration and contemporaneous notes indicate that he met with AKH and RJL's Leibfried in California to discuss the renewal on April 24, 2008.  AKH decided to renew the policy for another year.  The renewal policy was then mailed to Wong and he personally hand delivered the renewal policy to AKH at its corporate headquarters in California.  Brock's declaration likewise establishes that between May 2007 and December 2008, AKH mailed its premium checks to her at UUIC's Irvine, California office.

AKH states without citation to any evidentiary support that it did not utilize an insurance broker to obtain the UUIC policy.  But the record suggests otherwise.  Both Leibfried and Boyer testified by deposition that they negotiated with UUIC to obtain the insurance coverage at issue in this case on behalf of AKH.  They testified that they prepared the bid specifications and participated in extensive communications with UUIC's representatives in the spring of 2007 and 2008.  RJL was located in California and its participation in the negotiation and procurement of the UUIC insurance policies occurred entirely in California.  This fact further supports the Court's finding that the contract was made in California.[37]

AKH insists that under Kansas law, an insurance contract is formed when the insurer accepts the insured's offer to purchase insurance made in an insurance application.[38]  But this is not an entirely accurate recitation of Kansas law.  As explained by the Kansas Supreme Court in

---

[37]*See Layne Christensen v. Zurich Can.*, 38 P.3d 757, 768 (Kan. Ct. App. 2002) (considering the location of the insurance broker acting on behalf of the insured in procuring insurance).

[38]*Hanke v. Am. Fam. Mut. Ins. Co.*, No. 88-2448, 1991 WL 275640, at *3 (10th Cir. Dec. 23, 1991); *Chute v. Old Am. Ins. Co.*, 629 P.2d 734, 741 (Kan. Ct. App. 1981).

*Chute*, "[t]he contract does not come into existence until the offer is accepted *and* the policy is issued and delivered, or premiums are accepted."[39]  Regardless of which party offered and accepted first, the law of Kansas provides that it is issuance and delivery of the policy, or acceptance of the premium, that determines where the insurance contract is made.[40]  The evidence demonstrates that issuance and delivery of the policy occurred in California.  The premiums were also paid in California.

AKH suggests that if contract formation is dictated by delivery of the policy, then the policy was not actually made until July 2007 when the actual policy was personally delivered by Wong to AKH in California, two months after it had become effective.  AKH argues further that payment of the premium and delivery of the binder post-dated the effective date of the policy, May 1, 2007, therefore it could not be the appropriate measure of contract formation.  AKH suggests that "treating anything other than underwriting approval as creating coverage, such as making it hinge on delivery of the binder or the policy, would lead to untoward results—the insured would be covered but not covered."[41]  But AKH provides no support for its contention that delivery of the temporary binder in May should not be considered "delivery" under Kansas law; all of the cases cited by AKH in support of this contention are from California.  AKH's

---

[39]*Chute*, 629 P.2d at 741–42.

[40]AKH points to Farley's deposition testimony (referencing her as a "broker representative") that AKH requested certain changes be made to the proposal at the April 30, 2007 presentation.  Even if this is true, it did not prevent issuance and delivery of the binder on May 1 and May 2, 2007, the last acts necessary to form the contract under Kansas law.  AKH also suggests that because a countersignature by UUIC was required, it was necessarily the last act necessary for contract formation.  AKH does not point the Court to any evidence explaining the countersignature procedure.  But again, delivery would necessarily occur after any countersignature and the evidence is clear that delivery was made in California.

[41]Doc. 182 at 10.

16

position would require a bright line rule that does not comport with established Kansas precedent, which consistently holds that the place of delivery and payment of premium are the appropriate benchmarks for determining where an insurance contract was made.[42]  The Court is bound by Kansas law that holds delivery and payment of the premium dictate the inquiry in this case.  The Court further finds that delivery should be measured by delivery of the binder, which provided AKH with temporary coverage until the actual policy was delivered in July.[43]

UUIC has presented clear evidence that both delivery of the binder and payment of the initial premium occurred in California.  UUIC has presented clear evidence that delivery of the renewal policy and payment of that premium occurred in California.  California law thus applies to determine issues going to the substance of the parties' obligations under the insurance contract to the extent California and Kansas law conflict.

