IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| AKH COMPANY, INC., | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | |
| | ) | CIVIL ACTION |
| v. | ) | |
| | ) | No. 13-2003-JAR |
| UNIVERSAL UNDERWRITERS | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant/Counter-Claimant. | ) | |
| ——————————————————— | ) | |

## MEMORANDUM AND ORDER

This is an insurance coverage dispute filed by AKH Company, Inc. ("AKH") against its insurance carrier, Universal Underwriters Insurance Company ("UUIC"), arising out of a trademark infringement action by and against AKH which UUIC defended and settled under a reservation of rights. Before the Court are the parties' motions to dismiss (Docs. 228, 233) several claims and counterclaims that were added to the amended pleadings in November, as well as cross motions for partial summary judgment (Docs. 236, 256) on a discrete issue raised by AKH's claim for declaratory judgment that UUIC had a duty to defend the underlying suit: whether UUIC's reservation of rights letters triggered a duty to acknowledge AKH's right to independent counsel and whether that duty was breached. UUIC has also moved to strike (Doc. 264) AKH's reply in support of its motion for partial summary judgment, arguing that it raises new issues not addressed in the initial motion. These motions are ripe for decision.

As described in detail below, the Court denies AKH's motion for partial summary judgment and grants UUIC's motion for partial summary judgment on the limited issue of whether UUIC had a duty to acknowledge a right to independent counsel and whether it breached that duty. The motion to strike AKH's reply is moot because the Court declines to

consider any new arguments raised in AKH's reply brief.  The Court largely denies the motions to dismiss with two exceptions: (1) AKH's motion to dismiss Count IX of UUIC's counterclaim is granted with leave to amend for failure to plead fraud with particularity; and (2) UUIC's motion to dismiss is granted as to AKH's Fifth Cause of Action for Negligence.

## I.     Procedural History

After two years of litigation, the Court is poised to decide the seventh substantive dispositive motion presented by these parties.  Notwithstanding the fairly straightforward nature of the claims presented in this case, the parties' seriatim motions have failed to nudge this case toward either clarity or resolution.  Instead, they have hampered discovery and multiplied these proceedings.  The Court thus finds it helpful to set forth the protracted procedural history of the case thus far.

AKH filed its original Complaint on January 2, 2013, for declaratory relief that UUIC had a duty to defend and settle its underlying consolidated trademark infringement action.  As part of its claim that UUIC breached its duty to defend, AKH alleges that UUIC's reservation of rights constituted a conflict of interest that triggered its obligation to appoint independent counsel to represent AKH in the underlying lawsuit under Cal. Civil Code § 2860.  AKH alleges further that UUIC refused to pay AKH's independent counsel for all of the time to which they are entitled, or at the rates required by the statute.  AKH also asserted a claim for breach of the covenant of good faith and fair dealing.  Two weeks after serving its Complaint and approximately one week before UUIC's answer was due, AKH filed a motion for partial summary judgment that: (1) UUIC has duties to defend and settle the consolidated lawsuits under the policy dated May 1, 2008 to May 1, 2009; (2) no exclusion bars UUIC's duties to

defend or settle the consolidated lawsuits; and (3) UUIC has no right to reimbursement of any of its expenses in the consolidated lawsuits despite its stated reservation of rights.

UUIC answered and brought counterclaims for declaratory relief and breach of contract arising out of its defense and settlement of the underlying lawsuit. UUIC also immediately sought transfer of this case to the Central District of California. After considering the requisite factors, the Court denied transfer, finding no countervailing factors that outweighed AKH's choice of Kansas forum.

Unsurprisingly, the Court denied AKH's premature motion for summary judgment, finding that there were genuine issues of material fact on all matters raised by AKH. In particular, the Court noted that the parties heavily disputed the choice of law that would apply to their respective contract claims, which must be determined by the place the insurance policy was "made." UUIC maintained that the contract was made in California while AKH contended that it was made in Kansas. The Court found that material facts relating to the making and performance of the contract were at issue, thereby precluding a pronouncement as to which state's law applies. And the Court noted that the parties had taken inconsistent positions at various points throughout their multiple motions and lengthy briefs on these early issues, "seemingly tailoring their positions for the sake of expediency." Recognizing that because AKH's summary judgment motion was filed on the heels of service of process, the parties did not have a scheduling order and had not engaged in case management discussions with Magistrate Judge Gale, this Court denied UUIC's motion to bifurcate with respect to discovery without prejudice, in deference to Magistrate Judge Gale's rulings throughout his supervision of the case.

The case then proceeded to pretrial management with Judge Gale.  The parties litigated a motion for a protective order and delayed the scheduling conference pending resolution of that motion until January 2014.  At that time, the parties asked for a ninety-day period to resolve discovery disputes among themselves and set a February 28, 2014 deadline by which to file motions to compel.  Both parties ultimately litigated their respective motions to compel and a supplemental scheduling order was entered in April 2014.  The parties agreed to a July 2014 deadline for filing choice of law motions, which they represented to be a threshold issue in this case, and set a deadline of May 2014 to file motions to dismiss and motions to amend.  The parties proceeded to file their motions to determine choice of law, focusing solely on the issue of choice of law on the contract claims, which required a determination about where the contract was made and performed.  Those motions went under advisement in August 2014.  While those motions were pending, the parties continued to litigate a motion to compel concerning whether the crime-fraud exception to the attorney-client privilege applied to certain documents withheld by AKH concerning settlement of the underlying lawsuit filed against it by the Reinalt-Thomas Corporation ("RT").  Judge Gale ordered *in camera* review of certain documents, and in October 2014, ultimately ordered AKH to produce 77 of the documents at issue to UUIC.

In November 2014, the parties jointly moved for leave to amend their pleadings, which was granted.  Both parties added tort claims based on the other's alleged conduct before, during, and after settlement of the underlying lawsuits.  On November 14, 2014, UUIC filed its Third Amended Answer and Counterclaim, adding counterclaims for negligent misrepresentation, intentional or affirmative misrepresentation, concealment or fraud by silence, and statutory

claims under California and Kansas insurance codes.[1]  UUIC alleges that AKH made the following misrepresentations in conjunction with the settlement: (1) RT was demanding a very high amount to settle the claims; (2) RT was pushing for settlement immediately and demanding settlement within days of the demands conveyed to UUIC; (3) RT had issued a time-sensitive demand when AKH demanded UUIC's policy limits; (4) a reasonable settlement value for the consolidated underlying lawsuits was at or above policy limits; (5) that the policy limits as paid by UUIC would be used to protect AKH, compensate RT, and resolve RT's claims; and (6) that settlement needed to occur immediately upon AKH's demands or UUIC would be exposing AKH to significant damage and injury.  UUIC further alleges that it later learned that these representations were not true; that AKH either made these misrepresentations knowingly or failed to exercise reasonable care or competence to obtain or communicate true information; that UUIC justifiably relied on this information in paying $5 million to settle the claim, which it would not have paid had it known all of the true facts; and that the misrepresentations and resulting reliance caused UUIC to pay more to settle the underlying lawsuits than it otherwise would have paid.

