## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| AKH COMPANY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 13-2003-JAR-KGG |
| v. | ) | |
| | ) | |
| UNIVERSAL UNDERWRITERS | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant, | ) | |
| _____ | ) | |

## MEMORANDUM & ORDER ON THIRD PARTY MOTION TO
## RECONSIDER ORDER ON DEFENDANT'S MOTION TO COMPEL

Now before the Court is the motion (Doc. 306) filed by third-party Gauntlett

& Associates asking the Court to reconsider its Order (Doc. 300) granting in part

Defendant Universal's "Motion to Compel" (Doc. 282). The underlying motion to

compel related to a third-party subpoena issued to Gauntlett & Associates, a law

firm that previously represented Plaintiff AKH. For the reasons set forth below,

the Court **DENIES** this motion.

## BACKGROUND

**A.      Summary of Dispute.**

The above-captioned matter is a declaratory judgment action based on a

dispute concerning insurance coverage and the settlement of a trademark dispute

involving Plaintiff AKH and a third party.  (*See* Doc. 1; Doc. 75, sealed, at 5-6

(underlying litigation hereinafter referred to as "RT litigation" or "RT case).)

The facts of the case were summarized by District Court in its Order denying

Plaintiff's objection to a prior, related discovery ruling in this case.  That summary

stated that Universal

> defended and settled [the underlying litigation] under a
> reservation of rights. In May of 2010, The Reinalt-
> Thomas Corporation dba Discount Tire ("R-T") filed a
> civil action against AKH in the District of Arizona,
> alleging that AKH infringed upon and diluted its
> trademark under state and federal law.  AKH in turn filed
> its own civil action against R-T in the Central District of
> California and successfully moved to transfer venue of
> the first action to the Central District of California.  The
> two lawsuits were consolidated ("the R-T lawsuits") and
> ultimately settled in December of 2012.  In this case,
> AKH seeks declaratory relief that [Universal] breached
> its duties to defend, settle, and act fairly and in good
> faith. [Universal] brings counterclaims for declaratory
> relief and breach of contract arising out of its defense and
> settlement of the R-T lawsuits.

(Doc. 247, at 1-2.)

**B.     This Court's Initial Order Regarding the Crime-Fraud Exception.**

This Court has addressed the parties discovery disagreements on numerous

occasions, including its Order (Doc. 158) granting Defendant's "Motion to Compel

Sufficient Written Responses and Production of Documents" (Doc. 123).  The

District Court described Defendant Universal's motion as follows:

2

> [Universal] filed a Motion to Compel on March 7, 2014,
> seeking production of documents included on AKH's
> privilege log; communications between AKH and Paul
> Hastings LLP, AKH's independent counsel. [Universal]
> argued that these documents are subject to production
> under the crime-fraud exception to the attorney-client
> privilege because between October and December 2012,
> AKH withheld material information from [Universal]
> about settlement negotiations with R-T, in violation of
> the terms of the insurance policy.

(Doc. 247, at 2.)  The Court notes that at the time this prior motion was filed, on

March 7, 2014, Gauntlett still represented Plaintiff AKH in this case.[1]  (Doc. 123.)

The undersigned Magistrate Judge granted Universal's motion to compel by

a 44-page written Order on July 3, 2014.  (Doc. 158, hereinafter "July 3rd Order.")

The District Court ultimately stated the following regarding the July 3rd Order:

> **Judge Gale extensively analyzed the crime-fraud
> exception under both Kansas and California law and
> reviewed the evidence presented by [Universal] in
> support of its contention that the exception applies in
> this case.**  Judge Gale determined that the evidence,
> 'taken as a whole, establish[es] a prima facie case
> sufficient to invoke the crime-fraud exception to the
> attorney-client privilege – false representations made by
> Plaintiff as to a material fact or the suppression of facts
> which Plaintiff was under a legal or equitable obligation
> to communication and in respect of which it could not be
> innocently silent.'  On this basis, Judge Gale ordered
> AKH to produce for in camera inspection all
> communications between itself and counsel (coverage

---

[1] Gauntlett withdrew as counsel for Plaintiff on March 20, 2014.  (Doc. 125.)

and litigating counsel) that were withheld on the basis of
attorney-client privilege or the work product doctrine
between September 2012 and December 2012.

