**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

AKH COMPANY, INC., )
)
Plaintiff/Counter-Defendant, )
)
v. ) Case No. 13-2003-JAR-KGG
)
UNIVERSAL UNDERWRITERS )
INSURANCE COMPANY, )
)
Defendant/Counter-Claimant. )
_______________________________ )

**ORDER AND REPORT & RECOMMENDATION ON**
**RENEWED MOTION FOR SANCTIONS**

Before the Court is Defendant's Renewed Motion for Sanctions (Doc. 331). Because Plaintiff has repeatedly failed to comply with the Court's previous orders, Defendant's motion is **GRANTED**. Further, this Court **recommends** to the District Court that an instruction be used at trial.

**BACKGROUND**

This rather epic tale requires a short prologue. The present dispute between Plaintiff AKH and its former insurer, Defendant Universal Underwriters Insurance Company, arises out of other litigation that occurred in California. The parties disagree concerning duties owned to each other arising out of that litigation. The claims in this case exceed five million dollars. During that underlying litigation

("the RT litigation"), Defendant paid for the defense and settlement of claims against Plaintiff, which was both a defendant and the claimant in that case.

As part of that litigation, Plaintiff retained the services of a document management company (DTI) because of the large number of documents involved. Because these documents related to both the defense of the claims against Plaintiff and to the claims of Plaintiff against its adversary, there was apparently an agreement to share the costs of those services. Whether the parties fulfilled their duties as to that agreement is one of the many substantive issues in the present case. However, a pending substantial claim for services by DTI against Plaintiff has resulted in a compromise of Plaintiff's access to documents maintained by DTI. Some of these documents are the subject of discovery in the present case.

On September 10, 2014, Defendant issued its Third Set of Requests for Production. Plaintiff responded. Some of those responses referenced documents which Plaintiff claimed were in the possession of DTI and therefore not in its "control" but which "could be subpoenaed." (Doc. 270-2.) The parties conferred in an attempt to resolve some disputes concerning the adequacy of the production. Plaintiff provided supplemental production in December of 2014. An additional "meet and confer" conference took place in January 2015, at which Plaintiff, as a compromise, agreed to provide an index identifying documents it claimed were

responsive but unattainable due to a dispute with DTI. That index, however, has not been forthcoming.

On February 23, 2015, Defendant filed a motion to compel. That motion requested (1) a detailed index outlining the documents contained on the DTI database; (2) certain bank statements allegedly promised by the plaintiff during meet and confer discussions; (3) invoices described in a previous discovery response; (4) a re-issue of documents to include "Bates" numbering; and (5) an updated privilege log keyed to the new numbering. (Doc. 270.)

On March 6, 2015, Plaintiff produced to Defendant a revised privilege log and additional materials. (Doc. 291). The Court was unaware of this supplemental production at the time. However, no response was filed by Plaintiff within the required time, so on March 11, 2015, the Court granted the motion as uncontested, ordering the requested relief. (Doc. 276.)

On June 5, 2015, Defendant filed a new motion to compel and for sanctions, alleging that Plaintiff had failed to comply with the Court's previous Order. (Doc. 290.) Defendant claimed that the March 6 production was not organized to respond to specific requests and that Plaintiff did not further supplement its production after the Court's March 11 Order. Defendant claimed that the new privilege log remained deficient. Defendant also contended that two categories of

discovery ordered by the Court remained unproduced: (1) the DTI documents index and (2) an updated privilege log keyed to page numbers. Defendant claimed that based on the new privilege log, some additional documents were improperly withheld under claimed privilege. (Doc. 291.)

Plaintiff filed a response to this motion on June 19, 2015, denying that its March 6 production was inadequate. (Doc. 294). Plaintiff claimed that the "ESI search alone required the e-vendor (Document Technologies, Inc. 'DTI') to collect and review approximately 195,000 files on AKH's system." (*Id*., at 5). It claimed that the numbering of documents previously ordered was not possible as to electronic documents.

Plaintiff also claimed that it had been "locked out" of some cooperation by DTI because of unpaid invoices, some of which Plaintiff claimed were a result of Defendant's failure to pay an agreed share of those invoices during the predicate litigation. This "lock out" by DTI was blamed for failures to update the privilege log or otherwise provide information from that database. Plaintiff claimed this lack of access caused by the dispute with DTI placed the information out of its "control" for the purpose of discovery.

