IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| AKH COMPANY, INC., ) | |
| ) | |
|     Plaintiff/Counter-Defendant, ) | |
| ) | |
| v. ) | Case No. 13-2003-JAR-KGG |
| ) | |
| UNIVERSAL UNDERWRITERS ) | |
| INSURANCE COMPANY, ) | |
| ) | |
|     Defendant/Counter-Claimant. ) | |
| _____ ) | |

**ORDER ON MOTION TO COMPEL AND FOR SANCTIONS**

Now before the Court is Defendant's "Motion to Compel Discovery and for Sanctions." (Doc. 386.) Having reviewed the submissions of the parties and the attachments thereto, the Court **GRANTS in part** and **DENIES in part** Defendant's Motion.

**BACKGROUND**

The above-captioned matter is a declaratory judgment action based on a dispute concerning insurance coverage and the settlement of a trademark dispute involving Plaintiff AKH and a third party. (*See* Doc. 1; Doc. 75, sealed, at 5-6 (underlying litigation hereinafter referred to as "RT litigation" or "RT case).) The factual and procedural background of this case has been summarized numerous times as this Court has resolved an inordinate number of increasingly contentious

discovery disputes. Summaries are included in the Order denying Gauntlett's Motion to Reconsider this Court's order on Defendant's Motion to Compel (Doc. 339) and the District Court's Memorandum and Order on Plaintiff's Objection to Order and Report & Recommendation on Renewed Motion for Sanctions (Doc. 400). Those factual summaries are incorporated herein for reference.

In the present motion, Defendant moves the Court for an Order compelling Plaintiff to provide full and complete responses to Defendant's Fourth Requests for Production. (Doc. 387-2.) Defendant contends that Plaintiff "refused to provide most of the information sought . . . , leading to numerous meet and confer discussions" and multiple extensions given to Plaintiff. (Doc. 387, at 5.) Defendant categorizes the documents at issue as follows:

> (1) Universal's mediation brief from the underlying litigation (for which AKH claims a mediation privilege, even though that privilege does not apply in these circumstances); and (2) AKH's communications with a group called McGladrey (for which AKH has both improperly withheld documents and refused to reissue its production to reflect necessary standards).

(*Id*., at 6.) The Court will look at each category in turn.

Defendant's motion also requests that the Court impose further sanctions against Plaintiff as a result of Plaintiff's alleged on-going discovery misconduct.

## **DISCUSSION**

2

### A. Standards for Discovery.

Fed.R.Civ.P. 26(b) states that

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at state in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

As such, the requested information must be both nonprivileged and relevant to be discoverable.

### B. Mediation Brief.

Request No. 4 seeks "[a]ll mediation statements or positions submitted by AKH in the CONSOLIDATED UNDERLYING ACTION." (Doc. 387-2, at 13.) In its written responses, Plaintiff objects, citing a Fourth Circuit case, that "[a]ny such documents would be subject to mediation privilege." (*Id.*) Defendant is correct that the mediation privilege does not apply to this document or this case. Even assuming that the privilege applied, Defendant, as Plaintiff's insurer in the underlying action, was invited – and entitled – to participate in the mediation and received extensive information and analysis relating to that process. (Doc. 387, at 8.) Further, Plaintiff did not include this document in its privilege log, which has

3

been an on-going point of contention in this lawsuit.

In response to Defendant's motion, Plaintiff claims that the motion is moot because the mediation brief had been produced previously by a third party. Plaintiff also states that it was unaware the document had been produced until after the present motion was filed. Plaintiff asserts that it "in good faith believed there were legitimate privilege and confidentiality issues" relating to the document. Plaintiff, however, makes no effort to support that assertion. (Doc. 396, at 1-2.) In its Reply, Defendant states that it learned for the first time from Plaintiff's response that the requested document was the same one produced by a third party among 38,000 documents. In the meantime, the parties spent time and effort negotiating the production of the document and, finally, filing and briefing a motion.

