## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| AKH COMPANY, INC., ) | |
| ) | |
| Plaintiff/Counter-Defendant, ) | |
| ) | |
| v. ) | Case No. 13-2003-JAR-KGG |
| ) | |
| UNIVERSAL UNDERWRITERS ) | |
| INSURANCE COMPANY, ) | |
| ) | |
| Defendant/Counter-Claimant. ) | |
| _____ ) | |

## ORDER ON MOTION TO COMPEL

Now before the Court is Defendant's "Motion to Compel Documents and for

Leave to Appoint Expert." (Doc. 412.) Having reviewed the submissions of the

parties and the attachments thereto, the Court **GRANTS in part** and **DENIES in**

**part** Defendant's Motion.

## BACKGROUND

The above-captioned matter is a declaratory judgment action based on a

dispute concerning insurance coverage and the settlement of a trademark dispute

involving Plaintiff AKH and a third party. (*See* Doc. 1; Doc. 75, sealed, at 5-6

(underlying litigation hereinafter referred to as "RT litigation" or "RT case").) The

factual and procedural background of this case has been summarized numerous

times as this Court has resolved an inordinate number of increasingly contentious

discovery disputes.  Summaries are included in the Order denying Gauntlett's

Motion to Reconsider this Court's Order on Defendant's Motion to Compel (Doc.

339), the District Court's Memorandum and Order on Plaintiff's Objection to

Order and Report & Recommendation on Renewed Motion for Sanctions (Doc.

400) and this Court's Order on Defendant's Motion to Compel and For Sanctions

(Doc. 429).  Those factual summaries are incorporated herein for reference.

In the present motion, Defendant moves the Court for an Order compelling

Plaintiff to provide certain tax returns, bank statements, and financial documents in

full and complete response to certain of Defendant's Fourth and Fifth Requests for

Production of Documents.  The Court will look at each category in turn.

Defendant's motion also requests that the Court appoint a forensic accounting and

damages expert after the expiration of the deadline to do so.

## DISCUSSION

### I.    Standards for Discovery.

Fed.R.Civ.P. 26(b) states that

> [p]arties may obtain discovery regarding any nonprivileged
> matter that is relevant to any party's claim or defense and
> proportional to the needs of the case, considering the
> importance of the issues at state in the action, the amount in
> controversy, the parties' relative access to relevant
> information, the parties' resources, the importance of the
> discovery in resolving the issues, and whether the burden or
> expense of the proposed discovery outweighs its likely

> benefit.  Information within this scope of discovery need
> not be admissible in evidence to be discoverable.

As such, the requested information must be both nonprivileged and relevant to be

discoverable.

## II.   Fourth Set of Requests for Production.

Requests for Production Nos. 25, 26, and 27 seek information relating to

Plaintiff's financial viability and/or ability to satisfy a judgment.  Plaintiff's

amended responses to Requests No. 25 (documents supporting the contention that

Plaintiff "is not financially viable"), No. 26 (documents supporting the contention

that Plaintiff "would not be able to satisfy a $5 million judgment"), and Request

No. 27 (documents supporting the contention that Plaintiff would not be able to

satisfy a $20 million judgment) state that "[d]ocuments will be produced."  (Doc.

387-17, at 11-14.)  Specifically, Plaintiff indicates it "is producing corporate bank

statements for years 2011 through 2015 and corporate tax records . . . ."[1]  (*Id.*)

Defendant initially contends that Plaintiff has not made good on its promise

to provide bank statements for the years 2011 through 2015.  (Doc. 413, at 8.)

Based on the information contained in Plaintiff's response to the motion (Doc. 415,

at 2-3) and Defendant's reply (Doc. 418, at 2-3), it appears that a portion of the

---

[1]  Further discussion regarding the production of Plaintiff's tax returns is discussed
in Section III. B., *infra*.

issues relating to the production of these bank statements have been resolved.  The

remaining issues relating to these Requests will be addressed in turn.

Defendant contends that records from 2015 indicate Plaintiff's US Bank

accounts showed a drop-off in activity "after May 2015" and were closed in

November 2015, leading Defendant to believe that other accounts exist.  (Doc. 418,

at 3-4.)  Plaintiff's response brief infers as much, stating that "US Bank is

[Plaintiff's] *primary* bank."  (Doc. 415, at 3 (emphasis added).)

