**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| AKH COMPANY, INC., ) | |
| ) | |
|     Plaintiff/Counter-Defendant, ) | |
| ) | |
| v. ) | Case No. 2:13-cv-02003 JAR-KGG |
| ) | |
| UNIVERSAL UNDERWRITERS ) | |
| INSURANCE COMPANY, ) | |
| ) | |
|     Defendant/Counter-Claimant. ) | |
| ) | |

**UNIVERSAL UNDERWRITERS INSURANCE COMPANY'S
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR LEAVE TO AMEND**

Defendant and Counter-Claimant Universal Underwriters Insurance Company ("Universal"), by and through undersigned counsel and pursuant to Federal Rule of Civil Procedure 15(a) and D. Kan. L.R. 15.1, requests that this Court permit it to file an amended Counterclaim as a result of Plaintiff/Counter-Defendant AKH Company, Inc.'s ("AKH") efforts to devalue itself and avoid paying any judgment in this matter.

## I.  INTRODUCTION

This Court has permitted limited discovery into AKH's financial records in light of AKH's inconsistent discovery responses regarding whether it had the ability to satisfy a judgment. The Court also determined that Universal could obtain discovery to substantiate its claim for punitive damages against AKH. These discrete topics of discovery have been unusually difficult to obtain, with AKH delaying its production of many records and outright refusing to produce others.[1]

---

[1] AKH's long-term discovery misconduct is summarized in Universal's Motion for Sanctions, filed on June 9, 2017. (Docs. 478 & 479.)

The reason for AKH's misdirection and delay is now apparent, however. Over the last several weeks, Universal has uncovered evidence showing that AKH sold or transferred all of its assets *during the course of this litigation* to other entities owned by AKH's owners (Andy Andonian and Hratch Andonian). Thus, while AKH currently exists solely as a shell serving no corporate interest other than the litigation of this case, the other entities owned by Andy Andonian and Hratch Andonian are operating under AKH's d/b/a ("Discount Tire Centers") and have enjoyed a meteoric rise in sales. Indeed, these companies -- Andonian Enterprises, Inc., 55, Inc., and TireNetwork Group, Inc. -- now have a total aggregate sales income that is comparable to AKH's, prior to its divestment of assets and even accounting for AKH's settlement with and sale to two competitors in 2012 and 2013. Further, Universal has learned that AKH, its individual owners, and the related entities do not operate as truly separate or independent entities, but that these entities send money back and forth to each other, pay each other's debts, and intermingle their funds.

Specifically, through the depositions of AKH and AKH's outside accountants in March and May of 2017, as well as documents produced by those entities in the spring of 2017, Universal has confirmed the following facts, among others:

- On August 30, 2013, a little more than 7 months after AKH filed this lawsuit, AKH executed a Plan of Conversion by which it converted into an entity called "AKH Company, LLC," organized under Nevada law. This Plan of Conversion (which was produced by AKH's accountant) was signed by Andy Andonian on behalf of both Plaintiff AKH and the new entity, AKH Company, LLC;

- Also in August 2013, Plaintiff AKH entered into an agreement with a competitor tire chain store through which AKH sold approximately 18 of its "Discount Tire Centers" stores for a total of eight-figures. According to records produced by AKH's accountant, the majority of this payment amount was funneled through the new entity AKH Company, LLC and deposited with Andy Andonian and Hratch Andonian rather than with Plaintiff;

- In August 2013, Hratch Andonian formed 55, Inc.;

2

- In October 2013, 55, Inc. "bought" two Discount Tire Centers stores from AKH Company, LLC (who stepped into AKH's shoes for the purposes of these transactions) for a sum in the very low six-figures[2];

- In September 2013, Andy Andonian formed Andonian Enterprises, Inc.;

- One month later, per the testimony of AKH, Andonian Enterprises "bought" approximately 17 Discount Tire Centers stores from AKH Company, LLC for a little more than $1 million, which is not reflected in the bank account statements produced to date by Plaintiff AKH (meaning the money appears to have been transferred by Andonian Enterprises to the LLC or to Andy Andonian and Hratch Andonian individually);

- The sales of Discount Tire Centers stores by AKH Company, LLC to Andonian Enterprises, Inc. and 55, Inc. occurred for amounts that were less than market value, as evidenced by the fact that AKH sold a similar number of stores to a highly-competitive chain (with the incentive to drive a hard bargain) for almost ten times as much that same month;

