**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| AKH COMPANY, INC., | ) |
| | ) |
|       Plaintiff/Counter-Defendant, | ) |
| | )  Case No. 2:13-cv-2003 JAR-KGG |
| VS. | ) |
| | ) |
| UNIVERSAL UNDERWRITERS INSURANCE | ) |
| COMPANY, | ) |
| | ) |
|       Defendant/Counter/Claimant. | ) |
| | ) |
| _____ | ) |

**UNIVERSAL UNDERWRITERS INSURANCE COMPANY'S**
**MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO REVIEW**
**MAGISTRATE JUDGE GALE'S OCTOBER 24, 2017 ORDER**

Pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72(b), and District of

Kansas Local Rule 72.1.4(b), Defendant and Counter-Claimant Universal Underwriters

Insurance Company ("Universal") respectfully submits this memorandum of law in support of its

motion for the District Court to review Magistrate Judge Kenneth G. Gale's October 24, 2017

Order on Motion to Amend Counterclaim and Add Parties (Doc. 497, the "October 24 Order").

Because the October 24 Order unfairly punishes Universal for Plaintiff/Counter-Defendant AKH

Company, Inc.'s ("AKH") wrongful conduct, it should be reviewed by this Court and reversed.

## I.    INTRODUCTION

This litigation, which was brought by AKH as a strategic gamble to force Universal to

abandon its rights, has evolved significantly over its life.  AKH filed a complaint in this Court in

2013, followed by its quick motion for summary judgment on insurance coverage issues.  AKH

apparently believed that this course would permit it to keep its ill-gotten gains, which had been

provided by Universal in the form of settlement proceeds related to a separate action.  After

Judge Robinson denied AKH's motion for summary judgment and ordered the parties to

undertake discovery, Universal uncovered significant evidence of AKH's misconduct, resulting in Universal amending its counterclaim to bring claims against AKH of intentional misrepresentation, negligent misrepresentation, and concealment, among others.  Universal is now the *de facto* plaintiff in this action.

As this Court has noted in many of its Orders, discovery in this case has been contentious.  Critically, however, it has been contentious solely because of the bad actions of AKH.  This is not a case in which both parties have behaved equally badly[1]: this Court has granted nine of Universal's motions to compel against AKH and has sanctioned AKH *three times* for its discovery misconduct.[2]  Universal has been the victim of AKH's malfeasance and not the perpetrator of any of the delays.  A representative sliver of AKH's discovery misconduct in this case includes[3]:

- Interfering with the depositions of Hratch Andonian (AKH's co-owner) and its former president, Michael Schaeper (Doc. 371) (entering sanctions against AKH);

- Depositing thousands of responsive documents with a vendor, refusing to pay that vendor, and then claiming that it could not produce documents because they were no longer in AKH's possession (Doc. 375) (entering sanctions against AKH) (adopted by Judge Robinson at Doc. 400);

- Unilaterally withdrawing and amending answers to Requests for Admission (Doc. 374);

---

[1] This Court has granted a single motion to compel production from Universal, in 2014, which it amended on reconsideration to clarify that Universal was not required to produce specific claim documents to which it claimed a privilege.  (Docs. 152 & 199.)  None of the Court's orders in this litigation have found, let alone accused, Universal of misconduct or dilatory conduct, as they have with AKH.

[2] As alluded to in the October 24 Order, this Court has issued "sanctions against [AKH] on more than one occasion." (October 24 Order at 2.)

[3] AKH's long-term discovery misconduct is summarized in Universal's Motion for Sanctions, filed on June 9, 2017. (Docs. 478 & 479.)

- Refusing to produce responsive documents (Docs. 158, 276, 304, 375, 429, 451);

- Failing to comply with Court orders on discovery (*e.g.,* Docs. 304, 375, 400);

- Leading "Defendant [Universal] and this Court on a merry chase for the subject discovery." (Doc. 475 at 12-13).

Universal shares in this Court's frustration, which is why the history of AKH's discovery misconduct is relevant here. Most recently, this Court ordered limited document and expert discovery regarding AKH's finances to support Universal's existing claim for punitive damages. Universal had requested that this Court compel additional documents from AKH because AKH had provided "inconsistent and vague testimony at depositions, leaving Universal in the dark regarding [] AKH's unusual financial transactions." (Doc. 413 at 6.) Universal also noted that the limited financial documents produced by AKH in response to discovery requests relevant to Universal's claim for punitive damages reflected "questionable transfers [that] were made during the pendency of this litigation, yet neither of the AKH witnesses was able to provide any information on the purpose of the transfers." (Doc. 413 at 5.) Judge Gale ordered the production of documents and granted leave for Universal to designate an expert on this issue because "the Court will not punish Defendant [Universal] for Plaintiff [AKH]'s stonewalling tactics and failures to be forthcoming with discovery." (Doc. 451, at 12.) Other dates -- including the deadline for dispositive motions and a trial date -- have been held in abeyance so that this limited discovery into AKH's finances could be completed.