### 3.    Contract Performance

As previously discussed, the law of the place of performance determines whether AKH acted in good faith to settle the R-T lawsuit.  AKH contends that the contract was performed in Kansas, pointing generically to "decisions as to defense and indemnity," and to the issuance of a supplemental reservation of rights letter.  AKH does not specify the defense and indemnity decisions that were made in Kansas, although it has submitted to the Court a reservation of rights letter sent from Zurich's Senior Claims Attorney in Overland Park, Kansas, dated February 29,

---

[42]*See supra* note 30.  Moreover, the Court notes that AKH's proposed rule that the place of underwriting approval should control, at least as applied to this case, would lead to untoward results.  Under this rule, the contract would have been formed before the effective date of the Policy.

[43]*See Slaby v. Cox*, 827 P.2d 18, 23 (Kan. 1992); *Service v. Pyramid Life Ins. Co.*, 440 P.2d 944, 956 (Kan. 1968).

2012.[44]

UUIC argues that the contract was performed in California, pointing to the following: (1) AKH paid its initial premium from its Huntington Beach, California office to UUIC's Irvine California, office; it sent all of its subsequent monthly premiums through December 2008 by regular mail to UUIC's Irvine office; (2) the policy was managed and served by UUIC's Irvine office; (3) the policy insured all of AKH's offices, stores, service centers, Internet businesses, and employees located in California; (4) AKH tendered the R-T Lawsuit to UUIC on December 9, 2011 in California; (5) UUIC defended and settled the R-T lawsuit, a case with a California venue, under a reservation of rights under California law; (6) UUIC retained a California attorney as its chosen litigation counsel to defend the R-T lawsuit; and (7) UUIC handled 75 claims made by AKH in California from May 1, 2007 through May 1, 2009.

While the Court acknowledges that the evidence supports the items of performance cited by UUIC as occurring in California, the key issues of performance with regard to this case involve defense and settlement of the R-T lawsuit. UUIC has presented clear evidence that performance as to the defense and settlement of the R-T lawsuit occurred primarily in California. AKH's tender of the R-T lawsuit was made in California in December 2011 and it was assigned to a Dallas-based claims professional at UUIC to investigate. The original reservation of rights letter, dated January 5, 2012, was mailed to AKH's CEO at his California office from the Dallas

---

[44]Docs. 170 & 174, Ex. 5.  UUIC is a subsidiary of Zurich American Insurance Company ("ZAIC").  Doc. 173, Cole Decl. ¶ 1.  ZAIC has a field office in Overland Park, Kansas.  *Id.*

investigator.[45]  The R-T lawsuit was transferred from Arizona to California, on AKH's motion to

transfer.  AKH used its chosen litigation counsel, Paul Hastings, based in Costa Mesa,

California, to defend the R-T lawsuit.  And the reservation of rights letters reserved UUIC's

rights under California law to seek reimbursement for funds expended that are not ultimately

covered by the UUIC policy.  The evidence also demonstrates that the settlement check was sent

to AKH's litigation counsel at Paul Hastings' Costa Mesa, California office.  In sum, UUIC has

met its burden of showing clear evidence that California, not Kansas, was the place of contract

performance.  Thus, issues going to the manner and method of performance shall be decided

under California law to the extent there is a conflict with Kansas law.[46]

## III.    Conclusion

        The Court has considered the parties' briefs and the evidence submitted and determines

that a true conflict of law exists with regard to two of the four issues presented by the parties in

these motions.  UUIC has presented clear evidence that California is the site where the insurance

contract was both made and performed, therefore California law applies to the extent there is a

conflict between the contract laws of Kansas and California.  Where the law does not conflict,

Kansas law applies as the law of the forum state.

        **IT IS THEREFORE ORDERED BY THE COURT** that the parties' motions to

determine choice of law (Docs. 164, 168) are **granted in part and denied in part**.  UUIC's

---

[45]The reservation of rights letter submitted by AKH, Docs. 170 & 174, Ex. 5, was a supplement to the original letter submitted by UUIC. Doc. 32-9, Palmer Decl., Ex. K.

[46]The Court therefore need not decide the issue of whether AKH should be estopped from asserting that Kansas law applies.

motion asking the Court to apply California law to issues of reimbursement and good faith and fair dealing is granted; it is otherwise denied.  AKH's motion to apply Kansas law to its claim for attorney fees is granted; it is otherwise denied.

**IT IS FURTHER ORDERED** that UUIC's Motion to Strike Affidavit in Support (Doc. 184) is **granted in part and denied in part**.  The Court grants the motion to strike Exhibit 1; the motion is otherwise denied.


Dated: March 23, 2015

         S/ Julie A. Robinson

        JULIE A. ROBINSON

        UNITED STATES DISTRICT JUDGE