UUIC also alleges a claim of fraudulent concealment, claiming that AKH intentionally concealed material facts from UUIC during and in relation to the RT lawsuit , including the following: (1) that the $5 million payment, which UUIC paid directly to RT, was immediately transferred to AKH upon receipt by RT; (2) AKH and RT had fully executed settlement documents prior to UUIC's payment; (3) that RT and AKH had filed stipulations of dismissal of the consolidated underlying lawsuits prior to UUIC's payment; (4) that RT had proposed a

---

[1]Doc. 225 at 65–78, Counts VIII–X, XII–XIII.

5

global settlement in November 2012 by which UUIC would not pay any money; (5) that AKH

and RT had been engaged in settlement discussions from September to December 2012; (6) that

AKH and RT had agreed to final settlement amounts before UUIC tendered its policy limits

upon AKH's demand; (7) RT and its counsel raised concerns to AKH and its agents in December

2012 regarding whether UUIC was being properly informed as to the terms and progression of

settlement, whether UUIC had agreed to the settlement structure, and whether the settlement

structure was appropriate; (8) communications between AKH and RT regarding settlement

structure and amounts; and (9) basic information sufficient for UUIC to make a fully informed

decision on the reasonableness of the settlement or of AKH's demands for policy limits.

   In addition to these tort claims, UUIC alleges a California statutory claim that applies

when independent counsel is selected by the insured.[2]   UUIC alleges that AKH breached a

statutory duty to disclose to the insurer all information concerning the underlying action except

privileged materials, and to timely inform and consult with the insurer on matters relating to the

action.   UUIC further alleges a statutory claim under K.S.A. § 40-2,118 for restitution and

declaratory relief under the Kansas Fraudulent Insurance Act, claiming AKH knowingly and

with intent to defraud presented a claim for payment and other benefit, along with written

statements in support of that claim, knowing it contained materially false information.

   On November 25, 2014, AKH filed an Amended Complaint adding claims for negligent

misrepresentation, negligence, and intentional misrepresentation.[3]   AKH alleges that UUIC made

the following false and misleading statements with regard to its defense and indemnity of the R-

---

[2]Cal. Civil Code § 2860(d).

[3]Doc. 227 at 26–42, Counts IV–VI.

T lawsuits: (1) that AKH was not entitled to select personal counsel to defend AKH in the underlying action at UUIC's expense; (2) that its reservation of rights letters did not trigger a Cumis obligation entitling AKH to personal counsel pursuant to Cal. Civil Code § 2860; (3) that AKH was not entitled to personal counsel to defend the underlying action at the carrier's expense; (4) that it was entitled to assign panel counsel of UUIC's choice to defend AKH in the underlying action and to leave AKH to its own resources with respect to funding the defense of the underlying action by personal counsel; (5) that it was entitled to assign the panel firm of Gordon & Rees to defend AKH in the underlying action; (6) that AKH would have to agree to the terms that UUIC was willing to offer in return for being permitted to use Paul Hastings as personal counsel; (7) that AKH was required to accept not 100 percent of the defense of the claims against it, but only 50%; (8) that Paul Hastings was not entitled to be compensated for actions undertaken to defend AKH if those actions were also required to prosecute the affirmative claims by AKH; (9) that Paul Hastings had to accept a drastically reduced hourly rate of $285, a fraction of Paul Hastings' normal rate and well below the rates that UUIC had agreed to pay to Gordon & Rees; (10) that it was entitled to audit the bills of Paul Hastings to deny payment of any bills that were not consistent with UUIC  guidelines for panel counsel; (11) that it was entitled to deny payment for all block billings by Paul Hastings, and assigned its own arbitrary meaning to block billing; (12) that it was entitled to refuse to pay bills for serendipitous reasons, or for no real reason at all, such as without explanation simply because of a choice of words, e.g., the use of words such as "schedule," or "continue preparation" in the bill; (13) that it could defend a case by paying for an estimated 15% of the defense fees; (14) that there was a standard other than reasonableness which governed its responsibility for the payment of the Paul

Hastings bills; (15) that it was fully defending the insured even though it had materially breached every aspect of the defense obligation and left AKH drowning in legal fees; (16) that it did not know the $5,000,000 it agreed to pay in settlement was part of a settlement of the entire trademark dispute as to which AKH was receiving a payment for transfer to RT of trademark rights; (17) that it did not know prior to the issuance of its settlement check the nature of the underlying settlement and did not know that monies paid to RT would "triangle" to AKH; (18) that it would not have issued the check if it had known that $13,000,000 was being paid by RT to AKH; (19) the reasons for its payment of $5,000,000 and that it lacked knowledge regarding the terms of the underlying settlement; (20) that the underlying case had settled prior to its payment of $5,000,000; (21) that it has certain policy exclusions though these have no possible application.

AKH alleges what it claims are the true facts contrary to the misrepresentations, that these misrepresentations were negligently made, that UUIC induced AKH to accept interim funding of the defense based on false terms and representations, and that it sustained losses based on inadequate defense of the underlying lawsuits.

AKH's negligence claim alleges that UUIC had a duty to act in good faith and fair dealing so that AKH would receive the benefits it owed under the policy, that the parties had a fiduciary relationship, and that UUIC should have known that its laundry list of misrepresentations were false. AKH alleges that the "reservation of rights letters, including as to intentional acts exclusions, contained the plainest of Cumis triggers," and that there is no reason a reasonable insurance carrier would have believed the representations made by UUIC.

AKH's intentional misrepresentation claim alleges that several written statements by

UUIC representatives contain fraudulent statements.  AKH identifies both reservation of rights letters, as well as subsequent emails and other correspondence following up on UUIC's positions during the course of the underlying lawsuit.  AKH attached these documents to the Amended Complaint.  Most of these emails concern the payment formula UUIC agreed to with respect to AKH's counsel in the underlying suit.  AKH alleges that these material, untrue statements induced it to pay interim funding for its counsel, and to settle the underlying lawsuit, causing damages.