(Doc. 247, at 2.)  This Court's findings regarding the crime-fraud exception

related, in part, to Plaintiff's privilege *vis a vis* Gauntlett, referred to as "coverage

counsel" in the July 3rd Order.  (*See* Doc. 158, at 23-43).

Plaintiff filed a Motion to Reconsider the July 3rd Order, arguing there is a

"lack of evidence sufficient to show, even prima facie, that counsel's claimed

omission to properly advise Universal regarding settlement negotiations was the

result of any crime or fraud instigated by AKH."  (Doc. 163, at 1.)  Upon denying

that motion for reconsideration, this Court ordered an *in camera* inspection of the

documents and ordered that certain of them be produced to Defendant Universal

(Doc. 198).  Plaintiff complied with that Order, producing to the Court more than

1,300 pages of documents, consisting entirely of copies of e-mail communications.

(Doc. 215, at 2.)

This Court reviewed those voluminous documents and subsequently issued

its Order on *In Camera Inspection* on October 17, 2014 (hereinafter "October 17th

Order), finding 77 documents were discoverable pursuant to the crime-fraud

exception.  (*Id*.)  This Court held that although the documents do not necessarily

establish fraud, "standing alone and unrebutted they would create a prima facie

case of fraud." (*Id*., n.1.)  This Court ordered Plaintiff to produce these documents

to Defendant, marking them "confidential" pursuant to the Protective Order

entered in this case.  This Court also noted that

> [a]dditional documents reviewed in camera may be
> relevant to Plaintiff's defense of Defendant's theory. The
> Court will not, however, hold the privilege waived as to
> such documents. In the event that Plaintiff intends to use
> such documents as evidence, Plaintiff must produce the
> same.

(*Id*., at 5.)

The October 17th Order resulted in Plaintiff's "Objection to Magistrate

Gale's Order Following *In Camera* Inspection Requiring the Production of

Specific Attorney-Client Privileged Documents Based on the Crime-Fraud

Exception." (Doc. 220.)   This required the District Court to revisit the procedural

and substantive history of the undersigned Magistrate Judge's handling of the

crime-fraud exception to the attorney-client privilege.  (Doc. 247, at 1-3.)  Therein,

the District Court stated that Plaintiff's prior motion for reconsideration

> argued that [Magistrate Judge Gale's] analysis of the
> crime-fraud exception was flawed because it did not
> acknowledge that the evidence must establish that the
> client, rather than the attorney, must be involved in the
> claimed fraud for the exception to apply.  The court
> rejected this argument, finding that the evidence was
> sufficient to infer that Plaintiff's officers were involved
> in the alleged fraud. **Judge Gale pointed to the fact**
> **that the attorneys and client were required to work**

5

> **together during settlement negotiations, and that the**
> **entries on the privilege log strongly suggest that these**
> **officers were involved in the subject communications.**
> Moreover, Judge Gale observed that if the client was not
> involved in the alleged fraud, this fact would be easily
> confirmed by the court's in camera review and there
> would be no documents subject to production..

(Doc. 247, at 3, referencing the July 3ʳᵈ Order.)  The District Court "overrule[d]

and denie[d]" Plaintiff's objection.  (*Id*.)

## B.    Underlying Motion to Compel (Doc. 282).

While all of these issues were being litigated in the above-captioned case in

the District Court of Kansas, Defendant issued a subpoena to non-party law firm

Gauntlett California in July 2014.  (*See* Doc. 283.)  That subpoena sought

"production of communications and documents relating to the underlying litigation

and its settlement," with settlement of the underlying RT litigation occurring from

September through December 2012.  (Doc. 283, at 5-6; Doc. 282, at 2.)  This

resulted in the underlying motion to compel documents responsive to the

subpoena, initially filled by Defendant Universal in the United States District

Court for the Central District of California.[2]  (*Id*.)  The motion was subsequently

---

[2]  Because Defendant Universal brought that motion in the Central District of
California, the matter received its own caption for that District, styled as Universal
Underwriters Insurance Company, Plaintiff, vs. Gauntlett & Associates, Defendant.  (*See*
Docs. 282 - 287.)  For purposes of this case, however, Universal shall be referred to as
"Defendant Universal," "Defendant," or "Universal" and Gauntlett & Associates shall be
referred to as "Gauntlett."  The Court notes that Gauntlett has been referred to as

transferred by the California court to this District at the request of Universal for

determination on its merits in the context of the present litigation.