The total due from the unpaid invoices appears to be approximately $113,000. (Doc. 295-6.) Defendant denies that it owes any of this (a dispute that

is at issue on the merits in this litigation) and its unrebutted analysis is that at most about $14,000 of this amount was incurred during the period of the prior litigation when an agreement to share these costs was in effect. (Doc. 297, at page 8-11.).

On August 4, 2015, this Court granted the motion to compel and again ordered Plaintiff to provide an index of documents contained on the DTI database, and to provide an updated privilege log containing keyed to paginated documents. (Doc. 304.) The Court again ordered production of certain consultant communications and a specific document identified by document number (Plaintiff did not address these requests in its Response). The Court, however, reserved ruling on the motion for sanctions pending Plaintiff's compliance with the new Order. The Court ordered compliance by September 3, 2015. (*Id.*)

On September 3, 2015, Plaintiff filed a motion to extend by 30 days the period to comply with the August 4th Order. In that motion, Plaintiff reported that it had produced two (2) indexes generated by DTI which outline the documents contained in its database and multiple, but not all, documents related to the consultant. Plaintiff stated that it required additional time to comply with the Order requiring production of a master privilege log, which required an additional index from DTI. Plaintiff contended that DTI had refused to provide that index because of an ongoing fee dispute, but that Plaintiff had issued a subpoena to

obtain the "DTI list." Plaintiff also requested a conference with the Court to discuss "this and other issues." (Doc. 314).

On September 4, 2015, Plaintiff also filed a "Notice of Production and Status of Compliance with the Court's Memorandum and Order (Doc. 304)." (Doc. 315.) This document repeated the claims concerning the fee dispute between Plaintiff and DTI as well as the related dispute between Plaintiff and Defendant. The document also outlined the elements of ordered production which had not been provided because of that dispute.

Defendant vehemently objected to the requested extension, bemoaning the discovery delays and complaining that Plaintiff's subpoena to DTI was not issued until August 31, 2015. Defendant claimed that the issued subpoena was too limited to obtain the ordered discovery. Defendant contested Plaintiff's claim that an additional index from DTI was necessary for Plaintiff to complete the required privilege log. Most elements of the claims in the "Notice of Production" document were disputed. Defendant also renewed its previous request for sanctions. (Doc. 316.) Notwithstanding Defendant's protests, the Court granted the motion for extension of time until October 5, 2015. (Doc. 317.)

On October 6, 2015, Plaintiff filed a "Notice of DTI's Response to Subpoenas." (Doc. 328.) This pleading includes attachments which are

apparently copies of the two subpoenas served on DTI by Plaintiff and DTI's response to the subpoenas. Regardless of whether the subpoena requests were adequate, the responses by DTI are little more than non-responsive computer-code gobbledygook. There is no indication that Plaintiff has made any effort to enforce these subpoenas against DTI.

Defendant filed the current motion on October 9, 2015. (Doc. 331.) Defendant argues that Plaintiff has still not produced the items the Court ordered produced in August 2015, except for a few documents related to the consultant. In this motion, Defendant has apparently abandoned hope of receiving the outstanding discovery and limits it request to sanctions. Specifically, Defendant requests the Court (1) find the waiver of any privilege claimed by Plaintiff due to its long-term failure to produce a privilege log; (2) require Plaintiff to pay Defendant's costs in prosecuting the pursuing discovery; (3) prohibit Plaintiff from suggesting at trial that the failure to pay the DTI invoices is attributable to Defendant; and (4) provide the jury with an adverse inference instruction relating to AKH's continued failure comply with discovery. (Doc. 332.)