Plaintiff's failure to produce the mediation brief was improper and not in good faith. There was no privilege - at least not one assertable against Defendant. The document is clearly relevant to the issues in this case and confidentiality concerns could be addressed through the application of the protective order. It is not a proper defense to a request for production that a document is in the possession of a third party. Fed.R.Civ.P. 34(a). Although this principal most clearly applies when the document has not been produced by the third party, because neither party in this case knew the request had been fulfilled by third-party

4

production, Plaintiff cannot rest on that fact to support its claim of good faith.

Fed.R.Civ.P. 37(a) provides that if a motion to compel is granted, <u>or if the discovery is provided after the motion is filed</u>, a court must consider imposing sanctions. This rule applies here. Although the document at issue was in Defendant's possession before the filing of this motion (a fact not known by the parties), until Plaintiff pointed out the document in its Response – and stated that the subject document was the one (and the only one) responsive to the discovery request – the discovery request remained unfulfilled. This caused Defendant unnecessary work and effort. The Court does not find that Plaintiff's "nondisclosure, response or objection was substantially justified."

The Court orders Plaintiff to pay Defendant the "reasonable expenses incurred" in making the portion of the motion corresponding to the mediation brief, "including attorney's fees." Fed.R.Civ.P. 37(a)(5). The parties will confer concerning that amount consistent with this Court's procedure for awarding statutory fees specified in D. Kan. Rule 54.2.

As such, he Court **DENIES as moot** Defendant's motion as it relates to the mediation brief, but **ORDERS** the imposition of sanctions as set forth above.

**C.      Communication with "McGladrey."**

"McGladrey" is name referenced in e-mail correspondence from Plaintiff

that is relevant to this case.  (*See* Doc. 387, at 9.)  Defendant inquired as to the identity of "McGladrey" at the deposition of AKH Vice-Chairman Hratch Andonian, but the deponent indicated he did not know.  (*Id.*, at 9-10.)  Thereafter, Defendant sent Request No. 40, seeking "All DOCUMENTS between AKH and MCGLADREY between 2011 and 2013."  (Doc. 387-2, at 28.)  Plaintiff initially objected to the request

> on the ground that it is vague, overbroad, seeks confidential personal and financial information that is not relevant to this case, not reasonably calculated to lead to discovery of evidence admissible at trial, violates Constitutional right of privacy which easily outweighs any potential relevancy, clearly irrelevant and not reasonably tailored to lead to the discovery of admissible evidence.

(*Id.*, at 29.)  Plaintiff also invited Defendant to "meet and confer" regarding this request.

Plaintiff subsequently produced a 10-page document ostensibly responsive to the request.  (*See* Doc. 387-6.)  Defendant argues that the document, which consists of e-mail communication involving the McGladrey accounting firm, consists of materials that

> appear to have been copypasted from their original sources into the body of a single email, rather than produced as separate emails reflecting how they were actually sent or received. As a result, the emails are not in date order . . . . Such a method of production is

> unacceptable, not the least of which because it is subject
> to manipulation. It is very difficult to identify when one
> email ends and another begins; it also violates AKH's
> obligation to produce records as they were stored,
> received, sent, or kept in the normal course of business.

(*Id.*, at 10-11.)  Defendant also has concerns regarding the completeness of the responsive information as certain communications and attachments were not included in the production.  (*Id.*)

In response to Defendant's motion, Plaintiff provides no justification for the "copypasted" format of the information produced.  Rather, Plaintiff argues that Defendant is "overreaching" and that the emails at issue "have no relevance to this litigation." (Doc. 396, at 3.)

The information has already been produced, albeit in an improper format.  As such, Plaintiff's attempt to raise the issue of relevance is moot.  Further, Fed.R.Civ.P. 34(b)(2)(E)(I) specifically states that the documents must be produced "as they are kept in the usual course of business . . . ."  Plaintiff's efforts to compile multiple emails into one newly created document – absent the e-mail attachments – is clearly improper.

The Court thus **GRANTS** this portion of Defendant's motion.  Plaintiff is ordered to produce any and all documents addressing in whole or in part the subject matter of the underlying litigation or settlement of that litigation.  The

7

documents are to be produced in their original form, including all attachments, rather than the "copypasted" format used by Plaintiff.