Regardless of Plaintiff's position that these documents "are not relevant to

[Plaintiff's] current financial condition or net worth" (*id*.), the Court finds that the

information is proportional to the needs of the case and may be relevant to matters

at issue in this case.  This portion of Defendant's motion is, therefore, **GRANTED**

**in part**.  To the extent Plaintiff switched banks or has opened/maintained accounts

at any other banks since 2011, Plaintiff is ordered to provide the requested

information as to any and all such bank accounts from 2011 through the present.

This includes, but is not limited to, accounts with Bank of America.

### III.    Fifth Set of Requests for Production.

#### A.    Request No. 1.

In addition to bank statements and tax records, Request for Production No. 1

and Defendant's motion seek all documents "sufficient to show [Plaintiff's] profits,

4

losses, revenue, bank statements, and income for the past 5 years, including 2015."
(*See* Doc. 413-3, at 5, Doc. 413, at 8.)  Plaintiff's initial response to this Request
raised certain objections, while its amended and supplemental responses indicate it
was producing corporate bank statements and tax records.  (Doc. 413-3, at 5-6.)

Plaintiff's brief in opposition to the motion to compel, however, wholly
ignores discussion of the financial documents sought by Request No. 1 (other than
the tax returns and bank accounts discussed elsewhere in this Order).  (*See*
*generally* Doc. 415; Doc. 418, at 6.)  Defendant contends that Plaintiff "has not
produced the requested profit and loss statements, annual statements, balance
sheets, or documents detailing expenses or revenues," which Defendant contends
are "highly relevant."  (Doc. 418, at 6.)  Because Plaintiff did not raise any
objection to the production of such documents in response to the Motion to
Compel, any such objection to production has been waived.  ***C.T. v. Liberal School***
***Dist.***, Nos. 06-2093-JWL, 06-2360- JWL, 06-2359-JWL, 2008 WL 394217, at *5
(D. Kan. Feb. 11, 2008).  This portion of Defendant's motion is, therefore,
**GRANTED**.  Plaintiff is directed to produce the requested profit and loss
statements, annual statements, balance sheets, and expense/revenue reports for
2011 through the present.

  **B.**  **Request No. 3.**

This request seeks "AKH's tax returns for the last 5 years." (Doc. 413-1, at 4.) It appears that Plaintiff has produced tax returns for years 2011 - 2014. (Doc. 413-3, at 8.) Plaintiff previously indicated that its 2015 return "does not exist" (*id*., at 9) and/or "has not been completed" (Doc. 415, at 2; Doc. 415-1). Plaintiff has, however, agreed that the "return will be produced when it is available." (Doc. 415.)

To the extent Plaintiff's 2015 tax return has yet to be completed and/or filed, Plaintiff is ordered to produce any request it has made for an extension. Plaintiff is also ordered to produce to Defendant the 2015 tax return within seven (7) days of it being finalized. Defendant's motion is **GRANTED** in regard to Request No. 3.

## C.    Requests Nos. 4 - 6.

These requests ask for "[a]ll tax returns filed on behalf of" Hratch Andonian, Andy Andonian, and Sergio Andonian "for the last 5 years." Plaintiff objects that these requests are "intrusive, harassing, oppressive and not reasonably calculated to lead to discovery of admissible evidence." (Doc. 415, at 4.) Plaintiff argues that the information requested is not relevant, that Defendant has provided no justification for conducting "a fishing expedition into the personal finances of individuals who are not parties to this action." (*Id*.) Plaintiff does not, however, specifically indicate how the information sought by the requests seek information

that is "irrelevant" or "not reasonably calculated to lead to discovery of admissible evidence." (*See* Doc. 413-2, at 8-10; *see also* Doc. 415, at 4.)