- AKH Company, LLC ceased to exist as a corporate entity after it facilitated the transfer of stores from AKH to Andonian Enterprises, Inc. and 55, Inc.;

- AKH testified that, also in October 2013, AKH transferred its wholesale division, eCommerce business, and inventory to TireNetwork Group, Inc.;

- TireNetwork Group, Inc. is owned by Andy Andonian and located at the same address as AKH and Andonian Enterprises, Inc.;

- AKH testified that TireNetwork Group paid AKH for the value of the inventory transferred, but did not pay any additional monies for the transfer of the wholesale division or eCommerce business;

- According to AKH's bank records, TireNetwork appears to have purchased the inventory in October 2013 by wiring AKH an amount in the mid-five figures. However, AKH also wired more than $2 million back to TireNetwork in 2013 over a series of several transfers, which AKH has been unable to explain;

- According to the Discount Tires Centers website and the testimony of AKH, most of the stores "sold" to Andy Andonian's and Hratch Andonian's other companies still appear to be operating under the same name: "Discount Tire Centers";

---

[2] AKH has been inconsistent regarding whether information governing these sales and transfers is considered "highly confidential." Universal has an obligation to plead certain facts with sufficient specificity but is also mindful of its obligations regarding confidential material. Thus, if this Court determines that such amounts are not "highly confidential," Universal can supplement its pleading accordingly.

- Even though Plaintiff AKH signed a Plan of Conversion, it still continues to exist as a corporate entity and still continues to file tax returns;

- AKH currently claims to have no sales or other current income, while the other entities owned by Hratch Andonian and Andy Andonian that "purchased" or received AKH's assets in 2013 have reported tens of millions in annual sales;

- AKH testified that it pays its current obligations through transfers received from its owners, Hratch Andonian and Andy Andonian, or from other entities owned by them;

- AKH testified that its owners and the other entities routinely wired money to and from each other to pay debts and liabilities;

- AKH's accountant testified that there was "intermingling" between the financial accounts of AKH and AKH Company, LLC, between AKH and Andonian Enterprises, and AKH and other entities ("intermingling among the bank accounts at just about every level");

- AKH testified that, for convenience in some areas in California, payments from Andonian Enterprises' customers are deposited in AKH accounts and that AKH then transfers those deposits to Andonian Enterprises;

- AKH, Andonian Enterprises, and 55, Inc. all have operated under the trade name "Discount Tire Centers" during the course of this litigation; and

- None of the above was disclosed to this Court or to Universal until uncovered by Universal in the last several weeks of litigation.

For months, Universal could not understand why AKH's position regarding its financial stability for purposes of punitive damages and discovery (and settlement) kept changing. Indeed, AKH and its counsel took steps to conceal these true facts from Universal and try to get Universal off the scent, including by telling Universal that AKH Company, LLC was an unrelated entity created for a distinct tax issue (*see* Doc. 479-5), by telling Universal and this Court during conferences that AKH's finances had changed simply because the market for tire retailers was not what it once was (notwithstanding Universal's argument that the tire stores still seemed to be in business), and by telling this Court in briefing that the financial position of Andonian Enterprises "has no relevance to any issues in this case." (Doc. 415 at 3.) In those instances, AKH never told

Universal or this Court the truth: that AKH's finances had changed because it diverted all of its assets to other related entities owned by the same individuals. Now Universal has confirmed its suspicions that AKH intentionally drained itself of assets in order to render itself "judgment-proof" and to stymie Universal's ability to recover damages.[3]

## II.     CONCISE STATEMENT OF PROPOSED AMENDMENT

Pursuant to D. Kan. L.R. 15.1(a)(1), Universal seeks to amend its Counterclaim to add new related parties and to add new claims that focus solely on AKH's satisfaction of any judgment. Specifically, Universal seeks to bring a claim under California's fraudulent transfer statute[4] and a claim seeking alter ego liability, all against AKH and new related parties Andonian Enterprises, Inc.; 55, Inc.; TireNetwork Group, Inc.; Andy Andonian; and Hratch Andonian. A proposed redlined Counterclaim is attached hereto as Exhibit A.