This additional discovery was expected to shed light on how AKH went from a company that reported eight-figures in sales revenues in 2012 to reporting $0 in subsequent years, even though AKH's chain of successful discount-tire stores in California still appeared to be fully-operational. The additional discovery of AKH and its accountants ordered by the Court revealed,

for the first time, that AKH had sold itself for parts to its owners, Hratch Andonian and Andy Andonian, and had concealed that fact from Universal and this Court.  In 2013, during this litigation, AKH Company, Inc. (the Plaintiff) transferred all of its assets to a hastily-formed corporation called AKH Company, LLC (although AKH Company, Inc. continues to litigate this case and file federal tax returns in its own name).[4]  In late 2013, AKH Company, LLC sold approximately 17 of its stores to Andonian Enterprises, a company formed by Andy Andonian a month earlier.  Also in late 2013, AKH Company, LLC also sold approximately 2 stores to 55, Inc., a company formed by Hratch Andonian two months earlier.  That same month, AKH transferred its wholesale division, eCommerce business, and inventory to TireNetwork Group, Inc., a company formed by Andy Andonian.[5]  All of the sales occurred for less than market value.

Universal also learned that while AKH currently reports no sales or other current income, the other entities[6] owned by Andy and Hratch Andonian that now own AKH's tire stores have reported tens of millions of dollars in annual sales.  The testimony also indicated that the Andonians use their funds interchangeably for their companies: AKH pays its current obligations through transfers received from Hratch and Andy Andonian, or from other entities owned by them.  The other AKH Entities routinely wire money to and from each other to pay debts and liabilities, while others share bank accounts.  Even AKH's accountant testified that there was "intermingling" between the accounts of AKH and the other AKH Entities ("intermingling among the bank accounts at just about every level").

---

[4] The document memorializing this transfer was signed by Andy Andonian on behalf of both entities.

[5] AKH, Andonian Enterprises, and TireNetwork Group are all located at the same mailing address in Anaheim, California.

[6] These entities, owned by Andy Andonian and Hratch Andonian, are 55, Inc., Andonian Enterprises, Inc., and TireNetwork Group, Inc. (collectively, the "AKH Entities").

These new facts[7], which occurred during the course of this litigation in 2013 but were only uncovered at depositions Universal took of Hratch Andonian (AKH's co-owner) and AKH's former accountants in the spring of 2017, give rise to Universal's request to amend its counterclaim.   Universal sought leave to bring claims of fraudulent transfers and alter ego liability against AKH as well as the Andonian individuals and the AKH Entities who benefitted from these sweetheart deals.  This explosive development also bears on the expert testimony that Universal intends to obtain with regard to AKH's ability to satisfy a judgment and an appropriate award of punitive damages.   Importantly, although the proposed amendment relates to newly-discovered facts, the new allegations also support Universal's existing claims.   Indeed, these proposed new claims buttress Universal's existing claim for punitive damages, which may not be satisfied absent the additional evidence and claims.[8]

Judge Gale's decision to deny Universal's request to amend its counterclaim appears grounded in the Court's determination to move this case forward.  As noted above, Universal does not object to that goal and also wishes to move forward expeditiously.   However, the Court's Order conflates two issues and fails to address one of them altogether: (1) the amendment of the counterclaim to assert new claims against AKH; and (2) the amendment of the counterclaim to add the new, related parties.  In denying Universal's Motion, the Court clearly addressed the second issue and denied Universal's request to amend its counterclaim to add the Andonian individuals and Andonian-owned entities, but failed to address the first issue of amendment of the claims against AKH.

---

[7] These facts are detailed in Universal's briefing in support of its motion to amend.  *See* Docs. 480, 481, & 489.

[8] This bears on why prohibiting Universal's amendment is needlessly prejudicial to Universal.  Universal has grounds to claim punitive damages against AKH.  Because AKH's owners have sold all of AKH's assets, for less than market value, to themselves in different corporate forms, AKH has interfered with Universal's ability to prove these damages.  This Court has the ability to support Universal's right to punitive damages against AKH *and its alter egos*.