UUIC subsequently filed a Fourth Amended Answer and Counterclaim[4] in response to the Amended Complaint.  The allegations in the Fourth Amended Counterclaim are the same as those in the Third Amended Counterclaim, so the Court construes AKH's motion to dismiss as applying to this more recent pleading.

On December 12, 2014, AKH filed its motion for partial summary judgment on the following issue: that UUIC had a "duty and breach[ed that] duty regarding the acknowledgment of a right to Cumis counsel."[5]  UUIC responded, denying that its reservation of rights created a conflict of interest or triggered a duty to acknowledge such a conflict, and cross-moved for summary judgment that it did not breach an alleged duty to acknowledge AKH's right to independent counsel.

On March 11, 2015, this Court ruled on the parties' choice of law motions.  It found several issues for which a conflict existed, and ruled that because the contract was both made

---

[4]Doc. 235.

[5]Doc. 237 at 1.  The term "Cumis counsel" is based on the case of *San Diego Navy Federal Credit Union v. Cumis Ins.*, 208 Cal. Rptr. 494 (Cal. 1984), which acknowledged an insurer's duty to appoint independent counsel under certain circumstances.  The case was superseded by statute, so the duty is now governed by Cal. Civil Code § 2860, commonly referred to as the Cumis statute.

and performed in California, California law would apply.  On April 1, 2015, the parties filed a

joint motion to revise the scheduling order yet again.  They sought an extension of 90 days,

because the claims in this case are still "unsettled," given the pending motions to dismiss and for

partial summary judgment.  They stated in their motion that:

> At this point, the parties are not only unaware of what claims
> remain between them, but they are also unaware of each other's positions
> on and defenses to the claims alleged against them.  Both parties believe
> that to continue with the current schedule while the pleadings are not final
> would not be productive and would require the parties to expound costs
> that may not ultimately move the case forward. If the motions are
> successful, even if only in part, they would narrow the scope of the
> allegations and claims ultimately to be litigated, which would impact the
> issues to be addressed by the parties in discovery and motions. The same
> is true for the Cross-Motions for Partial Summary Judgment that are
> outstanding.
> In addition, the parties need to take additional discovery that may
> impact the outstanding issues. The parties are also discussing the
> possibility of a second mediation.[6]

Judge Gale granted the parties request, and extended the discovery deadline to November 2014,

the dispositive motions deadline to January 4, 2016, and the bench trial date to October 3,

2016—three and one-half years after the case was initiated.

## II.     Motions for Partial Summary Judgment

### A.     Standard

Summary judgment is appropriate if the moving party demonstrates that there is no

genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.[7]  In

applying this standard, the court views the evidence and all reasonable inferences therefrom in

---

[6]Doc. 278 at 3–4.

[7]Fed. R. Civ. P. 56(a); *see also Grynberg v. Total*, 538 F.3d 1336, 1346 (10th Cir. 2008).

the light most favorable to the nonmoving party.[8]  "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the nonmoving party, is such that a reasonable jury could return a verdict for the nonmoving party."[9]  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[10]  An issue of fact is "genuine" if "'the evidence is such that a reasonable jury could return a verdict for the non-moving party.'"[11]

The moving party initially must show the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[12]  In attempting to meet this standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.[13]

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[14]  The nonmoving party

---

[8]*City of Harriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

[9]*Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[10]*Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[11]*Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[12]*Spaulding v. United Trasp. Union*, 279 F.3d 901, 904 (10th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[13]*Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler*, 144 F.3d at 671); *see also Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010).

[14]*Anderson*, 477 U.S. at 256; *Celotex*, 477 U.S. at 324; *Spaulding*, 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

may not simply rest upon its pleadings to satisfy its burden.[15]  Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[16] When the moving party also bears the burden of proof at trial,

> a more stringent summary judgment standard applies. Thus, if the moving party bears the burden of proof, to obtain summary judgment, it cannot force the nonmoving party to come forward with "specific facts showing there [is] a genuine issue for trial" merely by pointing to parts of the record that it believes illustrate the absence of a genuine issue of material fact. Instead, the moving party must establish, as a matter of law, all essential elements of the issue before the nonmoving party can be obligated to bring forward any specific facts alleged to rebut the movant's case.[17]

To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein."[18] Rule 56(c)(4) provides that opposing affidavits must be made on personal knowledge and shall set forth such facts as would be admissible in evidence.[19]  The non-moving party cannot avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation.[20]

"Where, as here, the parties file cross motions for summary judgment, [the Court is] entitled to assume that no evidence needs to be considered other than that filed by the parties, but

---

[15]*Anderson*, 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001).

[16]*Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197–98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 671); *see Kannady*, 590 F.3d at 1169.

[17]*Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008) (citations omitted).

[18]*Adams*, 233 F.3d at 1246.

[19]Fed. R. Civ. P. 56(c)(4).

[20]*Id.*; *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) (citation omitted).

summary judgment is nevertheless inappropriate if disputes remain as to material facts."[21]  Cross motions should be considered separately.[22]  Just because the Court denies one does not require that it grant the other.[23]

Finally, summary judgment is not a "disfavored procedural shortcut;" on the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[24]  In responding to a motion for summary judgment, "a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."[25]

### B.    Uncontroverted Facts

The following material facts are uncontroverted for purposes of summary judgment.[26]  In May of 2010, The Reinalt-Thomas Corporation dba Discount Tire ("RT") filed a civil action against AKH in the District of Arizona, asserting claims for trademark infringement, false designation of origin, and violation of the Anticybersquatting Consumer Protection Act.  AKH in turn filed its own civil action against RT in the Central District of California and successfully moved to transfer venue of the first action to the Central District of California.  The two lawsuits

---

[21]*James Barlow Family Ltd. P'ship v. David M. Munson, Inc.*, 132 F.3d 1316, 1319 (10th Cir. 1997) (citation omitted).

[22]*Ultra Clean Holdings, Inc. v. TFG-Cal., L.P.*, 534 F. App'x 776, 780 (10th Cir. 2013) (quoting *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979)).

[23]*Id.*

[24]*Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

[25]*Conaway v. Smith,* 853 F.2d 789, 794 (10th Cir. 1988).

[26]The Court does not consider facts presented by the parties that the record does not support or that are not relevant to the legal issues presented.  Nor does the Court consider legal arguments included in the parties' statements of fact.

were consolidated and ultimately settled in December of 2012.  In October 2010, AKH retained

the law firm of Paul Hastings as its counsel in the consolidated lawsuit.  AKH tendered its

defense and indemnity of the first amended complaint filed by RT to UUIC in December 2011,

and requested that UUIC appoint Paul Hastings as AKH's defense counsel in the RT lawsuit.