In the underlying motion, Defendant Universal contended that responsive

documents "are relevant to [its] claims regarding fraud, misrepresentation, and

concealment, among others."  (*Id.*, at 6.)  Universal argued that the information

Gauntlett has produced is non-responsive and that the accompanying privilege log,

which contains a single entry encompassing almost 2,000 documents, is

insufficient.  (*Id.*)

Gauntlett responded that it produced all non-privileged documents and/or

does not possess the documents Universal contends it is withholding.  (*Id.*, at 24-

25.)  Gauntlett contended that its privilege log is sufficient because of the

voluminous nature of documents sought made a document-by-document privilege

log would be unreasonable and overly burdensome.  (*Id.*, at 28.)  Gauntlett further

contended that "the documents withheld . . . are attorney-client communications

and in-firm communications between attorneys in connection with the underlying

litigation and, as such, are obviously protected by the attorney-client and work

product privileges . . . ."[3]  (*Id.*, at 29.)

---

"coverage counsel" in previous Orders of this Court.  (*See* Doc. 158, at 23-43.)

[3]  The Court notes that there is no legally recognized "work product privilege" within the scope of Fed.R.Civ.P. 501.  Rather, federal courts recognize the work product

The first issue raised in Universal's underlying motion was "whether Gauntlett must produce all responsive, non-privileged documents." (Doc. 283, at 7.) Universal specifically referenced communications Gauntlett has identified "'from RT's counsel to defense counsel or AKH [that] were sent to Gauntlett' pursuant to the attorney-client relationship" as well as "communications with Universal from the relevant time period (September to December 2012)" that have not been produced. (Doc. 287, at 2-3.) Universal contended it has only received "communications relevant to [Gauntlett's] later role as counsel of record in the Kansas litigation (running from 2013 to 2014)." (*Id.*, at 3.)

Universal also argued that Gauntlett "ignore[d] communications with parties other than Universal and AKH (or AKH's counsel) during the responsive time period," referencing "communications between Jesse Abrams of Gauntlett and counsel to RT on 'concerns regarding insurance'" as a specific example. (*Id.*) Universal indicated that "other parties have produced communications with attorneys at the Gauntlett firm, including David Gauntlett, James Lowe, and Jesse Abrams, among others." (*Id.*, at 4.)

---

doctrine as "'a tool of judicial administration' that furthers the goals of fairness and convenience.'" *Plaza Ins. Co. v. Lester*, 2015 WL 3528336, at *4 (D. Colo. June 4, 2015) (quoting *Pete Rinaldi's Fast Foods, Inc. v. Great Am. Ins. Cos.*, 123 F.R.D. 198, 201 (M.D.N.C.1988)).

The Court granted this portion of Defendant Universal's motion and ordered counsel for Gauntlett to produce any such documents in its possession, custody, and/or control. Universal was directed to provide a list to Gauntlett of specific documents and/or communication, to the extent it was aware of such.

Universal also raised concerns regarding the privilege log provided. The Court agrees that, under certain circumstances, Gauntlett's privilege log would be sufficient. The undersigned Magistrate Judge previously held in this litigation, however, that Defendant Universal has

> establish[ed] a *prima facie* case sufficient to invoke the crime-fraud exception to the attorney-client privilege" in this case as a result of "false representations made by Plaintiff [AKH] as to a material fact or the suppression of facts which Plaintiff was under a legal or equitable obligation to communicate and 'in respect of which [it] could not be innocently silent . . . .'