Plaintiff's response to the present motion is now both familiar and simple. It claims that the remaining discovery the Court has ordered is in the possession of DTI, that because of the fee dispute DTI will not produce the documents, and that

because of its dispute with DTI the documents are not within its possession, custody or control within the meaning of Fed. R. Civ. Proc. 34(a)(1). (Doc. 338.) In support of this motion, Plaintiff has produced an affidavit from its counsel stating in material part:

> 3. I give my unequivocal assurance AKH has produced everything in its possession, custody and under its control responsive to the Court Orders. The only outstanding documents that remain, are under the exclusive control of DTI Technology Services, Inc.
>
> 4. AKH has produced all non-privileged documents in its possession other than documents controlled by DTI.
>
> a) AKH has no knowledge of what documents exist with DTI.
>
> b) AKH has not seen any of the documents at DTI.
>
> c) DTI won't make AKH documents available.
>
> d) AKH was never provided or given a legible index identifying the documents controlled by DTI. DTI won't make an AKH document index available.
>
> e) AKH cannot generate a full index of AKH documents maintained on the DTI database for documents it has never seen and does not know what documents exist.

f) AKH has provided Privilege Logs for the documents in its possession.

g) DTI won't provide a Privilege Log for documents maintained on its database.

h) AKH cannot generate an updated Privilege Log integrating documents maintained on the DTI database because it has never seen any of the documents on the database and has no knowledge of what documents exist.

5. In was during the course of the underlying lawsuit between AKH and RT that Paul Hastings LLP retained this third party vendor, DTI to serve as the document depository to maintain all records and documents from that action.

6. As a consequence to using DTI, AKH's documents were not stored at, or maintained by AKH; nor does AKH have any means of access to these documents.

7. The retention of DTI was approved by UUIC. DTI Invoices were forwarded to UUIC for payment.

8. DTI maintains it was never paid by [defendant] UUIC. AKH has paid over $50,000 to DTI. It remains to be determined how much of these unpaid services relate to the failure and refusal by UUIC to pay its bills and how much reflects the debts of AKH to this vendor. AKH has had a legion of problems with UUIC not paying fees and bills in the underlying action.

9. Because of the alleged nonpayment, DTI has refused to grant AKH access to its database

without payment in full of its invoices.

10. I tried in good faith to comply with this Court's Order (Doc. 276) to '(1) produce a detailed index outlining the documents contained on the DTI Database,' (2) provide an updated privilege log containing Bates numbers for all listed documents' [sic], and, (3) produce specific documents related to communications with Mr. Leibfried:

a) My office spent over 10 hours, manually searching for email exchanges between AKH and Leibfried, for documents with the specified Bates numbers and for documents within the relevant time period. Hard copies of documents maintained in the office AKH file were reviewed and scanned; a key word search and visual review of the records maintained in my AKH Dropbox file was conducted; a visual scan and key word search was conducted on the RAR files produced by Paul Hastings (to both AKH and UUIC) related to the underlying matter; and a visual scan and key word search was done on the files provided by Gauntlett & Associates.

(b) DTI ignored emails my office sent to their Los Angeles and East Coast offices requesting the production of the Court ordered documents and indexes; and

(c) Because DTI's failure to respond to my email requests, my office issued two subpoenas to DTI commanding production of the Court ordered documents.

> 11. DTI produced an indecipherable coded response to the subpoenas, copies of which were filed on October 6, 2015 (Doc. 328).
>
> 12. AKH has no hesitation in providing non-privileged documents from the vendor to UUIC, if it had access and would stipulate to such production or an order regarding same.
>
> 13. AKH has exhausted its avenues with DTI for informal and cooperative production, even for force of law subpoenas and despite such good faith efforts on Plaintiff's part has been unable to encourage this third party vendor to produce the requested documents or indexes.
>
> 14. AKH tried in good faith to comply with the Order however, circumstances beyond its control, including moving party's failure to pay its portion of DTI's invoices interfered with Plaintiff's ability to obtain the requested information. UUIC has been advised of these facts on multiple occasions these documents are not in my client's control.

(Doc. 338-1).

A portion of Defendant's reply (Doc. 340) is not responsive to Plaintiff's opposition brief, simply re-asserting noncompliance with the previous orders – a contention which Plaintiff now alibis without refuting. Defendant repeats previous rebuttals to Plaintiff's claim that the dispute with DTI is partly Plaintiff's fault. (Doc. 340, at 7.)

## ANALYSIS AND ORDER

While the facts of this dispute are complex, the issue is simple – is Plaintiff subject to sanctions for failing to produce discovery ordered by this Court, which discovery requires the cooperation of Plaintiff's document vendor, when the vendor refuses to cooperate because of a fee dispute with Plaintiff? Generally speaking, documents in the possession of such a vendor are within the possession, custody or control of the party. ***Hudson v. AIH Receivable Mgmt. Serv. Inc***., No. 10-2287-JAR-KGG, 2011 WL 1402224, at *5 (D. Kan. Apr. 13, 2011).