**D.      Motion for Sanctions.**[1]

The undersigned Magistrate Judge has previously acknowledged "the continually highly contentious nature of the present litigation . . . ." (Doc. 372, at 6.) This Court has also described the level of contentiousness between the parties to be "unnecessar[y]." (Doc. 300, at 2, citing Docs.40, 61, 82, 117, 123, 144, 152, 158, 160, 163, 164, 168, 184, 215, 220, 264, 269, 282, 290).

Not surprisingly given the number of discovery disputes between the parties, the issue of sanctions has been addressed numerous times in this case, habitually in regard to Plaintiff's actions or omissions. (*See e.g.*, Doc. 300 (ordering an *in camera* inspection of documents involving Plaintiff and its previous counsel after Defendant made a *prima facie* showing of the application of the crime/fraud exception to the attorney-client privilege); Doc. 304 (finding a partial waiver of privilege as a sanction for Plaintiff's discovery misconduct); Doc. 371 (granting Defendant's motion for sanctions against Plaintiff's counsel relating to deposition practice); and Doc. 400 (District Court's affirmation of undersigned Magistrate

---

[1] This portion of the Court's Order is separate and distinct from the sanctions awarded in regard to the mediation brief, *supra*.

Judge's imposition of sanctions imposed due to Plaintiff's failure to produce an index and privilege log of documents which Plaintiff contended it did not possess)).

In the present motion, defense counsel again moves for sanctions as a result of Plaintiff's alleged

> misconduct includ[ing] falsely denying its ownership of a website that is dispositive to Universal's coverage position, destroying or deleting responsive documents, interfering with Universal's ability to recover materials from third parties, needlessly delaying production of relevant materials, and refusing to answer questions regarding its retention and production policies.

(Doc. 387, at 12.) Each of Defendant's concerns will be addressed in turn.

### 1. The DTCMotorsports.com website.

This issue relates to Defendant's attempts to glean information regarding the DTCMotorsports.com website (hereinafter "website").

> In the underlying litigation, RT accused [Plaintiff] of infringing on RT's trademark rights through [Plaintiff's] internet presence at discounttires.com. Under the terms of the Policy under which [Defendant] provided a defense to RT's allegations, as well as relevant law, there is an exclusion for claims where the 'first injurious offense' occurred prior to the policy period (the 'prior publication exclusion'). (Doc. 1-8.) It has been [Defendant's] position that the prior publication exclusion bars coverage – both defense and indemnity – for the underlying litigation because [Plaintiff] was using the offensive domain name and selling tires on that

9

website prior to the Policy being issued in 2007. (Doc. 387, at 13.) Defendant contends that prior to 2007, versions of the discounttires.com website "automatically directed users" to the website at issue, "through which users could purchase wheels and tires." (*Id*.) Defendant contends it has been "irreversibly prejudiced" by Plaintiff's "denial of its ownership" of the DTCMotorsports.com website, "its certification of its discovery responses (which are demonstrably inaccurate), and its refusal to produce documents (which has foreclosed [Defendant's] ability to prove a major defense or obtain expert discovery on the same)." (*Id*., at 16.) Defendant further contends it is "entitled to sanctions including adverse instructions and dismissal of [Plaintiff's] claims . . . ." (*Id*.)

Plaintiff contends that, despite its searches, it "has been unable to locate any documents pertaining to DTCMotorsports.com or evidencing any business transactions for that website." (Doc. 396, at 4.) Referencing Plaintiff's pattern of attempts to withhold relevant information in this lawsuit, Defendant replies that "[t]he strong evidence pointing to" Plaintiff's ownership of the website at issue "raises serious questions about the accuracy of AKH's claims that it conducted a "thorough" search for responsive documents." (Doc. 405, at 6.)

The center of this issue is Plaintiff's ownership of the website at the time in

question. This is a trial issue and a contested fact that cannot be resolved at this stage of the proceedings as part of a discovery motion. Defendant has not sufficiently established that discovery sanctions are appropriate in this instance. Defendant's motion for sanctions regarding discovery relating to the website at issue is **DENIED**.