It is well-settled that courts in this District look "with disfavor on conclusory or boilerplate objections that discovery requests are irrelevant, immaterial, unduly burdensome, or overly broad." *Id.*, 650. "Unless a request is overly broad, irrelevant, or unduly burdensome on its face, the party asserting the objection has the duty to support its objections." ***Sonnino v. University of Kansas Hosp. Authority***, 221 F.R.D. 661, n. 36 (D. Kan. 2004) (citing ***Hammond v. Lowe's Home Ctrs., Inc.***, 216 F.R.D. 666, 670 (D. Kan. 2003)); ***Cont'l Ill. Nat'l Bank & Trust Co. of Chicago v. Caton***, 136 F.R.D. 682, 685 (D. Kan. 1991) (stating that a party resisting a discovery request based on relevancy grounds bears the burden of explaining how "each discovery request is irrelevant, not reasonably calculated to the discovery of admissible evidence, or burdensome"). As such, "the objecting party must specifically show in its response to the motion to compel, despite the broad and liberal construction afforded by the federal discovery rules, how each request for production or interrogatory is objectionable." ***Sonnino***, 221 F.R.D. at 670–71 (internal citation omitted).

Plaintiff has made little or no effort to explain how these requests seek information that is irrelevant or not reasonably calculated to lead to the discovery

of admissible evidence.  While it is true that these individuals are not named

parties in this litigation, they hardly qualify as disinterested third parties.  All three

of these individuals are Plaintiff's executives.  Defendant alleges – and Plaintiff

does not controvert – that Plaintiff's executives have provided personal loans to the

corporation.  (Doc. 413, at 10.)  More specifically, Defendant argues that it

> has uncovered evidence of unusual financial transactions,
> including personal loans among the executives for the
> purpose of supporting the AKH business and the creation
> of an apparently unrelated company to whom AKH has
> transferred assets.  As such, the individual tax returns of
> Hratch Andonian, Andy Andonian, and Sergio Andonian
> are relevant and necessary to determining whether and to
> what extent AKH is diverting assets to avoid a judgment.

(Doc. 413, at 10.)

Plaintiff continues that disclosure of the tax returns would violate the

"Constitutional right of privacy" of these non-parties.  (Doc. 413-2, at 8, 9, 10.)  It

is well-established in this District that private or confidential documents are not

necessarily shielded from discovery because "privileged" and "confidential" are

two distinct concepts.  *See **Kendall State Bank v. West Point Underwriters, LLC***,

No. 10–2319–JTM–KGG, 2013 WL 593957, at *2 (D. Kan. Feb. 15, 2013) (citing

***McCloud v. Board of Geary County Comm'rs***, No.2008 WL 1743444, at *4 (D.

Kan. April 11, 2008) (holding that even assuming certain records are " 'private' or

confidential, this does not mean the records are privileged and/ or

8

nondiscoverable")).  Plaintiff's concerns can be adequately addressed through a

protective order.  This portion of Defendant's motion is **GRANTED**.

### D.   Andonian Enterprises.

Plaintiff's supplemental response to Request No. 25 inadvertently produced

the 2014 tax return for "Andonian Enterprises" rather than for Plaintiff.  (*See* Doc.

413, at 9.)  Defendant states that

> [b]y virtue of [Plaintiff's] voluntary disclosure of
> Andonian Enterprises' 2014 tax return, [Defendant]
> learned of Andonian Enterprises and was able to
> determine that Andonian Enterprises is operating at the
> same business address as [Plaintiff] and using the same
> business trade name . . . .  The companies also appear to
> have similar ownership . . . .

(Doc. 418, at 8.)  Defendant contends that Plaintiff should now be required to

produce "all financial documents related to Andonian Enterprises that are

responsive" to the document requests at issue.  (Doc. 413, at 10.)

Based on the information available to the Court, the present motion to

compel does not relate to discovery requests that have specifically sought

information regarding Andonian Enterprises.  Defendant's argument in the present

motion that Plaintiff should be compelled to provide this information does not

equate to a valid discovery request.  Even assuming documents regarding

Andonian Enterprises are relevant to the current proceedings, the Court will not

treat a comment or argument included in a motion to compel as a discovery request.  This portion of Defendant's motion is **DENIED**.

## IV.    Request for Expert.

Defendant argues that Plaintiff's discovery tactics and failures make it necessary for Defendant to designate an expert on the subjects of forensic accounting and damages despite the fact that the deadline to do so has expired. Fed.R.Civ.P. 6(b) governs extending time when an act "may or must be done withing a specified time."  The Rule provides that a court "may, for good cause shown," grant an extension "on motion made after the time has expired if the party failed to act because of excusable neglect."  Fed.R.Civ.P. 16 relates to scheduling. Subsection (b)(4) of that Rule mandates that "[a] schedule may be modified only for good cause and with the judge's consent."