Based on the above-summarized new facts, Universal seeks to allege that AKH's divestment of assets to related entities constituted fraudulent transfers that should be recoverable to satisfy any judgment against AKH. Further, in light of the bleeding of the boundaries among AKH, its owners, and the related entities (who routinely transfer assets among each other and pay each other's debts and liabilities), Universal seeks a finding that these parties may be called upon as alter egos of AKH or its owners to satisfy any judgment against AKH in Universal's favor. Universal does not seek to

---

[3] This is in addition to the evidence that Universal has uncovered supporting its existing claims against AKH for intentional misrepresentation and concealment.

[4] A federal court sitting in diversity will apply the substantive law of the state where the wrong occurred. Here, the transfers occurred in California between and among California entities and thus California's fraudulent transfers statute applies. *See, e.g., Sender v. Dillow*, No. 13-2170-RDR, 2013 U.S. Dist. LEXIS 124184, at *1 (D. Kan. Aug. 30, 2013) ("The money which the receiver seeks to recover was transferred from the Yost Partnership in Illinois. So, the court will apply Illinois substantive law.").

5

make any changes to its Answer to AKH's complaint nor to its affirmative defenses.[5] Indeed, the only proposed changes to add these new claims and parties tie directly to AKH's financial fire sale.

Now that Universal has uncovered that AKH's pleas of poverty are unsupported, Universal believes that time is of the essence in the event that AKH and the related entities attempt to move assets yet again or otherwise take steps to make themselves immune to this Court's judgment.

### III.     LEAVE TO AMEND THE COMPLAINT SHOULD BE GRANTED

The Court has held the final scheduled dates for remaining discovery items in abeyance so there is currently not a deadline for the parties to amend their pleadings. However, as previewed for this Court during a recent conference, Universal has uncovered facts in support of new claims that would not require extensive additional discovery. Rather, the proposed amendments would serve only to ensure that any judgment is satisfied and that AKH is not permitted to benefit from its misconduct. In light of the imperative that amendments should be liberally granted under Fed. R. Civ. P. 15(a)(2), particularly to conform to new evidence, this Court should permit Universal to amend its Counterclaim as proposed in Exhibit A.

In the District of Kansas, courts typically do a two-part analysis to determine whether a party may amend its complaint when there is no deadline for doing so under the existing scheduling order. *Miller v. Union Pac. R.R.*, No. CIVA 06-2399-JAR-DJW, 2008 WL 4271906, at *2 (D. Kan. Sept. 12, 2008); *see also Oppenheimer & Co. v. Red Speedway, Inc.*, No. 06-2450-JTM, 2008 WL 4829894, at *2 (D. Kan. Nov. 5, 2008). First, courts ask whether the party has shown "good cause" to modify the scheduling order under Federal Rule of Civil Procedure 16. *Miller*, No. CIVA 06-2399-JAR-DJW, 2008 WL 4271906, at *2. Second, courts then review whether the lenient standard

---

[5] In the past, Universal has included its Answer, affirmative defenses, and Counterclaim in a single pleading. Here, to reduce any confusion, Universal seeks to file only an amended Counterclaim.

for amendment under Federal Rule of Civil Procedure 15 has been satisfied. *Id*. Universal's proposed amended Counterclaim easily meets both of these criteria and, thus, Universal's amended pleading should be permitted.

### A. Universal's Proposed Amendments Are Supported by "Good Cause"

Universal's proposed amendments are supported by "good cause" under Rule 16 because Universal could not have made them earlier through the exercise of due diligence. Under Federal Rule of Civil Procedure 16, a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "To establish good cause, the moving party must show that despite due diligence it could not have reasonably met the amendment deadline." *Coder v. Am. Bankers Ins. Co. of Florida*, No. 12-2231-EFM, 2013 WL 2151583, at *1 (D. Kan. May 16, 2013); *see also Oppenheimer*, 2008 WL 4829894, at *2 ("The party seeking to extend a scheduling order deadline must establish good cause by proving the deadline could not have been met with diligence."). For instance, the moving party cannot have failed to amend within the scheduling order deadline out of mere carelessness. *Coder*, 2013 WL 2151583, at *1; *see also Livingston v. Sodexo & Affiliated Co.*, No. 11-4162-EFM, 2012 WL 2045292, at *1 (D. Kan. June 6, 2012).