Denying Universal's request for an amendment of its claims because of the length of time that this case has been pending unfairly punishes Universal for AKH's dilatory conduct. Further, as detailed by Universal in its briefing in support of its Motion to Amend, permitting the amendments against AKH or the related AKH entities would not necessitate additional fact discovery or delay. Universal seeks the Court's assistance to ensure that it can obtain its full remedy available under law and prevent further misconduct by AKH and its alter egos.

Universal requests that this Court – consistent with its recognition that "[r]ules covering joinder are to be construed broadly, and joinder is strongly encouraged" – grant Universal leave to amend its counterclaim to: (1) add discrete additional claims against AKH; and (2) join AKH-related parties to the litigation for the limited purpose of preventing further transfers and misconduct, determining whether AKH's financial transfers were fraudulent, determining whether these companies stand in the shoes of AKH, assessing a potential award of punitive damages against AKH, and satisfying any judgment. *See* October 24 Order at 3 (citing *DIRECTV, Inc. v. Barrett*, 220 F.R.D. 630 (D. Kan. 2004).

## II.    PROCEDURAL BACKGROUND

On June 14, 2017, Universal filed a Motion to Amend Counterclaim and Add Parties. (Docs. 480 & 481.) Notwithstanding the liberal rules regarding joinder and following substantial briefing from Universal and AKH,[9] the Court declined to allow Universal to join additional parties to the litigation:

> Even if the proposed third-party claims could now be brought . . . , the Court would not exercise its discretion to add those parties at this time. Those claims may be brought after judgment in this case. They are contingent on the outcome of the existing claims. Adding the new parties would essentially create a wholly new claim with new issues, with discovery and litigation in a case which has

---

[9] Universal hereby fully incorporates by reference Universal's Motion to Amend, Memorandum of Law in Support of Motion to Amend, and Reply in Support of Motion to Amend. (Docs. 480, 481, 489.)

already lasted almost five years and is not yet ready for trial. The new parties would be strangers to the very-substantial litigation and discovery which has now already ensued, and not bound by discovery and rulings to date. There is little reason to insert these new parties into the present mix.

(October 24 Order at 6.)  Although Universal also sought to amend its counterclaim against AKH to reflect these new developments, the October 24 Order is silent on that issue.

## III.   STANDARD OF REVIEW

Pursuant to Fed. Rule of Civ. P. 72(b) and D. Kan. R. 72.1.4(b), the Court should conduct a *de novo* review of Judge Gale's ruling because the October 24 Order denying Universal's Motion for Leave is dispositive.  *See McCormick v. City of Lawrence*, No. 02-2135-JWL, 2003 WL 158704, at **4-5 (D. Kan. Jan. 17, 2003) ("when the magistrate judge's order denies a motion to amend and a claim or defense is not permitted to be asserted in the case, several courts have found such a ruling to be dispositive and concluded that the district court should review it de novo"); *cf. Ocelot Oil Corp. v. Sparrow Ind*., 847 F.2d 1458, 1462-63 (10th Cir. 1988) ("[M]otions not designated on their face as one of those excepted in [28 U.S.C. § 636(b)(1)] subsection (A) are nevertheless to be treated as such a motion when they have an identical effect."). Here, because the October 24 Order denies Universal's request to assert claims against AKH, Hratch Andonian, Andy Andonian, Andonian Enterprises, Inc., 55, Inc., and TireNetwork Group, Inc., it is dispositive, and this Court should conduct a *de novo* review.  *McCormick*, 2003 WL 158704, at *1 (citing Fed. R. Civ. P. 72(b)).

Therefore, in conducting its *de novo* review, this Court should make an independent determination of the issues and need not give any special weight to the magistrate judge's recommendations.  *See Ocelot Oil*, 847 F.2d at 1464.  Indeed, this Court "has considerable judicial discretion in choosing what reliance to place on the magistrate judge's findings and recommendations." *Johnson v. Barnhart*, 402 F. Supp. 2d 1280, 1282 (D. Kan. 2005).

IV.     **ARGUMENT**

Universal needs the assistance of this Court.  In reviewing the facts of this litigation, one thing is clear: AKH has not participated in discovery as it was required to under the rules.  The latest manifestation of this misconduct is that AKH engaged in financial malfeasance during this litigation, supporting Universal's ability to allege punitive damages via additional claims against AKH and the Andonian-owned entities and family members who received the tarnished assets. Universal has uncovered this information through its own efforts, even though this information was responsive to document requests served on AKH two years ago.