On January 5, 2012, UUIC sent its first reservation of rights letter to Hratch Andonian at

AKH in Anaheim, California.  In this letter, UUIC summarized the various counts raised by RT

against AKH in the underlying lawsuit, quoted from several relevant policy provisions, and

explained its reasons for reserving its rights.  Included in its recitation of several policy

exclusions, was the "Intent to Cause Harm" exclusion, which applies to "any act committed by

or at the direction of the INSURED with intent to cause harm.  This exclusion does not apply if

INJURY arises solely from the intentional use of reasonable force for the purpose of protecting

persons or property."[27]  The reasons provided by UUIC in that letter for reserving its rights are:

(1) there is a question about when the alleged trademark infringement occurred; and (2) there is

no coverage available for allegations or causes of action that do not meet the INJURY and/or

DAMAGES definitions in the policy.  The letter advises that because some of the claims may not

be covered by the policy, "you may want to employ your own attorney to participate in the

defense . . . .  However, this Company will not be responsible for any services incurred by your

attorney."[28]  The letter indicated that panel counsel for UUIC would be assigned to defend.  The

law firm of Gordon & Rees was initially assigned by UUIC, but by February 1, 2012, Ms.

Palmer and Mr. Andonian spoke on the telephone and agreed that AKH would "pay the

---

[27]Doc. 238, Ex. 1 at 3.

[28]*Id.* at 4.

14

difference of your attorney's rate and the attorney we've hired to represent you."[29]  Gordon &

Rees never entered an appearance in the underlying lawsuit.

On February 29, 2012, Stephanie Cole, a Senior Claims Attorney for UUIC, sent another

letter to Mr. Andonian, stating that she has taken over handling the claim, and that her letter was

to supplement the January 5 letter.  The letter reiterates that UUIC

> has agreed to defend AKH against the claims asserted against it in
> the [underlying action] subject to a complete reservation of rights. .
> . .  Universal is willing to pay for AKH's choice of counsel instead
> of assigning provided that AKH's choice of counsel agrees to
> abide by the terms of California Civil Code section 2860 and
> complies with Universal's defense counsel guidelines and billing
> rates . . . .  Universal does specifically reserve the right to appoint
> counsel of Universal's choice at any time and, if it does so, AKH
> would be solely responsible for all fees and costs incurred by its
> own selected counsel should AKH choose to utilize that counsel.[30]

As with the first UUIC letter, Ms. Cole's letter quoted several sections from the policy and

summarized RT's claims against AKH.  She then set forth the coverage issues identified by

UUIC: (1) whether coverage is available based on the timing of the infringement; (2) that there is

no coverage available for allegations or causes of action that do not meet the INJURY and/or

DAMAGES definitions in the policy; (3) that there may be no coverage under California public

policy and common law for certain types of liability; and (4) that the intentional act exclusion

may apply.

Paul Hastings defended AKH continuously until the underlying litigation was settled.

**C.    Discussion**

AKH's motion presents very limited issues: whether UUIC had a duty to acknowledge

---

[29]Doc. 273, Ex. G at 2.

[30]Ex. 238, Ex. 2 at 1.

AKH's right to independent Cumis counsel on the basis of its reservation of rights letters, and if so, whether UUIC breached that duty.  AKH contends that the reservation of rights letters triggered a Cumis obligation because they invoked the intentional acts exclusion in the insurance policy.  UUIC responds that it had neither a duty to appoint nor acknowledge the right to Cumis counsel because AKH retained Paul Hastings before tendering the defense, because there is no duty under California law to acknowledge the right to Cumis counsel, and because the parties' obligations as to payment for counsel were determined by agreement.  UUIC argues further that even if such a duty existed, UUIC satisfied that duty because AKH was defended by its choice of counsel, Paul Hastings.

Under Cal. Civil Code § 2860(a), if a duty to defend arises under the terms of an insurance policy, "and a conflict arises which creates a duty on the part of the insurer to provide independent counsel to the insured, the insurer shall provide independent counsel to represent the insured unless, at the time the insured is informed that a possible conflict may arise or does exist, the insured expressly waives, in writing, the right to independent counsel."  The statute provides further that a conflict of interest does not exist solely because there are allegations for which the insurer denies coverage.[31]  But "when an insurer reserves its rights on a given issue and the outcome of that coverage issue can be controlled by counsel first retained by the insurer for the defense of the claim, a conflict of interest *may* exist."[32]  However, the "mere possibility of an unspecified conflict" is not enough; it must be significant, not merely theoretical, actual, not

---

[31] § 2860(b).

[32] *Id.* (emphasis added).

16

merely potential."[33]  The existence of a conflict of interest is a question of law for the Court to decide.[34]

The most common conflict of interest situation arises "when the insured's allegedly wrongful conduct could be found to be intentional, with coverage thus depending on the ultimate characterization of the insured's action."[35]  To be sure, both reservation of rights letters sent by UUIC in this case quoted the intentional acts exclusion.  But the first letter did not reference this exclusion in the reasons for reservation.  And while the second letter stated that coverage may be limited by this exclusion, it did not explain how.  While the reservation of rights letters certainly created a potential conflict of interest, AKH's argument that the intentional acts exclusion by definition triggered a conflict of interest is not supported by law.  While a conflict of interest commonly arises when this exclusion is invoked, AKH fails to explain or submit evidence about how this coverage issue "could be controlled by counsel first retained by" UUIC.

But assuming that the reservation of rights letters created an actual and not potential conflict of interest by suggesting coverage could be denied if AKH's alleged conduct in the underlying lawsuit is found to be intentional, the uncontroverted facts establish that UUIC did not breach any duty to appoint independent counsel.  UUIC agreed to pay for AKH's choice of counsel "instead of assigning" as long as its choice of counsel agreed to abide by § 2860—the Cumis statute.  It is uncontroverted that Paul Hastings represented AKH beginning in 2010 through the settlement of the underlying suit.  And AKH presents no evidence to suggest UUIC

---

[33]*Dynamic Concepts, Inc. v. Truck Ins. Exch.*, 71 Cal. Rptr. 2d 882, 887 (Cal. Ct. App. 1998).

[34]*Endurance Am. Specialty Co. v. Lance-Kashian & Co.*, No. CV F 10-1284 LJO BAM, 2011 WL 5417103, at *21 (E.D. Cal. Nov. 8, 2011).