(Doc. 158, at 42-43 *(quoting **DuShane v. Union Nat. Bank**,* 223 Kan. 775, 759, 576 P.2d 674, 678 (1978)). As such, the undersigned Magistrate judge held that this case involves a greater likelihood that otherwise privileged documents are discoverable. The Court held that a revised privilege log would not be the most efficient way to address the situation given the obviously privileged nature of communications between Gauntlett and Plaintiff AKH, Gauntlett's former client.

**C.    The Underlying Order (Doc. 300) and Motion to Reconsider (Doc. 306).**

Utilizing its inherent power to control discovery, this Court turned to the *in camera* inspection procedure it previously employed in this case.  (*See* Doc. 158, at 43; Doc. 215, at 2.)  Gauntlett was ordered to submit to the Court, for *in camera* inspection, all documents and communications between itself and Plaintiff AKH, other counsel (whether coverage counsel or litigating counsel), and/or any third parties, that were withheld on the basis of the attorney-client privilege or work product doctrine, that were created or occurred from the completion of the unsuccessful mediation in September 2012 until Defendant Universal received the final draft of the settlement agreement with RT in December 2012.  (*See* Doc. 300.)

In seeking reconsideration of this Order, Gauntlett argues that the Court may not compel production of its privileged documents based on the underlying *prima facie* showing of the crime-fraud exception without giving Gauntlett the opportunity to be heard.  (Doc. 307, at 15-21.)  Gauntlett raises certain other objections, including that this Court's underlying Order does not contain sufficient findings to compel disclosure of work product or to warrant an *in camera* review (*id.*, at 22-23).

## DISCUSSION

**A.     Standards on Motions to Reconsider.**

10

District of Kansas Local Rule 7.3(b) governs motions to reconsider.  It states, in relevant part, that "[a] motion to reconsider must be based on (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error or prevent manifest injustice."   This District has previously held that

> [r]evisiting the issues already addressed is not the purpose of a motion to reconsider, and advancing new arguments or supporting facts which were otherwise available for presentation when the original summary judgment motion was briefed is likewise inappropriate.

*Comeau v. Rupp*, 810 F.Supp. 1172 (D.Kan.1992) (internal citations and quotes omitted).  Stated another way, "[a] party's failure to present its strongest case in the first instance does not entitle it to a second chance in the form of a motion to reconsider."  *Eastman v. Coffeyville Resources Refining & Marketing, LLC*, No. 10–1216, 2011 WL 972487, at *1 (D.Kan. March 16, 2011) (quoting *Cline v. S. Star Cent. Gas Pipeline*, 370 F.Supp.2d 1130, 1132 (D.Kan.2005)).

Simply stated, Gauntlett has failed to put forth a change in the law, present new evidence, or establish the existence of clear error or manifest injustice.  There is no argument of a change in the applicable law.  Further, although Gauntlett is clearly not happy with the Court's decision, it has failed to establish the existence of clear error or manifest injustice.

The facts surrounding the crime-fraud exception issue have been addressed, analyzed, and rehashed by this Court *ad nauseam*.  (*See* Doc. 158, at 23-43.) Gauntlett provides nothing in the current motion that was not – or could not have been – included in the parties' previous filings relating to this issue.  Gauntlett infers that this Court was not aware of all the pertinent facts when it made its prior rulings, stating

> [u]nfortunately, and seemingly because the parties did not bring it to the Court's attention, the Magistrate Judge may not have considered conclusive evidence that by December 21, 2012, well before Universal actually issued its check to RT, AKH provided Universal's counsel with the entirety of the settlement terms between AKH and RT.  Universal's counsel even edited the two settlement agreements.  (Dkt. 35-1 p. 2 at ¶ 3 & Ex. A at pp. 5-42 and p. 3 at ¶ 4 & Ex. B. at pp. 43-45; Dkt. 83 p. 5 at ¶ 19 & Ex. 44 at Dkt.. 83-19 at pp. 1-3.)  Before Universal paid any money toward settlement of the underlying litigation, Universal, through its counsel, was well-informed of all the settlement terms.
>
> Thus, while AKH may have not immediately provided all the information Universal requested, the notion that Universal was somehow hoodwinked into issuing a $5 million check to RT based on incomplete information pertaining to the settlement terms between AKH and RT is flatly contradicted by conclusive evidence.   . . . But, for reasons unknown to G&A, even in asking the Magistrate Judge for reconsideration of his finding and in asking the District Court for review of the Magistrate Judge's prior order, AKH did not bring this evidence to the court's attention. (Dkt. 163 & 220.) The Magistrate Judge's prima facie finding of fraud by AKH therefore appears to be based on an incomplete and

insufficient record.