The dispute in this case involves millions of dollars and was instituted by Plaintiff. Plaintiff voluntarily gave its documents to the vendor and has now elected not to pay the vendor's disputed invoices rather than comply with this Court's Orders. While the substantive issue remains for later final resolution, for the purpose of the present motion, Plaintiff has not established complicit fault by Defendant for the dispute with the vendor, with whom Defendant did not even contract. The relative obligations of Defendant and Plaintiff for vendor charges relating to the previous litigation (which appear to be a minor part of the dispute) can be sorted out at trial. There is no indication that Plaintiff cannot free the documents from DTI by paying the disputed invoices. It has elected not to do so. Instead, during the last year, Plaintiff has led Defendant and this Court on a merry

chase for the subject discovery. Sanctions are appropriate.[1]

Fed. R. Civ. P. 37(b)(2) states that "[i]f a party . . . fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders." Sanctions enumerated by Rule 37(b) include:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii) striking pleadings in whole or in part;
>
> (iv) staying further proceedings until the order is obeyed;
>
> (v) dismissing the action or proceeding in whole or in part;
>
> (vi) rendering a default judgment against the disobedient party . . . .

Subsection (b)(2)(C) of Rule 37 also allows the Court to order the "disobedient party" to pay reasonable expenses relating to the underlying motion. The sanctions imposed should endeavor to remedy the violation and address the

[1] Further, the Court is concerned about the precedent that may be set if a party to a lawsuit could strategically submit relevant documents to a third party vendor and then use a "dispute" with said vendor to keep the documents out of the hands of the opposition.

specific conduct to the extent possible.

The Court finds the following sanctions measured and appropriate in this case:

1. Plaintiff is assessed attorney fees for Defendant's litigation of this matter, beginning from the drafting of the first motion to compel (Doc. 269) through the present motion. The Court orders the use of the procedure in D. Kan. Rule 54.2 to resolve the amount of this award.

2. The Court recommends to the District Judge the use of the following or a like instruction at trial, and the use of this presumption during consideration of dispositive motions:

> "The Defendant requested the production of documents relevant to the issues in this case which Plaintiff has placed in the custody of a third party. In violation of this Court's rules and Orders, Plaintiff wilfully refused to disclose those documents. You are instructed to assume that those documents, if produced, would have been favorable to Defendant's claims in this case and adverse to Plaintiff's claims."

3. The Court also orders that as to any documents in the possession DTI to which any privilege could be asserted, except for documents clearly identified in the privilege log ordered below, such privilege is

waived.

The Court also agrees with Defendant that the dispute with DTI creates no obstacle to the creation and provision of a single comprehensive privilege log identifying every document in Plaintiff's possession (not including documents unknown to Plaintiff in the exclusive possession of DTI). This privilege log should describe each document clearly, and sufficiently describe the legal and factual grounds for the claim of privilege. Plaintiff is ordered to produce this log within **thirty (30) days** of the date of this Order.

IT IS THEREFORE ORDERED that Defendant's Renewed Motion for Sanctions (Doc. 331) is **GRANTED** as more fully set forth above. Plaintiff shall provide the requisite privilege log on or before **February 29, 2016**.

**IT IS SO ORDERED**.

IT IS THEREFORE RECOMMENDED to the District Judge that the proposed Jury Instruction, *supra*, be given at trial and the recommended presumption be used during the consideration of dispositive motions.

Pursuant to 28 U.S.C. §636(b)(1), Fed.R.Civ.P. 72, and D.Kan. Rule 72.1.4, the parties shall have **fourteen (14) days** after service of a copy of these proposed findings and recommendations to serve and file with the U.S. District Judge

assigned to the case, any written objections to the findings of fact, conclusions of law, or recommendations of the undersigned Magistrate Judge. Any party's failure to file such written, specific objections within the fourteen-day period will bar appellate review of the proposed findings of fact, conclusions of law, and the recommended disposition.

**IT IS SO RECOMMENDED.**

Dated this 29th day of January, 2016.

S/ KENNETH G. GALE
Kenneth G. Gale
United States Magistrate Judge