### 2. Subpoena to US Bank.

Defendant next contends that Plaintiff withheld documents, or knowingly mislead Defendant, regarding certain communications with US Bank, in particular an e-mail from Plaintiff's president Michael Schaeper to an individual at US Bank named Geoff Coar. (Doc. 387, at 17-18; Doc. 387-18.) Defendant argues that the email is "highly relevant" because "it directly relates to [Plaintiff's] claims in this case that it should not be held responsible for [Defendant's] allegations of fraudulent conduct because it relied on its attorneys and was unaware of what its attorneys were doing in the settlement of the underlying litigation." (Doc. 387, at 17.)

Defendant received the e-mail at issue as a result of this Court's order compelling third-party Gauntlett & Associates (Plaintiff's prior counsel) to produce certain responsive documents. Thereafter, Defendant sent an additional discovery request to Plaintiff seeking "All DOCUMENTS between AKH and US

Bank, specifically including but not limited to geoff.coar@usbank.com, in December 2012 and January 2013." (Doc. 387-1, at 9.)

Defendant contends that Plaintiff should have produced the e-mail at issue, but failed to do so, responding that responsive documents did not exist. (Doc. 387, at 18; Doc. 387-20, at 8-9.) Defendant also subpoenaed US Bank for the document, prompting Plaintiff to object to the subpoena and instruct US Bank not to reply. (Doc. 387-21.) Plaintiff ultimately withdrew its objections. Defendant alleges that after US Bank responded to the subpoena, Plaintiff merely "re-produced US Bank's entire production . . . [which] makes clear that [Plaintiff has not undertaken to provide . . . any documents from its own files, but rather merely reproduced documents from US Bank that had already been provided to [Defendant] by US Bank." (Doc. 387, at 18.)

Defendant argues that Plaintiff should not be allowed to "pass off its obligations" for discovery to a third party. (*Id*., at 19.) Defendant contends that because US Bank is not under obligation to preserve and produce documents in this litigation, Universal has no way of knowing whether or not it received all responsive information. (*Id*.) Plaintiff responds that there is no prejudice to Defendant because the e-mail at issue now has been produced twice. (Doc. 396, at 7.) Plaintiff also contends that it cannot perform an additional search because Mr.

12

Schaeper's e-mails were "lost due to a catastrophic server crash" that occurred after Plaintiff "had already conducted the extensive searches of its email databases . . . ." (*Id*.) Notwithstanding Defendant's suspicions, there is no evidence that additional unproduced evidence exists, or existed, or that the Plaintiff has been prejudiced by improper conduct concerning these particular documents. Given these circumstances, the Court does not agree with Defendant that a sanction for spoliation is merited. This portion of Defendant's motion is **DENIED**.

### 3. Plaintiff's Alleged Delayed Production and Preservation of Materials.

Defendant next argues that "AKH has hidden several 'hot' documents and not produced them until weeks or months after they should have been produced, even though this litigation has been pending for a long three years." (Doc. 387, at 22.) Defendant contends that this practice "provide[s] more evidence of AKH's misconduct in discovery, which ha[s] forced Universal to spin its wheels and expend time and money just to get to where it should have been months ago." (*Id*., at 23.) Defendant further contends that Plaintiff " has either been intentionally withholding or destroying documents, or, alternatively, has failed to take steps to preserve documents as it should have." (Doc. 387, at 24.) This behavior "warrants sanctions" in Defendant's opinion. (*Id*.)

As discussed above, the Court is aware of the on-going problematic

13

approach by Plaintiff to the discovery process in this case.  The Court does not agree, however, that the behavior generally alleged in Defendant's current motion warrants the imposition of the sanctions requested by Defendant.  Although the Court has been vocal in its criticism of the discovery tactics employed by Plaintiff in this litigation, it does not agree that Defendant has proven in the present motion that Plaintiff has actively concealed or destroyed "specific categories of documents" that it was required to produce.  As such, this portion of Defendant's motion is **DENIED**.

IT IS THEREFORE ORDERED that Defendant's "Motion to Compel Discovery and For Sanctions" (Doc. 386) is **GRANTED in part** and **DENIED in part** as more fully set forth herein.  Plaintiff shall provide the requisite supplemental discovery responses within **thirty (30) days** of the date of this Order.

**IT IS SO ORDERED**.

Dated this 11th day of August, 2016.

                                          S/ KENNETH G. GALE
                                         Kenneth G. Gale
                                         United States Magistrate Judge