> To establish 'good cause' the moving party must show that the scheduling order's deadline could not have been met with diligence. ***Parker v. Central Kansas Medical Center***, 178 F.Supp.2d 1205, 1210 (D. Kan. 2001); ***Denmon v. Runyon***, 151 F.R.D. 404, 407 (D. Kan. 1993).  'This rule gives trial courts 'wide latitude in entering scheduling orders,' and modifications to such orders are reviewed for abuse of discretion.' ***In re Daviscourt***, 353 B.R. 674, (B.A.P. 10th Cir. 2006) (citing ***Burks v. Okla. Publ'g Co***., 81 F.3d 975, 978-79 (10th Cir. 1996)).

***Grieg v. Botros***, No. 08-1181-EFM-KGG, 2010 WL 3270102, at *3 (D. Kan. Aug.

10

12, 2010). It is well-established in this District that motions to modify a scheduling

order focus "on the diligence of the party seeking to modify the scheduling order."

*Id*. (citing ***Leviton Mfg. Co., Inc. v. Nicor, Inc.***, 245 F.R.D. 524, 528 (D. N.M.

2007) (internal citations omitted)).

Defendant contends that

> incomplete document production, the discovery of
> [Plaintiff's] missing documents, and its claimed lack of
> knowledge at its deposition all occurred after the
> deadline for designating experts had passed.  The
> production, which includes complex financial documents
> and transactions, coupled with the claimed lack of
> knowledge by [Plaintiff] executives as to [Plaintiff's]
> financial transactions, supports [Defendant's] need for
> the remaining documents and for an additional expert.
> Perhaps most importantly, fundamental fairness dictates
> this result, in that [Plaintiff] should not be permitted to
> benefit from its own failure to abide by its discovery
> obligations and its withholding of information until after
> the deadline for designating experts had passed.

(Doc. 413, at 2.)

Plaintiff argues that the request is untimely and that Defendant has failed to

show good cause and excusable neglect for designating an expert out of time.

(Doc. 415, at 4.)  According to Plaintiff, Defendant

> first sought punitive damages in its Third Amended
> Answer and Counterclaims, filed on November 14, 2014.
> At that time, [Defendant] knew [Plaintiff's] net worth
> and financial condition could be considered by the jury,
> and should reasonably have anticipated that expert

> testimony might be needed.  Even assuming, as
> [Defendant] contends, that it could not perceive the need
> for expert testimony until it received [Plaintiff's] tax
> returns and bank statements, [Defendant] did not request
> such documents from [Plaintiff] until November 6, 2015,
> nearly a year after it first claimed punitive damages.
> [Defendant] has not offered any explanation for its delay
> in seeking [Plaintiff's] financial records.  Thus,
> [Defendant] has not satisfied its burden of proving
> excusable neglect.

(*Id.*, at 4-5.)

The Court is not persuaded by Plaintiff's argument that Defendant "did not request [financial] documents from [Plaintiff] until November 6, 2015, nearly a year after it first claimed punitive damages." (Doc. 415, at 4.)  Plaintiff contends that Defendant has failed to offer "any explanation for its delay in seeking" such records.  The discovery at issue was served months before the expiration of the discovery deadline in this case and was, by definition, timely.  (*See* Doc. 413-1, Doc. 387-1; *see also* Scheduling Orders, Docs. 348, 355, 394.)  Although the history of this case is riddled with contentious discovery disputes, the Court will not punish Defendant for Plaintiff's stonewalling tactics and failures to be forthcoming with discovery.

The Court finds that Defendant has established both the need for a forensic accounting/damages expert and the requisite good cause for requesting one after the expiration of the deadline to do so.  This portion of Defendant's motion is

**GRANTED**.

IT IS THEREFORE ORDERED that Defendant's "Motion to Compel Documents and For Leave to Appoint Expert" (Doc. 412) is **GRANTED in part** and **DENIED in part** as more fully set forth herein.  Plaintiff shall provide the requisite supplemental discovery responses within **thirty (30) days** of the date of this Order.  Defendant shall have until **December 23, 2016**, to designate a forensic accounting/damages expert.

**IT IS SO ORDERED**.

Dated this 17th day of October, 2016.

s/ KENNETH G. GALE
Kenneth G. Gale
United States Magistrate Judge

13