Notably, this Court has previously acknowledged that a party shows "good cause" to amend its pleadings when, as in this case, the party only learns of the information leading to the amendment after the scheduling order's deadline has passed. For instance, in *Carefusion 213, LLC v. Prof'l Disposables, Inc.*, No. CIV.A. 09-2616-KHV, 2010 WL 4004874, at *4 (D. Kan. Oct. 12, 2010), the plaintiff sought to amend its complaint to add counts for fraud and misrepresentation after the deadline in the scheduling order. The court found that the plaintiff had shown "good cause" for this amendment because the plaintiff did not learn the key facts supporting its new claims until the

defendants produced a certain document in discovery after the deadline for amendments. *Id*. Thus, the plaintiff's failure to amend prior to that time did not constitute a lack of due diligence. *Id*.

This is precisely what has occurred here. As set out above, Universal has only just learned the information that makes its proposed amended Counterclaim necessary within the last few weeks at the depositions of AKH and AKH's accountants (and because of documents produced pursuant to those depositions). Indeed, Universal's previous ignorance of these facts is no accident—*AKH has actively concealed this information for the last three years and intentionally misdirected Universal's questions regarding AKH's apparent lack of assets*. No amount of "due diligence" would have led Universal to make its amendments within the Scheduling Order's original deadline in May 2014 (Doc. 141), therefore, because AKH obstructed Universal's efforts to obtain the information that showed that such amendments were necessary. Under these facts, there is no question that Universal has shown "good cause" to amend the scheduling order.

**B.**     **Universal's Proposed Amendments Are Proper Under Fed. R. Civ. P. 15**

Under Federal Rule of Civil Procedure 15, a party may ask the court for leave to amend its pleadings after the deadline to do so, and "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Supreme Court has confirmed this directive by explaining that courts must be liberal in allowing amendments to pleadings:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'

*Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) ("The purpose of the Rule is to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties.").

AKH has the burden on this motion of showing why leave to file an amended complaint should not be granted. *Anderson v. PAR Elec. Contractors, Inc.*, 318 F.R.D. 640, 642 (D. Kan. 2017). Because leave to amend should be liberally granted, this is a heavy burden, and AKH must overcome the fact that "the spirit of the federal rules of civil procedure to encourage decisions on the merits rather than on mere technicalities." *Id.*; *see also Rural Water Dist. No. 4, Douglas Cty. v. City of Eudora, Kansas*, No. 07-2463-JAR-DJW, 2008 WL 1867984, at *4 (D. Kan. Apr. 24, 2008) ("the Federal Rules of Civil Procedure are designed to facilitate decisions on the merits rather than on pleading technicalities."). AKH must show that amendment is improper based upon " a number of factors…including timeliness, prejudice to the other party, bad faith, and futility of amendment." *Anderson*, 318 F.R.D. at 642. "In the absence of a specific factor, such as flagrant abuse, bad faith, futility of amendment, or truly inordinate and unexplained delay, prejudice to the opposing party is the key factor to be evaluated in deciding a motion to amend." *Lange v. Cigna Individual Fin. Servs. Co.*, 759 F. Supp. 764, 770 (D. Kan. 1991). In light of the relevant facts, AKH cannot carry its burden here to show that amendment is improper.

### 1. There is No Undue Delay

AKH will not be able to show that Universal has unduly delayed in bringing the proposed amendment. Indeed, even if it could do so, this factor alone could not justify a denial of Universal's request to amend. *Minter*, 451 F.3d at 1205 (10th Cir. 2006) ("Lateness by itself does not justify the denial of the amendment."). In determining whether undue delay exists, the Tenth Circuit "focuses primarily on the reasons for the delay." *Id.* at 1206.

9

As noted above, Universal has only just learned of the information that requires the proposed amendment. Indeed, "the reasons for the delay" in this situation are that AKH concealed the key information for years, which Universal has only just been able to discover through expensive party and third party discovery, not to mention at least two successful motions to compel (Docs. 270, 413) and one pending motion for sanctions (Doc. 478). Therefore, there is no basis for denying Universal's motion to amend based upon undue delay. *Carefusion 213*, 2010 WL 4004874, at *4 (where the plaintiff only learned of information leading to amendments after the deadline for amending the complaint, "the Court finds that the motion should not be denied on the basis of undue delay or untimeliness under Rule 15(a)(2).").