Universal understands and shares in the Court's fatigue in this matter.  But it cannot be that Universal is left without a remedy because AKH has successfully run out the clock with its misdirection.[10]   Indeed, this is an action for recoupment of Universal's funds improperly extracted by AKH; AKH has now placed those funds with entities that share AKH's owners, d/b/a, address, and bank accounts.   A *de novo* review of the facts and law, as well as consideration of the most efficient way to proceed, dictates that Universal should be permitted to bring its amended counterclaim against AKH and additionally to raise limited claims against the other AKH entities solely for the purposes of supporting its claim against AKH for punitive damages and any ultimate recovery of damages.

The Court's October 24 Order failed to consider or properly address several key factors, any of which supports the relief Universal seeks.  First, although Universal asked this Court to permit it to amend its counterclaim against AKH, the October 24 Order only addresses whether counterclaims against the other Andonian individuals and entities should proceed.  Second, the interests of justice and efficiency are served by joining the Andonian individuals and related

---

[10] Universal's diligence in bringing these issues to the Court's attention is evidenced by the many discovery motions resolved in Universal's favor.  Thus, this is not an issue of Universal sleeping on its rights.

AKH Entities to this case for a limited purpose.  Third, the October 24 Order fails to account for AKH's role in delaying the discovery of the relevant facts and, thus, the timing of Universal's efforts to amend its counterclaim.  Fourth, the Court erred in concluding that Hratch Andonian, Andy Andonian, and their corporate forms are "strangers" to this litigation.

### A.    The October 24 Order Does Not Address Universal's Request to Amend its Counterclaim Against AKH

Judge Gale erred in denying Universal's Motion to Amend because the Order wholly failed to address Universal's request to amend its counterclaim *against AKH*.  Instead, the October 24 Order focused solely on whether the Court should allow Universal to add new parties to this action.

The addition of claims against AKH, a party to this action, is governed by Rule 15 and District of Kansas Local Rule 15.1(a)(1).  "The court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2).  Universal should be given the opportunity to plead claims to conform to the evidence gathered against AKH.  Because the law of this circuit favors the inclusion of Universal's claims against AKH, it would be proper for this Court to permit Universal to amend its counterclaim against AKH to bring claims of fraudulent transfers and alter ego liability.[11]  Fed. R. Civ. P. 15(a)(2); *Anderson v. PAR Elec. Contractors*, *Inc.*, 318 F.R.D. 640, 642 (D. Kan. 2017).

Rather than attack the merits of the proposed claims against it or the sufficiency of Universal's pleading, AKH has instead argued that this amendment should be denied as futile because it would "unduly prejudic[e]" AKH and "unnecessarily protract this litigation."  (Doc.

---

[11] A determination in this case that AKH fraudulently transferred its assets to other entities or that AKH is an alter ego of the Andonians and their closely-held companies, even if the Andonians and the AKH entities are not added to this case, would assist Universal in this action (determining AKH's ability to pay a judgment and pursuing a punitive damages claim against AKH), as well as any future steps against those other entities upon a judgment against AKH.

487, at 6.)  However, a proposed amendment is only futile if "the proposed claims do not contain enough facts to state a claim for relief that are plausible on their face or the claims otherwise fail as a matter of law."  *Endecott v. Commercial Floorworks, Inc*., No. 16-2190-JTM-GEB, 2017 WL 1650814, at *5 (D. Kan. May 2, 2017) (quoting *Carefusion 213, LLC v. Prof'l Disposables, Inc.,* No. 09-2616-KHV-DJW, 2010 WL 4004874, at *5 (D. Kan. Oct. 12, 2010)).  Neither this Court nor AKH have denied that Universal sufficiently pled the elements of these proposed claims against AKH.  Where, as here, the parties are in apparent agreement that Universal has meet its threshold pleading requirement, the proposed amendment against AKH should be permitted.

Moreover, and contrary to AKH's assertion, permitting the additional claims against AKH would not significantly impact discovery in this case and would not result in undue prejudice to AKH.  *See Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1208 (10th Cir. 2006) ("[c]ourts typically find prejudice only when the amendment unfairly affects the defendants in terms of preparing their defense to the amendment.") (quoting *Patton v. Guyer,* 443 F.2d 79, 80 (10th Cir. 1971)); *see also Jones v. Wildgen*, 349 F. Supp. 2d 1358, 1361 (D. Kan. 2004).  As suggested by the fulsomeness of Universal's proposed pleading, the facts in support of its proposed new claims against AKH have already been developed in discovery through the recent depositions of and productions by AKH's accountants.  The proposed amendment conforms to the facts as already gathered.