[35]*Long v. Century Indem. Co.*, 78 Cal. Rptr. 3d 483, 492 (Cal. Ct. App. 2008).

controlled the coverage issues in the underlying suit.  It is uncontroverted that Gordon & Rees never entered an appearance in the underlying suit.  All of the correspondence submitted by AKH concerns the disagreement between the parties as to the fee split: UUIC agreed to pay 50% of the Paul Hastings fees on a reduced fee schedule given that the underlying suit was consolidated with an affirmative lawsuit by AKH that was not covered by the policy, while AKH understood that UUIC would pay for 100% of its fees on the reduced fee schedule.  But this disagreement solely concerns a different question under the Cumis statute: whether the insurer fulfilled its obligation to pay fees under the standard set forth in § 2860(c).  There is no evidence that UUIC restricted discovery activities, dictated the defense strategy, or otherwise controlled coverage issues in the underlying suit.  AKH points the Court to no evidence that UUIC's billing guidelines implicated any of Paul Hastings strategic decisions in the underlying suit.[36] And there is no evidence to suggest that Paul Hastings did not owe its primary obligation to AKH in its defense of the underlying litigation.[37]

The Court finds the facts of this case to be analogous to *Endurance American Specialty Co. v. Lance-Kashian & Co.*, where the United States District Court for the Eastern District of California found that a conflict did not arise under § 2860(b) where the insured's chosen counsel

---

[36]*See Wallis v. Centennial Ins. Co.*, 982 F. Supp. 2d 1114, 1123 n.4 (E.D. Cal. 2013) ("plaintiffs have not shown the billing guidelines imposed by defendants were unreasonable or unnecessary. In any event, the imposition of billing guidelines is not actionable here since there is no evidence that plaintiffs' attorneys were precluded from engaging in any specific discovery, hiring of expert witnesses, conducting research, or pursuing any other litigation tactic. Nor have plaintiffs demonstrated they suffered any damages as a result of the billing guidelines."); *Pepsi-Cola Metro. Bottling Co. v. Ins. Co. of N. Am., Inc.*, No. 10-2696 SVW, 2010 WL 10875087, at *9–10 (C.D. Cal. Dec. 28, 2010) ("the evidence does not show that the 'billing guidelines' were applied in a manner that influenced Latham's substantive strategy decisions, but instead, it appears that the purpose and result of the guidelines is to reduce overall fees based on objective standards relating to billing practices. Much like reducing the overall hourly billing rates under § 2860 to conform with those ordinarily charged in the community, the application of the guidelines in this case appears to turn on reducing costs that the insurer finds needless or unexplained, under strategy-neutral criteria.").

[37]*See Dynamic Concepts, Inc.*, 71 Cal. Rptr. 2d at 888.

did not control the outcome of the coverage issue on which the insurer reserved rights.[38]
Because the insureds' counsel represented them in the underlying case, and because the insureds
did not claim that their chosen counsel acted contrary to their interests, there was no conflict of
interest.  Instead, the dispute centered around the payment of chosen counsel's requested fees—a
different issue.[39]  Moreover, the court found that the insurer did not breach a duty to inform the
insureds of their right to independent counsel to secure a waiver because the insureds used their
own independent counsel.[40]  As in *Endurance*, there is no evidence in this case to suggest that
Paul Hastings had any control over the coverage issues, nor is there any evidence that it had any
kind of attorney-client relationship with UUIC.  AKH used its chosen independent counsel and
therefore UUIC could not have breached a duty to acknowledge that AKH had a right to
independent counsel.  And as in *Endurance*, the crux of AKH's claim is that UUIC failed to pay
all of the attorney fees to which it was entitled, not whether it was provided independent counsel.

AKH makes the conclusory allegation that Paul Hastings had a tripartite relationship with
AKH and UUIC.  It asserts throughout the Amended Complaint that UUIC treated Paul Hastings
as "appointed counsel."  But AKH presents no evidence to support this contention.  Nor is there
any evidence in the summary judgment record to suggest that Paul Hastings had an incentive to
attach liability to AKH.[41]  The question of the proper rates to be paid or whether UUIC had a
duty to defend that encompassed the affirmative claims asserted by AKH in the underlying

---

[38]2011 WL 5417103, at *22.

[39]*Id.*

[40]*Id.*

[41]*See Park Townsend LLC v. Clarendon Am. Ins. Co.*, 916 F. Supp. 2d 1045, 1054 (N.D. Cal. 2013); *James 3 Corp. v. Truck Ins. Exch.*, 111 Cal. Rptr. 181, 187–88 (Cal. Ct. App. 2001).

consolidated action are separate questions that are not material to the limited issues presented in the motions for partial summary judgment.

As the party with the burden of proving its declaratory judgment action on the duty to defend, AKH must show that UUIC breached its duty to acknowledge AKH's right to independent counsel as a matter of law.  AKH has not met this burden.  In fact, UUIC has met its summary judgment burden as the party that does not bear the burden of proof at trial, of showing a lack of evidence to suggest UUIC breached any duty to <u>acknowledge</u> AKH's right to independent counsel.  The uncontroverted facts establish that UUIC agreed to pay for AKH's already-retained counsel in 2012, provided counsel would be subject to the Cumis statute and UUIC's billing guidelines.  AKH has not demonstrated a genuine issue of material fact about whether UUIC breached any duty to acknowledge its right to its own counsel of choice.

The Court is permitted to grant UUIC's motion to strike AKH's reply brief to the motion for partial summary judgment as uncontested because AKH failed to file a response.[42]  The basis for the motion to strike is that the reply raises new arguments not addressed in the initial motion.  Because the Court has constrained its analysis to the limited issues presented by AKH's initial motion, the motion to strike or in the alternative, file a surreply, is moot.

## III.    Motions to Dismiss

### A.    Standards

Both parties seeks dismissal of certain claims and counterclaims in the amended pleadings for failure to state a claim upon which relief may be granted.  To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must present factual allegations, assumed to

---

[42]*See* D. Kan. Rule 7.4(b).

be true, that "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face."[43]  Under this standard, "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[44]  The plausibility standard does not require a showing of probability that "a defendant has acted unlawfully,"[45] but requires more than "a sheer possibility."[46]

The plausibility standard enunciated in *Bell Atlantic v. Twombly*,[47] seeks a middle ground between heightened fact pleading and "allowing complaints that are no more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,' which the Court stated 'will not do.'"[48]  *Twombly* does not change other principles, such as that a court must accept all factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[49]

The Supreme Court has explained the analysis as a two-step process.  For purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but] we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"[50]  Thus, the Court must first determine if the allegations are factual and entitled to an assumption of truth,

---

[43]*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

[44]*Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

[45]*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[46]*Id.*

[47]*Twombly*, 550 U.S. at 544.