(Doc. 307, at 8-9.)

Suffice it to say, Gauntlett's assertions are incorrect.  As pointed out by

Defendant Universal,

> AKH made this exact argument to this Court in opposing
> Universal's motion to compel under the crime fraud
> doctrine.  AKH argued that Universal 'knew and
> reviewed the details of the settlement, including the
> settlement agreements and the escrow agreement.'  (Doc.
> 136 at 9; *see also id*. at 15-19 (arguing that Universal
> edited the underlying agreements and was aware of
> settlement terms before closing).)  AKH devoted several
> pages to this argument in its brief filed in April 2014, so
> Gauntlett's argument now that 'the parties did not bring
> [this issue] to the Court's attention' is demonstrably
> untrue.  (Doc. 307 at [8].)

(Doc. 311, at 13.)  These facts were specifically considered and discussed by this

Court in the July 2014 Order.  (*See* Doc. 158, at 37-43.)

## B.    The Crime-Fraud Exception.

This Court painstakingly analyzed the application of the crime-fraud

exception to the facts of this case under *both* California law and federal law.  (*See*

Doc. 158, at 15-43, incorporated herein by reference.)  As discussed *supra*, this

Court has opined that the factual context supplied by Defendant

> establish[ed] a *prima facie* case sufficient to invoke the
> crime-fraud exception to the attorney-client privilege" in
> this case as a result of "false representations made by

13

> Plaintiff [AKH] as to a material fact or the suppression of
> facts which Plaintiff was under a legal or equitable
> obligation to communicate and 'in respect of which [it]
> could not be innocently silent . . . .'

(Doc. 158, at 42-43 (*quoting* **DuShane v. Union Nat. Bank**, 223 Kan. 775, 759,

576 P.2d 674, 678 (1978)).  That analysis was subsequently reviewed by the

District Court on Plaintiff's objection, wherein the District Court held that the

underlying Orders "were extensive and made all of the predicate findings

necessary to allow for *in camera* review."  (Doc. 247, at 6.)

As such, this Court will not revisit the issue of whether the requisite showing

has been made of a *prima facie* case of the crime-fraud exception.  The Court will

not allow the parties, including Gauntlett, to continue to re-litigate the application

of the crime-fraud exception to this case – especially when Gauntlett offers noting

in its present argument which was unconsidered previously or would change the

result.  The existence of a *prima facie* case sufficient to invoke the crime-fraud

exception – specifically relating to Gauntlett – is the law of this case.  (*See* Doc.

158, at 23-43.)

## C.    *In Camera* **Procedure.**

Given this context, this Court's underlying Order found sufficient need to

require Gauntlett to provide additional, specific information while finding that a

revised privilege log is not the most efficient way to address the situation given the

obviously privileged nature of communications implicated.  The Court invoked the *in camera* inspection procedure it previously used in this case.

Gauntlett argues that this was improper because this relief was not specifically requested by Defendant Universal.  (Doc. 307, at 10.)  In the Court's opinion, however, this procedure best addresses the parties' concerns as well as serve the interests of justice and judicial economy.  Pursuant to the Federal Rules of Civil Procedure, however, this Court has the inherent power to manage and control discovery.  *See generally*, Fed.R.Civ.P. 26.  The Court also finds that this solution is consistent with the spirit of Fed.R.Civ.P. 1, which provides for "the just, speedy, and inexpensive determination of every action and proceeding."

**D.     The Right to be "Heard."**

Gauntlett next argues that the Court has "circumvent[ed] . . . the due process required before production of privileged documents . . . for *in camera* review may be ordered" by failing to give it the opportunity to be heard on the issue.  (Doc. 307, at 11.)  Gauntlett argues it has been "deprived . . . of the opportunity to fulfill its professional obligation to its former client AKH, and to protect its own work-product."  (*Id.*)  Defendant is correct that Gauntlett relies on mere conjecture that it is raising this argument "at its former client's insistence . . . ."  (Doc. 307, at 11; Doc. 311, at 16.)  There are no comments or representations by Plaintiff to indicate

that it finds its current counsel to be insufficient to protect its interests.