### 2. The Proposed Amended Counterclaim Will Not Prejudice Any Party

AKH cannot carry its burden to show that it will be unduly prejudiced by Universal's proposed amended Counterclaim attached as Exhibit A. In the Tenth Circuit, undue prejudice is the most important factor in deciding a motion to amend. *Minter*, 451 F.3d at 1207 (10th Cir. 2006). Courts have cautioned that this requires more than nominal prejudice, explaining that "[w]hile any amendment invariably causes some 'practical prejudice,' undue prejudice means that the amendment would work an injustice to the defendants." *Anderson,* 318 F.R.D. at 645. Instead, "[c]ourts typically find prejudice only when the amendment unfairly affects the defendants in terms of preparing their defense to the amendment." *Minter*, 451 F.3d at 1208; *see also Jones v. Wildgen*, 349 F. Supp. 2d 1358, 1361 (D. Kan. 2004) ("Prejudice under Rule 15 means undue difficulty in defending a lawsuit because of a change of tactics or theories on the part of the other party.").

Here, Universal's proposed amendments will not materially change the nature of this case at all. The new facts that have been uncovered were known to -- and concealed by -- AKH, such that the amendment does not create a prejudicial surprise against which the parties must now defend. *See*

10

*Mars v. Novartis Pharm. Corp.*, No. 11-2555-RDR, 2012 WL 1288729, at *2 (D. Kan. Apr. 16, 2012) (finding that a proposed amendment did not create prejudice because "[n]either party suggests the proposed prayer for punitive damages in this case is premised on facts wholly unknown to Novartis.").

Further, Universal does not anticipate that the new claims will require substantial additional discovery given the extent of deposition testimony and document production already obtained on the same (unless additional deficiencies are identified or new issues are raised by the counter-defendants). *See Layne Christensen Co. v. Bro-Tech Corp.*, No. 09-CV-2381-JWL-GLR, 2011 WL 3847076, at *4 (D. Kan. Aug. 29, 2011). Even if some limited additional financial discovery is necessary in support of the amended counterclaim, however, that is not in and of itself enough to deny leave to amend: "The fact that amendments would result in additional discovery generally does not constitute *undue* prejudice unless the opposing party is also denied a fair opportunity to prepare and present its case." *Pizza Mgmt., Inc. v. Pizza Hut, Inc.*, No. 86-1664-C, 1989 WL 115982, at *3 (D. Kan. Sept. 21, 1989) (emphasis in original).

AKH also cannot claim any prejudice as a result of Universal adding new parties. The proposed counter-defendants have all been involved in this case from the outset, are owned by the same two individuals who own AKH, and even appear to be represented by the same attorney who has been litigating this case on behalf of AKH.[6] Further, AKH itself has produced tax returns on behalf of Andy Andonian, Hratch Andonian, Andonian Enterprises, TireNetwork Group, and 55, Inc. with AKH bates-numbers, suggesting that these documents were within AKH's custody or control (and that the companies are affiliated or within AKH's control). In addition, AKH,

---

[6] At the deposition of AKH, Sergio Andonian testified that AKH's counsel Vatche Chorbajian is "our attorney" and that he also represents Andonian Enterprises, Inc.

11

Andonian Enterprises, and TireNetwork Group all share a business address. These are not truly "new" parties who are foreign to this litigation. AKH and its owners (who also own the other proposed counterclaim defendants) knew that these issues were relevant because they took steps to conceal them from Universal during this litigation. Thus, none of the proposed parties can truly claim to be surprised by this amendment. *See, e.g., United States v. Sturdevant*, No. 07-2233-KHV-DJW, 2008 WL 4198598, at *7 (D. Kan. Sept. 11, 2008) (finding that proposed amendment to add new parties did not create any undue prejudice to existing defendant's ability to defend itself).

The proposed amendment is a procedural necessity given AKH's misconduct. Importantly, the proposed amendment does not allege that the new parties committed the already-alleged tortious acts that relate to Universal's payment of its policy limits for AKH's benefit in 2012. New discovery on those issues is properly closed and Universal is prepared to move toward dispositive motions and eventually trial on those claims. Rather, the amendment only seeks to ensure that AKH's efforts to give away its assets to avoid judgment will not prevent Universal from recovering against AKH (or being satisfied by one of the related entities who now control AKH's assets). *See Little v. Reed-Prentice Div. of Package Mach. Co.*, 131 F.R.D. 591, 594 (D. Kan. 1990) (finding that an amendment to add a claim for punitive damages was not prejudicial because it "would not inject a host of new issues or theories requiring substantial additional evidence.").

Thus, AKH cannot carry its burden to show that the proposed amendment in Exhibit A will cause undue prejudice.