The parties have already agreed that mutual written discovery in this case is over.  (Doc. 394.)  The only likely potential remaining discovery is expert discovery, which is already underway, and which is not impacted or delayed by this amendment.  Indeed, the parties are currently in the process of retaining experts to opine on AKH's finances, transactions, and ability

to pay a punitive damages award, as previously ordered by the Court, and those same experts can presumably additionally opine on the issues implicated by Universal's proposed counterclaim. Because additional discovery in support of Universal's proposed counterclaim against AKH is not necessary, AKH will not be prejudiced by the amendment.[12]  This is confirmed by the fact that AKH argued in opposing Universal's Motion to Amend that the evidence already obtained effectively disproved the merits of Universal's proposed claims.[13]   (Doc. 487, at 8.)  Although obviously Universal disagrees with AKH's characterization of the evidence, any suggestion by AKH that substantial additional discovery is warranted is therefore belied by their own admissions.[14]  Additionally, the "interests of economy and efficiency for both the court and the parties" is furthered by permitting this amendment rather than compelling Universal to expend the resources in pursuing AKH in a separate action for its deception on the Court in this action. *Endecott*, 2017 WL 1650814, at *5.

This Court is not only permitted to accept the amended counterclaim against AKH, but it should do so, pursuant to its authority and imperative to control its docket and ensure justice is served for the parties appearing before it.  The above-described facts bearing on Universal's claim for punitive damages, which facts only recently came to light, occurred under Universal's and this Court's noses while this litigation was pending.  Instead of providing truthful and forthright answers to Universal and the Court regarding the unusual changes to its finances, AKH engaged in a practice of delay, deception, and concealment, including during proceedings

---

[12] On the other hand, if the amendment is not permitted, Universal will be severely prejudiced.

[13] In briefing these issues, AKH wrung its hands, suggesting that discovery in support of Universal's amended counterclaim would be virtually boundless.  However, because the parties have already conducted discovery relating to the claims, and any remaining facts are solely within AKH's possession, AKH should not be permitted to stymie Universal's ability to conform its pleading to the facts.

[14] AKH has been a passive participant in discovery to date.  It has not noticed a single third-party non-expert deposition in this litigation and has issued only one third-party subpoena (which was dismissed by this Court as "non-responsive computer-code gobbledygook," Doc. 375, at 7).  That AKH would suddenly engage in scorched-earth litigation if Universal's counterclaim were permitted strains credulity.

with the Court.  It is fair to assume that AKH's secretive maneuvers were aimed at preventing the very claims that Universal now seeks to bring (and otherwise aimed at undermining Universal's ability to proceed against AKH for punitive damages).  In light of the above and in the interest of fairness, this Court should permit Universal to amend its counterclaim to include claims for fraudulent transfers and alter ego liability against AKH.

**B.      Joinder of Hratch Andonian, Andy Andonian, and the AKH Entities is Proper Under Federal Rule of Civil Procedure 20**

Judge Gale denied Universal's Motion to Amend to add Hratch Andonian, Andy Andonian, and the AKH Entities as counter-defendants to the proposed counterclaims of fraudulent transfer and alter ego liability, even while noting that the rules covering joinder "are to be construed broadly," and that "joinder is strongly encouraged."  (October 24 Order at 3.)  It appears that Judge Gale premised his decision, in part, on his determination that Fed. R. Civ. P. 20 -- and not Fed. R. Civ. P. 15(a), as briefed by the parties -- applied to his analysis.  At the outset, to the extent that Judge Gale's Order did not consider the liberal pleading and amendment standard of Fed. R. Civ. P. 15(a), that omission is error.  *See, e.g., Johnson v. Kraft Foods N. Am.*, No. 05-2093-JWL-DJW, 2006 WL 8429267, at *1 (D. Kan. Apr. 3, 2006) (finding that when a party seeks to join additional plaintiffs, the court must consider not only the joinder provisions of Rule 20, but also "the liberal amendment provisions of Rule 15(a).").

Because the Court must consider Rule 15(a) when deciding a motion to join additional parties under Rule 20, the Court must consider whether "justice" requires the amendment. Applying that standard, the Court should have granted Universal's Motion to Amend to join the Andonian individuals and companies for the limited claims of fraudulent transfer and alter ego liability.  Joinder is urged as part of the mandate on courts to "entertain the broadest possible scope of action consistent with fairness to the parties." *Jenkins v. Duffy Crane & Hauling, Inc.*,

No. 13-cv-00327-CMA-KLM, 2015 WL 6464437, at *4 (D. Kan. Oct. 27, 2015) ("Rule 20 is construed liberally to promote trial convenience and to expedite the final determination of disputes, thereby preventing multiple lawsuits.") (internal citations omitted); *see also Johnson*, 2006 WL 8429267, at *1 (construing Rule 20 broadly because "joinder of claims, parties, and remedies is strongly encouraged") (quoting *Sprint Commc'ns Co. L.P. v. TheGlobe.com, Inc.,* 233 F.R.D. 615, 616 (D. Kan. 2006)).