[48]*Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555).

[49]*Id.* (citing *Twombly*, 550 U.S. at 556).

[50]*Iqbal*, 556 U.S. at 678.

or merely legal conclusions that are not entitled to an assumption of truth.[51]  Second, the Court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[52]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[53]

Under Fed. R. Civ. P. 9, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."[54]  The rule's purpose is to provide the defendant fair and adequate notice of the claim and to allow the defendant to respond on an informed basis.[55]  A fraud claim requires "the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof."[56]  The rule allows "malice, intent, knowledge, and other condition of mind of a person" to be averred generally.[57]  "Allegations of fraud may be based on information and belief when the facts in question are peculiarly within the opposing party's knowledge and the complaint sets forth the factual basis for the plaintiff's belief."[58]

---

[51]*Id.* at 679.

[52]*Id.*

[53]*Id.* at 678.

[54]Fed. R. Civ. P. 9(b).

[55]*Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 987 (10th Cir. 1992).

[56]*Tal v. Hogan*, 453 F.3d 1244, 1263 (10th Cir. 2006) (citing *Koch v. Koch Indus.*, 203 F.3d 1202, 1236 (10th Cir. 2000)) (quoting *Lawrence Nat'l Bank v. Edmonds*, 924 F.2d 176, 180 (10th Cir. 1991)); *see also Glen Holly Enter., Inc. v. Tektronix, Inc.*, 100 F. Supp. 2d 1086, 1094 (C.D. Cal. 1999).

[57]Fed. R. Civ. P. 9(b); *see Scheidt v. Klein*, 956 F.2d 963, 967 (10th Cir. 1992).

[58]*Scheidt*, 956 F.2d at 967; *see also Koch*, 203 F.3d at 1236.

**B.      Discussion**

UUIC moves to dismiss Counts IV–VI of the Amended Complaint on the following grounds: (1) they do not allege the essential elements of misrepresentations of material fact or the supplying of false information, intent, and reliance; (2) the representations at issue are privileged because they were made in relation to litigation; and (3) AKH's tort claims are precluded because they are based on a breach of contractual duties.  AKH moves to dismiss Counts VIII–X, and XII–XIII of UUIC's Fourth Amended Counterclaims on the following grounds: (1) the fraud claim is not pled with particularity under Rule 9(b); (2) the basis for UUIC's fraud claim is the same as its contract claims; and (3) Count XII for relief under Cal. Civil Code § 2860(d) does not apply to this case because UUIC did not acknowledge a conflict of interest, which is a prerequisite to suit under this section.  The Court first considers the tort claims, which include UUIC's claim under the Kansas statute.  The Court then addresses the sufficiency of UUIC's claim under Cal. Civil Code § 2860(d).

**1.      Tort Claims**

**a.      Independence, Privilege, and Statements of Opinion**

In order to decide several issues raised in these motions, the Court must determine the law that applies to the parties' tort claims.  AKH wholly fails to address this issue and, of course, the Court's prior Order on choice of law did not address the tort claims because they were not added to the pleadings until after the choice of law motions had been briefed.  UUIC moves for dismissal under both California and Kansas law, but does not take a position as to which body of law applies.  "[A] federal court sitting in diversity must apply the substantive law of the state in

which it sits, including the forum state's choice-of-law rules."[59]  Kansas applies the law of the state where the tort injury occurred.[60]

The parties have presented no argument or evidence to establish where the tort injury occurred in this case.  And most troubling, the parties appear to pick and choose the law that applies to the claims raised in these motions based on which body of law is most favorable on any particular issue.  For example, AKH cites Kansas law for most of the issues addressed by these motions, except when it argues that UUIC's alleged representations are statements of fact and not statements of nonactionable opinions.  And while UUIC presumably contends that California law controls these claims, it purports to assert its own claim under Kansas statutory law in Count XIII of its Counterclaim.

The choice of law may dictate several issues raised by the parties in their motions to dismiss.  The analysis about whether the contract claims preclude the tort claims is slightly different under California and Kansas law.  Under California law, the economic loss doctrine bars tort claims based on the same facts and damages as breach of contract claims.[61]  The purpose of this rule is to prevent "the law of contract and the law of tort from dissolving one into the other."[62]  In the insurance context, breach of the implied covenant of good faith and fair dealing may give rise to tort remedies given the special relationship between the insurer and its

---

[59]*Boyd Rosen & Assocs., Inc. v. Kan. Mun. Gas Agency*, 123 F.3d 1351, 1352–53 (10th Cir. 1997).

[60]*Ling v. Jan's Liquors*, 703 P.2d 731, 735 (Kan. 1985).

[61]*Robinson v. Helicopter Co. v. Dana Corp.*, 102 P.3d 268, 273–74 (Cal. 2004); *Multifamily Captive Grp., LLC v. Assurance Risk Managers, Inc.*, 629 F. Supp. 2d 1135, 1146 (E.D. Cal. 2009).

[62]*See, e.g.*, *Multifamily Captive Grp., LLC*, 629 F. Supp. 2d at 1145 (quoting *Robinson v. Helicopter Co.*, 102 P.3d at 273).

insured.[63]  Specifically, an insurer's breach of the duty of good faith and fair dealing is governed

by tort principles.[64]  Otherwise, tort recovery is precluded for noninsurance contract breaches in

the absence of a violation of an independent duty arising under tort law.[65]  Under Kansas law, a

tort "must be independent of [a] contract claim."[66]  A tort claim will be considered independent if

it is based on a duty that is independent of the contract.[67] The key inquiry under Kansas law is

whether the contract calls for a specific result.[68]

There is one claim that the Court is able to dismiss on independence grounds regardless

of whether California or Kansas law applies, and that is AKH's negligence claim.  That claim

alleges that UUIC had a duty to act in good faith and fair dealing to ensure that AKH would

receive the benefits it was owed under the Policy.  As described above, the covenant of good

faith and fair dealing may form the basis for a tort claim under California law by an insured

against its insurer, yet AKH's Count III alleges a claim for breach of the covenant of good faith

and fair dealing.  AKH's negligence claim is precluded under California law because it is either

duplicative of Count III or because it is based entirely on a breach of duty found in the insurance

_____

[63]*See, e.g.*, *Foley v. Interactive Data Corp.*, 765 P.2d 373, 395–96 (Cal. 1988); *United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.*, 660 F. Supp. 2d 1163, 1181–82 (C.D. Cal. 2009).