As an initial matter, the attorney-client privilege belongs to the *client*, not the attorney. *See Brown v. Unified School Dist. No. 501*, No. 10-1096-JTM, 2011 WL 111693, at \*4 (D. Kan. Jan. 13, 2011); *Schmidt v. Levi Strauss & Co*., No. 04-01026-RMW-HRL, 2007 WL 628660, at \*4 (N.D.Cal. Feb. 28, 2007) (stating that attorney-client privilege "belongs solely to the client").  Gauntlett has no independent "right to be heard" on the issue of any potential waiver of the attorney-client privilege when the client has already been fully represented and heard on this issue through successor counsel.

The Court is thus unpersuaded by Gauntlett's reliance on *Titmas v. Superior Court*, 87 Cal.App.4th 738 (2001) and similar cited cases for the proposition that Gauntlett has a right to an in-person hearing on the issue of attorney-client privilege before the Court can compel this production.  *Titmas* involved a motion to quash the notice of *duces tecum* depositions of attorneys from a firm that had previously been hired by the defendant to prepare a confidential private placement offering relating to a product defendant had invented.

At the time the motion was set for hearing, a substitute judge was covering the docket of the trial judge.  "Several hours before the hearing, the court clerk telephonically informed counsel the motion was denied," the attorney-client

16

privilege was waived, and no appearance would be required." (*Id*., at 741.)  The

appellate court acknowledged that the statute authorizing motions to quash "says

nothing about hearings." (*Id*., at 743.)  The appellate court held, however, that the

use of the term "motion" in the statute inferred that "the notice and hearing

requirements generally applicable to motions." (*Id*.)

The ***Titmas*** court was particularly "troubled" by the "summary procedures"

employed by the "substituted judge who considered this issue in [the trial judge's]

absence." (*Id*., at 745.)  "The vagueness of the order in question . . . hardly inspires

confidence that the court carefully reviewed the waiver claims and limited 'the

information required to be disclosed . . . [to] fit strictly within the confines of the

waiver." (*Id*. (citation omitted).)

The same concerns are not present in the context of the underlying motion

currently before this Court.  The Order at issue herein was anything but "vague" or

"summarily decided."  As the District Court stated in regard to a related Order in

this case, the analysis by this Court on the crime-fraud exception has been

"extensive and [has] made all of the predicate findings necessary to allow for *in

camera* review." (Doc. 247, at 6.)

This Court is unfamiliar with the hearing and briefing procedures customary

in California courts.  Hearings on these types of discovery issues are, however,

unusual in this Federal District because the parties are given the opportunity to present their most thoughtful, well-reasoned, and eloquent arguments in writing via the Court's briefing procedure.  The parties herein briefed their positions in their submission to the California court.  (Doc. 283.) Further, Gauntlett makes no effort to discuss what additional information or argument would have been presented at a hearing – and does not explain why such information or argument was not presented in the current Motion to Reconsider (*See generally* Doc. 307).  Given the volume of analysis of this issue – by the parties <u>and</u> this Court – it is clear that all interested parties have been adequately "heard."  Contrary to Gauntlett's assertions, there is no separate and independent right to a live hearing on these issues beyond the briefs submitted.  Regardless, there was nothing "vague" about the analysis and reasoning behind this Court's underlying decision.

**E.      Potential Work Product Waiver.**

Finally, the Court addresses Gauntlett's arguments regarding the work product doctrine.  Unlike the attorney-client privilege, which belongs to the client, "[t]he work-product privilege belongs to both the attorney and the client." ***Lopes v. Vieira*** 719 F.Supp.2d 1199, 1201 (E.D. Calif. 2010) (citing (***In re Special September 1978 Grand Jury (II)***, 640 F.2d 49, 62 (7th Cir.1980)); *see also **In re Vargas***, 723 F.2d 1461, 1466 (10th Cir. 1983) (holding that the work product

18

doctrine is personal to the attorney).  The doctrine recognizes "that public policy is served by protecting from disclosure to adverse parties, written memoranda and private and personal recollections prepared by attorneys in the course of their legal duties."  *Id.* (citation omitted).