### 3. **The Proposed Amendments Are Not Futile**

Finally, AKH cannot carry its burden to show that Universal's proposed amendments are futile. "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Anderson*, 318 F.R.D. at 642–43. To make this determination, the Court analyzes the

proposed pleading "using the same standard as a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Id*. "Only if the court finds the proposed claims do not contain enough facts to state a claim for relief that are plausible on their face or the claims otherwise fail as a matter of law should the court find the amendment futile." *Id*. at 643.

The proposed amended Counterclaim clearly withstands scrutiny under Rule 12(b)(6). Indeed, the proposed claims illustrated in Exhibit A are substantiated and detailed enough to survive such review. The facts alleged, assuming that they are true (as is the proper standard under Rule 12(b)(6)), properly state a claim for fraudulent transfers and for alter ego liability and plead all requisite elements. *See Soc'y of Prof'l Eng'g Employees in Aerospace v. Spirit Aerosystems, Inc*., No. 14-1407-EFM-KGG, 2015 WL 3604266, at *2 (D. Kan. June 8, 2015) (Gale, J.) (finding that party had not established that proposed amendment was futile where proposed pleading stated a plausible claim). The proposed counts clearly "state a claim upon which relief can be granted" under Federal Rule of Civil Procedure 12(b)(6). As such, AKH will be unable to identify any basis to dismiss the proposed amendment as futile.

## IV.     CONCLUSION

In light of the above, including AKH's efforts to hide the true facts from Universal and from this Court, Universal respectfully requests that it be granted leave to file its amended Counterclaim, attached hereto as Exhibit A.

DATED: June 14, 2017                                  Respectfully submitted,

                                                                                      BROWN & JAMES, P.C.

                                                                                       By:     *s/Derek H. MacKay*

                                                                                      Derek H. MacKay, Esq.
                                                                                      2345 Grand Boulevard, Ste. 2100
                                                                                      Kansas City, MO 64108

                                (816) 472-0800 (Telephone)
                                (816) 421-1183 (Facsimile)
                                *dmackay@bjpc.com*

And

                                DENTONS US LLP

                                By:     */s/ Shari L. Klevens*

                                Shari L. Klevens, *Pro Hac Vice*
                                Alanna Clair, *Pro Hac Vice*
                                1900 K Street, NW
                                Washington, DC 20006
                                Tel: (202) 496-7612
                                Fax: (202) 496-7756
                                *shari.klevens@dentons.com*
                                *alanna.clair@dentons.com*

                                Attorneys for Defendant/Counter-Claimant
                                UNIVERSAL UNDERWRITERS
                                INSURANCE COMPANY

## **CERTIFICATE OF SERVICE**

I hereby certified that a copy of the above and referenced document was filed electronically with the above-captioned Court, with notice of case activity to be generated and sent electronically by the Clerk of said court on this 14th day of June to the following:

| | |
|---|---|
| Vatché Chorbajian, *Pro Hac Vice* <br> Craig Aronson, *Pro Hac Vice* <br> LAW OFFICE OF VATCHÉ CHORBAJIAN <br> 12707 High Bluff Dr., Suite 100 <br> San Diego, California 92130 <br> Tel: (858) 759-8822 <br> Fax: (858) 923-2124 <br> vatche@vclegal.com <br> craigaronsonesq@yahoo.com | Shari L. Klevens, *Pro Hac Vice* <br> Alanna Clair, *Pro Hac Vice* <br> 1900 K. Street, NW <br> Washington, DC 20006 <br> Tel: (202) 496-7612 <br> Fax: (202) 496-7756 <br> shari.klevens@dentons.com <br> alanna.clair@dentons.com |
| Brian E. Sobczyk, KS #21046 <br> STINSON LEONARD STREET LLP <br> 1201 Walnut Street, Suite 2900 <br> Kansas City, Missouri 64106 <br> (816) 842-8600 (Telephone) <br> (816) 691-3495 (Facsimile) <br> brian.sobczyk@stinsonleonard.com | Attorneys For Defendant/Counter-Claimant UNIVERSAL UNDERWRITERS INSURANCE COMPANY |
| | By:     */s/ Derek H. MacKay* |
| Attorneys For Plaintiff/Counter-Defendant AKH COMPANY, INC. | Derek H. MacKay, Esq. <br> BROWN & JAMES, P.C. <br> Attorneys For Defendant/Counter-Claimant <br> UNIVERSAL UNDERWRITERS INSURANCE COMPANY |

103945329\V-3