Here, the allegations relating to the proposed new counterclaims arise out of the "same . . . series or transactions or occurrences," and questions or law or fact are common to each of them. Fed. R. Civ. P. 20(a)(1)(A). What constitutes a "transaction" is not to be rigidly construed, as the term "comprehend[s] a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *Nkemakolam v. St. John's Military Sch.*, No. 12-2132-JWL, 2014 WL 200918, at *1 (D. Kan. Jan, 17, 2014) (internal citation omitted).[15]  "[C]laims arise out of the same transaction or occurrence when the likelihood of overlapping proof and duplication in testimony indicates that separate trials would result in delay, inconvenience, and added expense to the parties and to the court." *Nkemakolam*, 2014 WL 200918, at **3-4 (citing 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1653).

Allowing Andy Andonian, Hratch Andonian, and the AKH Entities into this litigation for a limited purpose would "promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits." *Johnson,* 2006 WL 8429267, at *1 (quoting *Sprint Commc'ns,* 233 F.R.D. at 616).  As Judge Gale noted, neither the fraudulent transfers

---

[15] Judge Gale erred in holding the proposed amended claims are not "'arising out of the same transaction or occurrence' within the meaning of Rule 20" largely because "the claims plead in the proffered amendment are based on alleged inequitable conduct *after* the present claim arose."  (October 24 Order at 5-6 (emphasis in original).)  Exactly identical events or temporal proximity of events are not required to satisfy Rule 20.  *See, e.g., Kohn v. Am. Hous. Found. I, Inc.*, 170 F.R.D. 474, 475-76 (D. Col. 1996) (citing cases).

claim nor the alter ego liability claim would require Universal to prove -- or the proposed parties to defend -- allegations relating to the claims of intentional misrepresentation, concealment, and related claims brought only against AKH.  (October 24 Order at 4-5.)  Notwithstanding this and the broad edict of case law compelling Courts to permit amendment under Rules 15(a) and 20 whenever possible, Judge Gale concluded that Universal should not be permitted to add limited claims against the Andonians and the AKH Entities because they "may be brought as a separate action if and when Defendant obtains judgment against Plaintiff."  (October 24 Order at 6.)  This decision, which necessarily requires additional litigation after this case is over, warrants review by this Court.

First, delaying Universal's requested relief solely so that the parties may separately litigate these issues later is contrary to the goal of Fed. R. Civ. P. 20 in "preventing multiple lawsuits."  *Johnson,* 2006 WL 8429267, at *1 (quoting *Sprint Commc'ns,* 233 F.R.D. at 616); *Nkemakolam*, 2014 WL 200918, at *1 ("overlapping evidence indicates that requiring [multiple] separate trials would result in delay, inconvenience to the parties and witnesses, and added expense.").

Second, Judge Gale erred in concluding that the proposed counterclaims against the new entities are <u>only</u> relevant to post-judgment asset recovery.  This is incorrect.  Indeed, succeeding in its claims of fraudulent transfer and alter ego liability against the Andonians and their companies will also bear on Universal's punitive damages claim in this case, which this Court has already ruled entitles Universal to obtain discovery as to AKH's finances.  (Doc. 451, at 12.)  Universal expects that expert testimony would indicate that efforts by AKH and its related companies to hide or transfer assets would bear on the amount of an award sufficient to punish or deter AKH.  This Court has also agreed that Universal is entitled to discovery regarding AKH's

ability to satisfy a judgment, which relates to the proposed counterclaims against these other entities.

Even if the involvement of the Andonians and the AKH Entities bore only on post-judgment asset recovery, it would still be exceedingly efficient -- and would not impact the scope of the litigation -- to add these parties at this time.  If these parties are not added to this case and subject to the power of this jurisdiction, it is likely that they (under the direction of Hratch Andonian and Andy Andonian, owners of AKH) will continue to transfer and hide funds.  It serves the interests of justice for this Court to help protect its litigant, Universal, from additional abuses.  Further, not only do Hratch Andonian, Andy Andonian, and the AKH Entities have the money that would bear on whether AKH can satisfy a judgment or whether punitive damages are supported, but they have affirmatively taken responsibility for AKH's financial obligations and resources.[16]  Although these new parties are additionally relevant to Universal's ability to enforce any future judgment, that does not weigh against joinder.  Joinder of related entities or executives is appropriate under Rule 20 where the owner or executive, like Hratch Andonian and Andy Andonian, personally funds a party's financial obligations.  *See Heritage Exteriors Inc. v. Arco Metals Co.*, No. 86-2277, 1987 U.S. Dist. LEXIS 826, at **2-3 (D. Kan. Jan. 22, 1987) (the court joined the president of party corporation, pursuant to Rule 20, as the president executed a personal guarantee of accounts due, holding that "the liability of [the president] rests on whether accounts are due to defendant from plaintiff is alleged in the counterclaim.").