[64]*Kransco v. Am. Empire Surplus Lines Ins. Co.*, 2 P.3d 1, 9 (Cal. 2000), *as modified* (July 26, 2000); *United Guar. Mortg. Indem. Co.*, 660 F. Supp. 2d at 1181 (discussing the special "bad faith" exception for insurers).

[65]*Freeman & Mills, Inc. v. Belcher Oil Co.*, 900 P.2d 669, 679–80 (Cal. 1995).

[66]*Universal Premium Acceptance Corp. v. Oxford Bank & Trust*, 277 F. Supp. 2d 1120, 1129–30 (D. Kan. 2003) (citing *Graphic Techs., Inc. v. Pitney Bowes, Inc.*, 998 F. Supp. 1174, 1179–80 (D. Kan. 1998)).

[67]*Id.*

[68]*Clark v. Assocs. Comm. Corp.*, 149 F.R.D. 629, 636 (D. Kan. 1993) (quoting *Hunt v. KMG Main Hurdman*, 839 P.2d 45, syl. ¶ 4 (Kan. Ct. App. 1992); *see also Fed. Kemper Life Assurance Co. v. Ellis*, 28 F.3d 1033, 1042 n.10 (10th Cir. 1994); *Brady v. United States*, No. 96-1106-MLB, 1997 WL 321300, at *1 (D. Kan. Apr. 8, 1997).

contract.[69]  The duty invoked in this case is not independent of the contract because whether

certain policy exclusions apply and whether UUIC had a duty to defend and indemnify is a

contractual duty.  "Any negligence law duty of care which might devolve upon an insured when

that insured enters into an insurance contract would be coterminous with the insured's

contractual duties."[70]  Likewise, under Kansas law, a breach of good faith and fair dealing

sounds in contract and not tort.[71]  Therefore, the source of the duty alleged in that claim is the

contract, and the contract will dictate the result if there is a breach.

Application of the litigation privilege depends on whether California or Kansas law

applies.  Under California law, an absolute litigation privilege applies to publications or

broadcasts made in judicial proceedings.[72]  The privilege has been applied to any communication

and to all torts other than malicious prosecution, including negligence and negligent

misrepresentation.[73]  Kansas applies the litigation privilege only to actions for slander, libel, or an

invasion of privacy tort that involves publication.[74]

And the issue of whether UUIC's alleged misrepresentations constitute statements of fact

or opinion is not adequately dealt with by either party.  Under both California and Kansas law,

---

[69]*See Lennane v. Am. Zurich Ins. Co.*, No. 2:13-CV-02311 JAM AC, 2014 WL 546061, at *4-5 (E.D. Cal. Feb. 10, 2014) ("In California, 'negligence is not among the theories of recoveries generally available against insurers.'" (quoting *Tento Int'l, Inc. v. State Farm Fire & Cas. Co.*, 222 F.3d 660, 664 (9th Cir.2000))).

[70]*United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.*, 660 F. Supp. 2d 1163, 1184 (C.D. Cal. 2009) (quoting *Agricultural Ins. Co. v. Superior Court*, 70 Cal. App. 4th 385, 389 (1999)).

[71]*See, e.g.*, *Terra Venture, Inc. v. JDN Real Estate Overland Park, L.P.*, 443 F.3d 1240, 1244 (10th Cir. 2006).

[72]Cal. Civil Code § 47(b).

[73]*Home Ins. Co. v. Zurich Ins. Co.*, 116 Cal. Rptr. 2d 583, 587 (Cal. Ct. App. 2002).

[74]*See Clear Water Truck Co. v. M. Bruenger & Co.*, 519 P.2d 682 (Kan. 1982).

statements of opinion are generally not actionable, but there is an exception where "'the terms of dealings are not equal, and the representor has superior knowledge of the subject.'"[75]  Given that the Court must accept the allegations in the pleadings as true for purposes of these motions, and the fact that UUIC does not address choice of law, or the special knowledge exception to the general rule that opinions are not actionable, the Court cannot find that AKH fails to state a plausible claim for relief on this basis.

Each party alleges a laundry list of misrepresentations by the other.  Some alleged misrepresentations may be subject to dismissal because they are not independent of the tort claims, others may be subject to the litigation privilege if California law applies, and yet others may be based on statements of opinion rather than fact upon which AKH was not entitled to rely.  The parties do not specify which arguments apply to which alleged misrepresentations.  The Court will not parse through over thirty alleged statements and omissions to determine which are covered by each of the arguments raised by the parties.

For all of these reasons, the Court denies the motions to dismiss the misrepresentation claims on the grounds of independence, privilege, and whether the statements are actionable opinions on which AKH justifiably relied, with the exception of AKH's claim for negligence.

### b.    Pleading Fraud with Particularity

The Court proceeds to consider AKH's argument that UUIC failed to plead its fraud and fraudulent concealment claims with particularity.  The pleading standard that applies to UUIC's

---

[75]*Kreekside Partners v. Nord Bitumi U.S., Inc.*, 963 F. Supp. 959, 968 (D. Kan. 1997) (quoting *Fisher v. Mr. Harold's Hair Lab, Inc.*, 527 P.2d 1026, 1033 (Kan. 1974)); *Harazim v. Lynam*, 72 Cal. Rptr. 670, 674 (Cal. Ct. App. 1968).

fraud claims is procedural, and thus federal law applies.[76]  AKH argues that UUIC's fraud and

fraudulent concealment claims fail because they do not specify the "who, what, when, and

where" of the alleged fraud.  AKH further suggests that because the parties have exchanged

voluminous discovery, UUIC should be required to attach any written misrepresentation in

support of its claims.  This latter argument is unavailing, as the present motion is before the

Court on a motion to dismiss for failure to state a claim; the Court cannot and should not

evaluate matters outside the pleadings in ruling on such a motion.[77]  The fact that a party fails to

produce evidence to support a claim is irrelevant to the analysis.  Instead, the Court accepts the

allegations in the pleading as true to determine whether it plausibly states a claim for relief.

AKH argues that UUIC's fraud claims fail to specify the particular corporate individual who

made each alleged misrepresentation, and fail to refer with particularity to the documents

containing the alleged fraud.  UUIC responds first that a somewhat relaxed standard applies to its

concealment claim because it would be impossible to identify a party concealing a material fact,

or the particular date or place where such an omission occurred.  The Court agrees that

allegations of concealment, as opposed to an affirmative act, do not require the same level of

specificity because often it is impossible to know of the exact "who, when, and where" in

relation to an omission.[78]  Given this relaxed standard, UUIC's claims with regard to

concealment are sufficiently specific.  UUIC alleges that AKH failed to disclose a host of facts

---

[76]*See Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996).