Gauntlett has, however, had an adequate opportunity to present evidence and argument on this issue in its briefing on the underlying motion (Doc. 282) and the Motion to Reconsider (Doc. 306).  This Court's opinion on the application of the exception is unchanged.

Gauntlett argues that the underlying Order "does not contain any findings sufficient to compel disclosure of [its] work product."  (Doc. 307, at 22.)  Gauntlett also argues that the Order "does not contain any findings sufficient to warrant an in camera review."  (*Id.*, at 23.)  The Court is not persuaded by these arguments.  As noted by the District Court, the undersigned Magistrate Judge has previously

> pointed to the fact that the attorneys and client were
> required to work together during settlement negotiations,
> and that the entries on the privilege log strongly suggest
> that these officers were involved in the subject
> communications.

(Doc. 247, at 1-2.)  This prior finding – which was supported by the District Court – provides sufficient justification for the Court to review the work product of Gauntlett during the time period in question.  The Court will, however, limit the *in*

*camera* review to only that work product relating in any way to settlement (including, but not limited to, the topics of settlement offers, settlement negotiations, and/or strategies for settlement – regardless of whether such documents directly mention counsel's conversations or communications with AKH).

The Court has not yet determined that any of Gauntlett's documents must be produced.  Rather, the Court has merely determined that the documents are subject to an *in camera* review for evidence relating to the crime-fraud exception.  Should the Court determine that the documents provide evidence of fraud, the crime-fraud exception would apply.  As such, no protection would attach to the documents, making this argument irrelevant.

## CONCLUSION

As stated in the underlying Order, the Court finds the *in camera* review procedure to best address the parties' concerns while serving the interests of justice and judicial economy.  Nothing presented in Gauntlett's Motion to Reconsider has changed the Court's opinion that this is the proper – and most reasonable – solution to this on-going discovery issue.

As such, Gauntlett's Motion to Reconsider (Doc. 306) is **DENIED**.  Within **thirty (30) days** of the date of this Order, Gauntlett is ordered to submit to the

Court, for *in camera* inspection, all communications between itself and Plaintiff

AKH, other counsel (whether coverage counsel or litigating counsel), and/or any

third parties, that were withheld on the basis of the work product doctrine (to the

extent such documents relate in any way to settlement of the RT litigation) or

withheld on the basis of the attorney-client privilege.  The time frame for this

production is limited to communications or documents created or occurring from

the completion of the unsuccessful mediation in September 2012 until Defendant

Universal received the final draft of the settlement agreement with RT in

December 2012.

For documents withheld on the basis of work-product protection but which

do <u>not</u> constitute communication outside of Gauntlett (i.e. internal law firm

memoranda or notes), Gauntlett is ordered to produce for *in camera* inspection

such documents created within the specified time period which relate to the

settlement of the RT litigation.

The documents shall be delivered in both a hard copy as well as by

searchable PDF form (saved in individual pages).  The documents are to be Bates

numbered.  The Court will review the communications for evidence of an intent by

Plaintiff AKH to conceal material elements of the negotiations or settlement from

Defendant.

21

To the extent Gauntlett has continued to withhold any communications with, or documents shared with, any non-client third parties at any time on the basis of the attorney-client privilege or work product doctrine, such documents shall be produced to Defendant Universal as no privilege applies to documents shared with a third party.  Any such documents shall be delivered to Defendant within **thirty (30) days** of the date of this Order in both a hard copy as well as by searchable PDF form (saved in individual pages).  The documents are to be Bates numbered.

**IT IS THEREFORE ORDERED** that Gauntlett's Motion to Reconsider (Doc. 306) is **DENIED** as more fully set forth herein.

**IT IS SO ORDERED**.

Dated at Wichita, Kansas, on this 27th day of October, 2015.

 S/ KENNETH G. GALE                                   
KENNETH G. GALE
United States Magistrate Judge