Finally, because the proposed counterclaims against the Andonians and the AKH Entities are so narrow in scope, there would be no need for additional discovery regarding whether the Andonians and the AKH Entities have or recently had the funds at issue in their possession

---

[16] AKH testified that it pays its obligations through transfers received from its owners, Hratch Andonian and Andy Andonian, or from other entities owned by H. Andonian and A. Andonian.

(other than, potentially, expert discovery that is already underway).[17]  These entities would not be parties to the misrepresentation allegations against AKH, but would be relevant to this case based on their participation in AKH's laundering scheme during this litigation, aimed at depriving this Court of its authority.

> C.     **Any Delay in Seeking Leave to Amend is Due to AKH's Failure to Timely Comply with Universal's Discovery Requests And Should Not be Held Against Universal**

As noted above, the October 24 Order denying Universal's request to bring limited claims against the Andonians, 55, Inc., Andonian Enterprises, and TireNetwork Group appears to have been informed by Judge Gale's belief that this case has been pending for too long.  This is precisely the line that AKH was selling in opposing Universal's Motion to Amend: "after conducting months of asset discovery on the collateral issue of whether AKH can pay a judgment on Universal's counterclaims, Universal seeks to further delay a decision on the merits by adding new parties and claims." (Doc. 487, at 3.)  First, Universal has not been conducting "months of asset discovery"; rather, the case has largely been stayed for the last several months.  Second, AKH downplays its own role in requiring this discovery, which was ordered as a result of AKH's obfuscation.  Third, Universal is anxious to resolve this case on its merits, given the substantial evidence it has obtained (at great expense and with great effort) in support of all its claims.  Finally, and most egregiously, AKH never recounted and this Court did not observe or recite the true cause of any "delay" in this case.  After years of redirecting Universal away from its finances, AKH is now boldly claiming that it is too late for Universal to do anything about AKH's misconduct that it has only recently uncovered.

---

[17] As noted by Universal in its Motion to Amend, it "does not anticipate that the new claims will require substantial additional discovery given the extent of deposition testimony and document production already obtained."  (Doc. 481, at 11.)

To be clear, AKH misled Universal and this Court about the issues raised in Universal's Motion to Amend.  In trying to get Universal and this Court off the scent, AKH told Universal that AKH Company, LLC was an unrelated entity created for a distinct tax issue (see Doc. 479-5), told Universal and this Court during conferences that AKH's finances had changed simply because the market for tire retailers was not what it once was, and told this Court in briefing that the financial position of Andonian Enterprises "has no relevance to any issues in the case." (Doc. 415, at 3.)  In those instances, AKH never told Universal or this Court the truth: that AKH's finances had changed because it diverted all of its assets to other related entities owned by Andy Andonian and Hratch Andonian and to those owners themselves.

The timing of Universal's amendment was entirely within AKH's control.  Had AKH been truthful and forthright in responding to Universal's initial discovery requests two years ago and the court's subsequent inquiries, Universal would have obtained the necessary facts to bring these additional claims at that time.  Universal could not have brought these proposed claims sooner because _AKH successfully concealed the requisite facts_.

Denying Universal's Motion sends a powerful message to litigants before this Court: hide the facts long enough until the Court gets frustrated and just moves on.  AKH, inexplicably, is using its misconduct as a shield, arguing that because it successfully concealed the truth, it is now too late for anything to be done about it.  Denying Universal leave to amend not only rewards AKH's misconduct, but it unduly prejudices Universal's ability to satisfy its claims against AKH.

### D.    Hratch Andonian and Andy Andonian Are Not Strangers to this Litigation

Judge Gale concluded that "[t]he new parties would be strangers to the very-substantial litigation and discovery which has already ensured."  (October 24 Order at 6.)  First, as noted above, the litigation and discovery to date regarding the parties' pending insurance claims are

irrelevant to the proposed new claims, which arise solely from AKH's conduct with its alter egos to rob this Court of the ability to manage its docket.