[77]*See* Fed. R. Civ. P. 12(d).  However, the court may consider documents which are referred to in the complaint if they are central to the plaintiff's claim and the parties do not dispute their authenticity.  *See Alvardo v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quotation omitted); *GFF Corp. v. Associated Wholesale Grocers,* 130 F.3d 1381, 1384–85 (10th Cir. 1997).

[78]*See, e.g.*, *Baggett v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261, 1267 (C.D. Cal. 2007); *Near v. Crivello*, 673 F. Supp. 2d 1265, 1280 (D. Kan. 2009).

necessary for it to evaluate the settlement with RT, and upon which it reasonably relied in approving the $5 million policy limits payment to RT.

UUIC argues further that its affirmative misrepresentation counterclaims satisfy the pleading standard by referring to "AKH," because AKH is the only counter-defendant.  UUIC contends that the pleading must identify the particular corporate individual responsible for the misrepresentation or omission only when there are multiple defendants against whom the fraud action is brought.  The Court agrees with AKH, that under the heightened pleading requirement, UUIC's allegations are insufficient.  While AKH's alleged misrepresentations contain the "what, when, and where," none of the alleged misrepresentations identify the individual at AKH making them.  It is true that this case does not involve multiple counter-defendants, but nonetheless, UUIC must identify the person or persons making the alleged misrepresentations.[79]  The importance of identifying the "who" in this case is also illustrated by the fact that the alleged misrepresentations were allegedly either made by "AKH," "principles at AKH," or the "Paul Hastings" law firm.  Such references fall short of the notice required to enable AKH to defend this fraud claim.  However, given the nature of the deficiency, the Court finds that it is possible for UUIC to cure its intentional misrepresentation counterclaim to conform to the requirements of Rule 9(b).  UUIC shall have ten days from the date of this order to amend Count IX of its Counterclaim.

### 2.      UUIC's Counterclaim Under Cal. Civ. Code § 2860(c)

---

[79]*See, e.g.*, *Indy Lube Inv., LLC v. Wal-Mart Stores, Inc.*, 199 F. Supp. 2d 1114, 1121 (D. Kan. 2002) (dismissing complaint for failure to allege the "who" and "where" of the fraud claim when it did not allege the particular individuals from the defendant corporation who made the misrepresentation nor stated where they were made); *Turney v. Dz Bank AG Deautche Zentral Genossenschaftsbank*, No. 09-2533, 2010 WL 3735757, at *5 (D. Kan. Sept. 20, 2010).

AKH moves to dismiss UUIC's counterclaim for negligent breach of statutory duties under Cal. Civil Code § 2860(d).  AKH argues that UUIC cannot bring a claim under this section because UUIC has denied that a conflict of interest exists between itself and AKH.  Yet, AKH claims in its Amended Complaint that UUIC was obligated to provide it with Cumis counsel, and that it was subject to the terms of § 2860(d).  The Court agrees that the facts alleged in UUIC's Counterclaim sufficiently set forth a basis for invoking the statute: AKH and UUIC determined by agreement that their relationship with the Paul Hastings law firm would be governed by Cal. Civil Code § 2860.  The Court must accept as true UUIC's allegation that the parties reached this agreement, which would be independent of any acknowledgment of a conflict of interest that would separately trigger the statute.  Further, the Court agrees with UUIC that the parties do not appear to disagree that the Paul Hastings law firm was subject to the statute.  Both parties base their respective claims on obligations that arise when the statute is triggered.  They only disagree about whether the trigger for that obligation was a conflict of interest, or a private agreement between the parties that UUIC would pay for Paul Hastings to defend AKH as long as it agreed to be subject to the Cumis statute and comply with UUIC's billing rates.  Under the standard that applies under *Twombly* and *Iqbal*, UUIC has stated a plausible claim of relief under the statute.

## V.    Conclusion

During the pendency of this action, the parties have represented that resolution of certain threshold issues by the Court would lead to the efficient use of the parties' and Court's time. These representations have largely framed the deadlines provided in the Court's scheduling orders.   Magistrate Judge Gale set a choice of law motions deadline early in the life of this case on the basis of this representation, yet before this Court could decide those motions, the parties

jointly moved to multiply this insurance contract case by adding claims and counterclaims under tort law.  Neither party sought to amend or supplement their prior motions to determine choice of law as to the tort claims and neither party thought it necessary to address this issue in their motions to dismiss.  So the motions to dismiss largely fail to address questions that would allow this Court to narrow the amended claims in this case.  This is particularly unfortunate because it is unclear whether meaningful discovery has taken place over the course of the last two years while these parties engaged in almost non-stop motions practice.  Indeed, the parties purport to be "unaware" of the claims that are at issue.  The Court hopes that the parties will refrain from continuing to file seriatim, piecemeal, voluminous dispositive motions before further discovery can take place on the existing claims in this matter.  The parties are encouraged to take advantage of their time before the new November 13, 2015 discovery deadline and prepare thorough dispositive motions that will enable the Court to resolve the claims in this case once and for all, and provide much-needed finality to the parties.  Alternatively, and preferably, the Court is hopeful that the parties are serious about the prospect of a second mediation, which may allow them to work through the many conflicts presented in this case in a more efficient and less contentious manner.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motion for Partial Summary Judgment (Doc. 236) is **denied** and Defendant's Cross-Motion for Partial Summary Judgment (Doc. 256) is **granted**.  Defendant's Motion to Strike Reply (Doc. 264) is **moot**.

**IT IS FURTHER ORDERED BY THE COURT** that Plaintiff's Motion to Dismiss (Doc. 228) is **granted in part and denied in part**.  The motion is granted as to Count IX of the Counterclaim with leave to amend.  The motion is otherwise denied.  Defendant may amend

Count IX of its Counterclaim within ten days.

   **IT IS FURTHER ORDERED BY THE COURT** that Defendant's Motion to Dismiss

(Doc. 233) is **granted in part and denied in part**.  AKH's Fifth Cause of Action for Negligence

is hereby dismissed.

   **IT IS SO ORDERED**.

Dated:<u> April 21, 2015</u>

        <u> S/ Julie A. Robinson                      </u>

        JULIE A. ROBINSON

        UNITED STATES DISTRICT JUDGE