Second, it is error to conclude that Hratch and Andy Andonian, and the companies they own, are "strangers" to this litigation, as painstakingly detailed in Universal's briefing in support of its Motion to Amend. Indeed, the premise of Universal's amendment is that none of these parties are "strangers" to this litigation because they are *alter egos* of AKH. Hratch Andonian and Andy Andonian are already integrally involved in this action. In fact, AKH's own attorney has held out Hratch Andonian and AKH as interchangeable, stipulating that Hratch Andonian's deposition testimony on his own behalf similarly binds the company.[18]

Deposition testimony and documents presented in this case establishes the following: (1) Hratch Andonian and Andy Andonian have asserted and accepted responsibility for AKH's financial obligations, both personally and through the AKH Entities; (2) the Andonians, who own and exercise authority over AKH and the AKH Entities, use the financial resources of AKH and the AKH Entities as a collective pool of monies available to them personally, or to whichever entity the Andonians' whims determine to be of need at any given time; (3) the Andonians executed binding legal documents on behalf of AKH and the AKH Entities; and (4) AKH, the Andonians, and the AKH Entities share legal counsel, a "d/b/a", a business mailing address, executives, employees, and bank accounts.

To state that Hratch Andonian, Andy Andonian, and the AKH Entities are strangers to these new claims ignores the factual record establishing not only the contrary determination made by AKH's own counsel, but also the parties' practice, dealings, and course of conduct throughout this litigation. At a minimum, Hratch Andonian and Andy Andonian, whose

---

[18] In total, Hratch Andonian has been deposed as AKH's Rule 30(b)(6) witness for two days of testimony, plus two days of testimony as an individual fact witness (which AKH's counsel later agreed would bind AKH). Some of that time was ordered by this Court as a sanction for previous deposition misconduct.

individual interests have been represented for the course of this litigation, should be added to this litigation to defend the new counterclaims.  To the extent that Judge Gale's Order was premised on this misunderstanding of the role of the Andonians and their companies in this litigation, the Order should be reviewed.

## V.      CONCLUSION

For all the foregoing reasons, the Court should set aside the Order of Judge Gale and grant Universal's Motion for Leave to Amend Counterclaim and Add Parties.


DATED: November 7, 2017                    Respectfully submitted,

BROWN & JAMES, P.C.

By:  _____*s/ Derek MacKay*_____

        Derek H. MacKay, Esq.
        2345 Grand Boulevard, Ste. 2100
        Kansas City, MO 64108
        (816) 472-0800 (Telephone)
        (816) 421-1183 (Facsimile)
        *dmackay@bjpc.com*

And

DENTONS US LLP

By:  _____*/s/ Shari L. Klevens*_____

        Shari L. Klevens, *Pro Hac Vice*
        Alanna Clair, *Pro Hac Vice*
        1900 K Street, NW
        Washington, DC 20006
        Tel: (202) 496-7612
        Fax: (202) 496-7756
        *shari.klevens@dentons.com*
        *alanna.clair@dentons.com*

## CERTIFICATE OF SERVICE

I hereby certified that a copy of the above and referenced document was filed electronically with the above-captioned Court, with notice of case activity to be generated and sent electronically by the Clerk of said court on this 7th day of November to the following:

Vatché Chorbajian, *Pro Hac Vice*
Craig Aronson, *Pro Hac Vice*
LAW OFFICE OF VATCHÉ CHORBAJIAN
12707 High Bluff Dr., Suite 100
San Diego, California 92130
Tel: (858) 759-8822
Fax: (858) 923-2124
*vatche@vclegal.com*
*craigaronsonesq@yahoo.com*

Shari L. Klevens, *Pro Hac Vice*
Alanna Clair, *Pro Hac Vice*
1900 K Street, NW
Washington, DC 20006
Tel: (202) 496-7612
Fax: (202) 496-7756
*shari.klevens@dentons.com*
*alanna.clair@dentons.com*

Brian E. Sobczyk, KS #21046
STINSON LEONARD STREET LLP
1201 Walnut Street, Suite 2900
Kansas City, Missouri 64106
(816) 842-8600 (Telephone)
(816) 691-3495 (Facsimile)
*brian.sobczyk@stinsonleonard.com*

Attorneys For Plaintiff/Counter-
Defendant AKH COMPANY, INC.

Attorneys For Defendant/Counter-
Claimant UNIVERSAL
UNDERWRITERS INSURANCE
COMPANY


By:      */s/ Derek MacKay*
         Derek H. MacKay, Esq.
         BROWN & JAMES, P.C.
         Attorneys For Defendant/Counter-
         Claimant
         UNIVERSAL UNDERWRITERS
         INSURANCE COMPANY