### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

**AKH COMPANY, INC.,**

      **Plaintiff,**

      **v.**                                                   **Case No. 13-2003-JAR-KGG**

**UNIVERSAL UNDERWRITERS INSURANCE
CO.,**

      **Defendant.**

### MEMORANDUM AND ORDER

This is an insurance coverage dispute filed by AKH Company, Inc. ("AKH") against its

insurance carrier, Universal Underwriters Insurance Company ("UUIC"), arising out of a

trademark infringement action between AKH and a third party that UUIC defended and settled

under a reservation of rights ("RT litigation").  The parties assert claims against one another that

exceed five million dollars.  This case has been pending for over five years now, largely due to

what Magistrate Judge Gale has aptly described as "an inordinate number of increasingly

contentious discovery abuses"[1] by AKH.  Eight motions to compel[2] and three motions for

sanctions[3] have been decided against AKH at least in part thus far.  The most recent set of

disputes resulted from discovery by UUIC into AKH's finances, in furtherance of UUIC's claim

for punitive damages.  This discovery revealed that AKH may have transferred its assets to avoid

any judgment that may be awarded to UUIC in this case.  Judge Gale issued two orders dealing

with this issue: (1) an October 24, 2017 Memorandum & Order Denying Defendant's Motion to

---

[1]Doc. 429.

[2]Docs. 158, 276, 300, 304, 429, 430, 451, 455.

[3]Docs. 371, 375, 501.

Amend Counterclaim and Add Parties ("October 24 Order"),[4] ruling that Defendant may not amend its counterclaim to add related corporate entities and individual owners of AKH as parties and claims of fraudulent transfer and alter ego; and (2) a November 14, 2017 Memorandum & Order on Motion for Sanctions, finding among other things, an "on-going effort by Plaintiff to obstruct discovery of its financial status," and as a sanction, recommending an adverse inference instruction that if punitive damages are awarded, the jury may consider Plaintiff's net worth unlimited for the purpose of evaluating the appropriate amount of punitive damages ("November 14 Order").[5]

Now before this Court are the parties' respective objections to Judge Gale's recent Orders: UUIC's Motion for Review of Magistrate Judge Gale's October 24, 2017 Order (Doc. 498), and AKH's Objection to Magistrate Judge Gale's Order Dated November 24, 2017 (Doc. 501). The motions are fully briefed and the Court is prepared to rule. As described more fully below, the Court grants UUIC's motion for review and allows leave to amend. UUIC shall file its proposed amended counterclaim forthwith. The Court grants in part AKH's objection to the November 14 Order. The Court finds no clear error in Judge Gale's determination that sanctions are appropriate, or that an adverse inference instruction is appropriate. However, the Court modifies the recommended adverse inference instruction that should be submitted by UUIC before trial. The Court reminds AKH of its continuing discovery obligations under Fed. R. Civ. P. 26(e), and warns that any further dissipation of assets prior to judgment may result in much harsher sanctions.

---

[4]Doc. 497.

[5]Doc. 501.

## I.    Background

AKH filed this case seeking a declaration that UUIC breached its duties to defend, settle, and act fairly and in good faith with respect to the RT litigation.  UUIC brought counterclaims for declaratory relief and breach of contract arising out of its defense and settlement of the RT litigation, and sought reimbursement of the settlement funds.  Eventually, after a period of discovery, the parties amended their pleadings to allege tort claims against one another, based on documents obtained during discovery.  UUIC seeks, among other things, punitive damages on its fraud and fraudulent concealment claims.  As already stated, the case has involved many highly contentious discovery motions, application of the crime-fraud exception to certain documents otherwise covered by the attorney-client privilege, and the imposition of sanctions against AKH. The instant motions are hopefully the last in a long line of such contentious motions.

In late 2016, UUIC moved to compel documents and for leave to appoint an expert relating to AKH's financial condition.  Judge Gale granted in part the motion as to AKH's financial viability, profit and loss statements, annual statements, balance sheets, and expense/revenue reports for 2011 through the present, certain tax returns (including the individual tax returns for Hratch, Andy, and Sergio Andonian), and UUIC's request for a forensic accounting and damages expert.[6]  According to UUIC, this discovery was sought largely in furtherance of its punitive damages claim, and because the discovery up to that point had not explained how "AKH went from a company that reported eight-figures in sales revenues in 2012 to reporting $0 in subsequent years, even though AKH's chain of successful discount-tire stores in California still appeared to be fully-operational."[7]  Also, in the spring of 2017, UUIC deposed

---

[6]Doc. 451.

[7]Doc. 499 at 3.

AKH co-owner Hratch Andonian and its former accountants.  Based on this discovery, UUIC moved for leave to amend to "add new related parties and to add new claims that focus solely on AKH's satisfaction of any judgment."[8]  UUIC moved to add claims of fraudulent transfer and alter ego liability against AKH and new related parties Andonian Enterprises, Inc.; 55, Inc.; TireNetwork Group, Inc.; Andy Andonian; and Hratch Andonian.  UUIC claims that its discovery uncovered efforts by AKH after this lawsuit was filed to divert all its assets to other related entities owned by the same individuals in order to render AKH essentially judgment-proof.  The proposed fraudulent conveyance claim states that AKH is "essentially a shell at this point, serving no purpose other than to litigate this action.  AKH is systematically devaluing itself which could result in AKH's potential inability to pay any judgment against it for its tortious and other misconduct."[9]  The alter ego claim asks the Court to disregard the legal fiction of corporate separateness and treat AKH and the proposed new parties as alter egos of one another.  The claim alleges various ways in which the proposed new defendants have transferred assets and diluted AKH, and argues that treating them all separately "would serve as a cover for fraud and illegality and promote an injustice."[10]

UUIC further argues that AKH and its counsel affirmatively misled it and Judge Gale about the many asset transfers after this case was filed, misrepresenting that its "finances had changed simply because the market for tire retailers was not what it once was," and that "the financial position of Andonian Enterprises 'has no relevance to any issues in this case.'"[11]

---

[8]Doc. 481 at 5.

[9]Doc. 481-1 ¶ 263.

[10]*Id.* ¶ 277.

[11]*Id.* at 4–5 (quoting Doc. 415 at 3).

AKH opposed the motion for leave to amend, arguing undue delay, prejudice, and futility of amendment. AKH contended that the addition of the proposed claims and parties would delay the case even further by requiring another round of discovery and motions practice as to the new claims and counter defendants. Moreover, AKH argued that amendment to add the proposed new parties would be futile because they lack the requisite minimum contacts with the State of Kansas, and therefore UUIC's claims against them could not withstand a motion to dismiss for lack of personal jurisdiction.

Judge Gale denied the motion for leave to amend in his October 24 Order. First, he determined that the motion is governed by both Fed. R. Civ. P. 15(a) and the joinder rules in Fed. R. Civ. P. 19 and 20, yet the parties failed to address the joinder rules. Judge Gale found that the proposed new parties were not required, and he declined to exercise his discretion to allow UUIC to add them at this juncture:

> The question, then, is whether a fraudulent conveyance or alter-ego claim against a third party asserted for the purpose of reaching assets of the third party to enforce judgment Defendant has not yet obtained, is as to Plaintiff and the third parties, "any right is asserted against them jointly or severally, or in the alternative with respect to or arising out of the same transaction or occurrence" within the meaning of Rule 20. It is not. The Defendant's substantive claims in this case arising out of the insurance transaction are solely against Plaintiff. The third parties are, at least technically, strangers to those claims and will not share primary liability with Plaintiff, even if the third party assets become vulnerable to the execution of that judgment. The fraudulent conveyance and alter ego claims are separate, and involve separate allegations and factual issues and, like a garnishment or other judgment enforcement action, may be brought as a separate action if and when Defendant obtains judgment against Plaintiff.
>
> Even if the proposed third-party claims could now be brought under Rule 20, the Court would not exercise its discretion to add those parties at this time. Those claims may be brought after judgment in this case. They are contingent on the outcome of

the existing claims. Adding the new parties would essentially
create a wholly new claim with new issues, with discovery and
litigation in a case which has already lasted almost five years and
is not yet ready for trial. The new parties would be strangers to the
very-substantial litigation and discovery which has already ensued,
and not bound by discovery and rulings to date. There is little
reason to insert these new parties into the present mix.[12]

In addition to seeking leave to amend, UUIC sought sanctions against AKH for its
misconduct in unearthing the true financial picture of AKH. Judge Gale agreed that AKH's
conduct, considering its extensive past discovery misconduct in this case, was sanctionable.
Judge Gale described it as "an on-going effort by Plaintiff to obstruct discovery of its financial
status," that warrants "an appropriate sanction . . . which will allow the parties to move past this
issue towards resolution of the merits of this case."[13] Judge Gale determined that AKH should
be sanctioned for failure to prepare Hratch Andonian for deposition on the issue of AKH's
finances, and for concealing or destroying various documents responsive to UUIC's discovery
requests about AKH's finances. Judge Gale specifically recommended to the undersigned:

> as a sanction for the discovery abuses relating to the production of
> information concerning the financial worth of Plaintiff, that the
> District Court and the Jury be permitted, if punitive damages are
> awarded, to consider Plaintiff's net worth unlimited for the purpose
> of evaluating the appropriate amount of punitive damages. An
> appropriate instruction in that regard should be given, tailored to
> address the substantive relevance of that consideration under the
> applicable law. Plaintiff should not be permitted to rebut that
> consideration either by evidence or argument.[14]

---

[12] Doc. 497 at 5–6.

[13] Doc. 501 at 14.

[14] *Id*. at 46.

## II.     Motion for Leave to Amend and to Add Parties

### A.     Standard

Fed. R. Civ. P. 72 allows a party to provide specific, written objections to a magistrate judge's order.  The applicable standard of review depends on whether the magistrate judge's order relates to a dispositive or nondispositive issue.  A nondispositve decision is reviewed under a clearly erroneous or contrary to law standard, and a dispositive order is reviewed de novo.[15] The parties here disagree about whether Judge Gale's October 24 Order should be considered dispositive or nondispositive under Rule 72.

Under the more deferential standard that applies to this Court's review of a nondispositive order, the Court must affirm unless "the entire evidence leaves it 'with the definite and firm conviction that a mistake has been committed.'"[16]  As to legal matters, "the Court conducts an independent review and determines whether the magistrate judge ruling is contrary to law."[17]  "Under this standard, the Court conducts a plenary review and may set aside the magistrate judge decision if it applied an incorrect legal standard or failed to consider an element of the applicable standard."[18]  The Court need not determine whether the October 24 Order is dispositive or not because even if it is considered nondispositive, the Court grants UUIC's objection.  As described more fully below, leave to amend to add claims against AKH should have been granted under Rules 15 and 16.  Given this ruling, the Court also finds that leave to amend to add the proposed additional parties should have been granted under Rule 20.

---

[15] Fed. R. Civ. P. 72.

[16] *In re Motor Fuel Temp. Sales Pracs. Litig.*, 707 F. Supp. 2d 1145, 1148 (D. Kan. 2009) (quoting *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988)).

[17] *Id.*

[18] *Id.*

## B.    Additional Claims under Rule 15

UUIC first argues that Judge Gale erred by focusing solely on the federal joinder rules and by not applying the liberal pleading standard in Fed. R. Civ. P. 15(a).  When a motion for leave to amend is filed that seeks to add parties who are not indispensable, *both* Rules 15 and 20 govern.[19]  In this case, Rule 16 must be considered as well because UUIC's motion was raised well after the deadline set forth in the Scheduling Order for filing motions to amend.[20]

Judge Gale determined that the parties wholly failed to address the joinder rules, and therefore regardless of whether UUIC's amendment may be permissible under Rule 15, under Rule 20 the motion to add parties should be denied.  UUIC argues that by proceeding directly to a Rule 20 analysis, Judge Gale did not consider the proposed new claims against existing party AKH.  The Court agrees.  UUIC's Proposed Fifth Amended Counterclaim includes two new claims against existing party AKH and the proposed new parties.  Count XIV alleges a claim of Fraudulent Transfers Pursuant to the California Uniform Voidable Transactions Act.[21]  Count XV alleges alter ego liability against AKH and the new entities.  Judge Gale did not separately consider whether the proposed additional claims against AKH pass muster under Rules 15 and 16, nor did he consider those rules in relation to the additional claims against the new parties.  This Court therefore proceeds to conduct that analysis de novo.

Where a party seeks to amend to add a new counterclaim or claim after a scheduling order deadline passes, that party must show "(1) good cause for seeking modification under Fed.

---

[19]*In re Motor Fuel Temp. Sales Pracs. Litig.*, 261 F.R.D. 577, 583 (D. Kan. 2009); *White v. Graceland Coll. Ctr. For Prof'l Dev. & Lifelong Learning, Inc.*, No. 07-2319-CM-GLR, 2008 WL 205908, at *1 & n.2 (D. Kan. Feb. 21, 2008).

[20]*Gorsuch, Ltd. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1241 (10th Cir. 2014).  The last scheduling order that contained a motion to amend deadline was filed on April 9, 2014, containing a May 6, 2014 deadline.  Doc. 141.

[21]Cal Civ. Code §§ 3439, *et seq.*

R. Civ. P. 16(b)(4) and (2) satisfaction of the Rule 15(a) standard."[22]  The good cause requirement "may be satisfied, for example, if a plaintiff learns new information through discovery."[23]  Here, UUIC's new claims are based on information learned through late-produced discovery.  And as documented in the November 24 Order, this new discovery followed a long period of concealment and misleading statements by AKH about its financial status.  UUIC did not delay in seeking amendment once it learned facts that put it on notice of its new claims.  The good cause standard is met.

Under Rule 15(a), leave to amend a complaint is freely given when justice so requires.[24] A party is typically granted leave to amend under this rule unless there is "a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendment previously allowed, or futility of amendment."[25]  A proposed amendment is futile if the amended complaint would be subject to dismissal.[26]  While liberality of amendment is important, it is equally important that "there must be an end finally to a particular litigation."[27]

As stated above, there is no basis to conclude that UUIC unduly delayed in seeking amendment.  The proposed amended claims and parties are based on newly obtained information provided by AKH in discovery; information that it delayed in providing, and in some instances concealed to UUIC, warranting sanctions.  The Court finds no undue delay.  Similarly, the Court finds no showing of undue prejudice to AKH in allowing leave to amend.  "Typically, courts

---

[22]*Gorsuch, Ltd.*, 771 F.3d at 1241.

[23]*Id.*

[24]Fed. R. Civ. P. 15(a)(2).

[25]*Duncan v. Manager, Dep't of Safety, City & Cty. of Denver*, 397 F.3d 1300, 1315 (10th Cir. 2005).

[26]*Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 521 F.3d 1278, 1288 (10th Cir. 2008).

[27]*Pallottino v. City of Rio Rancho*, 31 F.3d 1023, 1027 (10th Cir.1994).

'find prejudice only when the amendment unfairly affects' a party's ability to prosecute or defend the lawsuit."[28]  The claims asserted in Counts XXVI and XV are based on information within the control of AKH, its owners, and the related entities.  In fact, the claims are based on facts known to and concealed by AKH, so there should be no unfair surprise.  AKH was put on clear notice that UUIC sought discovery of its finances in support of its punitive damages claims going back at least to 2016.  While the proposed new claims and parties may require some additional discovery, the Court is confident that most of that discovery was completed as part of UUIC's punitive damages discovery that preceded the filing of the motion.  To the extent some limited discovery may be warranted, the Court does not find that it causes undue prejudice to AKH, particularly in light of its conduct giving rise to the proposed new claims.  Due entirely to AKH's own discovery misconduct, which has necessitated multiple motions to compel and for sanctions, multiplied by the parties' many objections to Judge Gale's orders, this case has not yet proceeded to a pretrial order, nor is there a trial date or dispositive motions deadline on the horizon.  Despite this Court's dissatisfaction with the slow pace of this case, it is confident that AKH can and will complete the limited discovery required to mount a defense to these two new counterclaims in a reasonable period to allow the schedule in this case to move toward a decision on the merits.

AKH also complains that adding the new claims against new parties will cause prejudice by requiring another round of motions to dismiss as to the new parties, primarily based on its claim of lack of personal jurisdiction.  Again, the Court will not find prejudice to AKH given the misconduct found by Judge Gale in his November 24 Order.  The Court sets forth below a

---

[28]*See Layne Christensen Co. v. Bro-Tech Corp.*, No. 09-2381-JWL-GLR, 2011 WL 3847076, at *4 (D. Kan. Aug. 29, 2011) (quoting *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1205 n.4 (10th Cir. 2006)).

condensed schedule for the parties that includes a short period of discovery that will be limited in scope, and an expedited briefing deadline for any motion to dismiss that AKH wishes to file as to these new claims and parties. There is no reason why the case cannot proceed to a pretrial conference prior to resolution of that motion; but the Court leaves this to Judge Gale's discretion.

The Court finds no bad faith or dilatory behavior by UUIC, nor is there evidence that it failed to cure deficiencies in previous amendments. AKH lodges no futility argument about the additional claims against AKH, but argues that the claims against the new parties are futile because the Court lacks personal jurisdiction. UUIC replies that it has established a prima facie case of personal jurisdiction given its allegations that the new parties are alter egos of AKH. The Court declines to decide the issue of personal jurisdiction in the context of a motion for leave to amend. Instead, the Court finds that the allegations in the proposed amended counterclaim support UUIC's assertion of personal jurisdiction by alleging sufficient jurisdictional facts,[29] and defers ruling on the issue until a fully briefed motion to dismiss is before the Court. In the interest of avoiding further protracted litigation, the Court will set forth an expedited briefing schedule for such motion at the end of this Order.

The Court grants UUIC's motion to review Judge Gale's decision to deny leave to amend under Rules 15 and 16 because he failed to perform the necessary analysis under those rules. After conducting a de novo review of the proposed amendments under Rules 15 and 16, the Court finds that leave to amend should be granted.

---

[29]*See Luc v. Krause Werk GMBH & Co.*, 289 F. Supp. 2d 1282, 1290–91 (D. Kan. 2003); *see also Patin v. Thoroughbred Power Boats, Inc.*, 294 F.3d 640, 653 (5th Cir. 2002).

### C.    Additional Parties under Rule 20

Judge Gale focused his analysis on UUIC's request to add new parties in proposed Counts XIV and XV.  He found that joinder was not required under Rule 19, so he proceeded to consider whether to grant permissive joinder under Rule 20.  Rule 20(a)(2) sets out a two-part test: (1) whether the claims against defendants arise out of the same transaction or occurrence; and (2) whether there are common questions of law or fact to all defendants.  The purpose of Rule 20 is "to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits."[30]  Like Rule 15, it "is to be construed broadly and 'joinder of claims, parties, and remedies is strongly encouraged.'"[31]

Judge Gale determined that UUIC's proposed new claims did not arise out of the same transaction or occurrence as the insurance dispute and tort claims that gave rise to this action because the they are premised entirely on conduct that postdated the filing of the Complaint in this case, and are unrelated to the insurance coverage dispute.  Because if and when UUIC obtains judgment the new claims may be brought as a separate action, or in a supplemental proceeding, he found that to add them to these already-protracted proceedings would defeat the goal of Rule 20 to avoid delay and expense.

Although Judge Gale correctly applied Rule 20 to the motion for leave to add parties to this litigation, he did not consider it in conjunction with Rules 15 and 16.  When the liberal pleading standard in Rule 20 is considered along with this Court's determination that amendment is proper under Rules 15 and 16, the Court determines that the motion to add parties should have been granted.  First, the Court finds that the new claims and parties are part of the same

---

[30]*DIRECTV, Inc. v. Barrett*, 220 F.R.D. 630, 631 (D. Kan. 2004) (quoting 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1652 (3d ed. 2001)).

[31]*Id.* (quoting *Biglow v. Boeing Co.*, 201 F.R.D. 519, 520 (D. Kan. 2001)).

transaction or occurrence as the original claims. "'Transaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship."[32] Courts are usually "inclined to find that claims arise out of the same transaction or occurrence when the likelihood of overlapping proof and duplication in testimony indicates that separate trials would result in delay, inconvenience, and added expense to the parties and to the court."[33] Here, although AKH and the related entities' conduct after 2013 was temporally separate from the original dispute, it was in furtherance of avoiding a judgment on those original claims. Moreover, the Court agrees with UUIC that requiring it to file a subsequent lawsuit to allege these claims runs counter to the purpose of Rule 20 to avoid multiple lawsuits. Given that the parties have not yet established a pretrial order or summary judgment deadline, the Court finds that adding the proposed new claims and parties at this juncture would promote trial convenience and avoid a potential second lawsuit. Finally, the Court is persuaded that these allegations are relevant to the existing punitive damages claim against AKH. There will be overlapping proof and duplication of testimony as to the financial transfers that form the basis of UUIC's new claims.

These new parties are no strangers to this litigation. UUIC has set forth in detail in the proposed amended counterclaim the lengths to which AKH and its owners have attempted to shield AKH from liability since this suit was filed. If true, the allegations show that they looted AKH after this lawsuit was filed, created new corporate entities to hold all its assets, and rendered it essentially a shell corporation. UUIC alleges that the funds of these actors are commingled and that they lack corporate records to document the many transfers that have

---

[32]*Id.* (quoting *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir.1974)).

[33]*Id.* (quoting 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1653).

occurred since 2013.  The Andonians have been intimately involved in this lawsuit from its inception as co-owners of AKH, and UUIC alleges that they created the new corporate entities for the express purpose of avoiding paying a judgment in this matter.  Under these circumstances, and construing Rule 20 broadly as it must, the Court finds UUIC's motion for leave to amend and add parties should be granted.

Considering AKH's troubling conduct in this litigation so far, the Court would be remiss if it did not address the possibility that AKH may attempt to further transfer assets and create new alter egos between the time of this Order and any judgment that may be issued.  The Court has formulated a combination of amendment and sanctions to provide UUIC a fair opportunity to litigate all its related claims, and to deter AKH from continuing the course of conduct documented in the lengthy case record thus far.  AKH is reminded of its continuing obligation to supplement its discovery responses based on its financial condition under Rule 26(e).  If similar conduct is brought to this Court's attention before this case can be heard on the merits and tried, AKH is warned that amendment will not be warranted because the Court will be inclined to impose a much harsher sanction, up to and including dismissal of its claims and judgment in favor of UUIC on its claims.

### III.    Sanctions

The Court turns to AKH's objection to Judge Gale's recommendation in the November 14 Order that this Court provide an adverse inference instruction to the finder of fact if punitive damages are awarded to consider AKH's net worth unlimited for purposes of evaluating the amount of punitive damages.  Judge Gale recommends that the instruction be tailored to the case

under the applicable law and that AKH should not be permitted to rebut that consideration by evidence or argument.[34]

Because this portion of Judge Gale's Order is a recommended disposition, the Court must consider timely objections by AKH de novo, and "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."[35]   AKH objects that Judge Gale's recommended adverse inference instruction violates its right to due process.

Under California law, which the parties apparently stipulated would apply to UUIC's tort claims that form the basis of the request for punitive damages,[36] the wealth of the defendant is a relevant factor in determining the appropriate amount of punitive damages.[37]   Additionally, when a later court reviews a punitive damages award to determine whether it was excessive as a matter of law, the Court must be fully informed about the financial condition of the defendant.[38]   This is because the wealth of the defendant is directly relevant to determine whether the award will deter future conduct, or instead whether "in light of the defendant's wealth and the gravity of the particular act, [it] exceeds the level necessary to properly punish and deter."[39]

Also, the Due Process Clause of the Fourteenth Amendment prohibits overly excessive punitive damage awards.[40]   The Supreme Court has counseled that:

> Jury instructions typically leave the jury with wide discretion in choosing amounts, and the presentation of evidence of a defendant's net worth creates the potential that juries will use their

---

[34]Doc. 501 at 45–46.

[35]Fed. R. Civ. P. 72(b)(3).

[36]Doc. 506-1.

[37]*Neal v. Farmers Ins. Exch.*, 582 P.2d 980, 990 (Cal. 1978).

[38]*Adams v. Murakami*, 813 P.2d 1348, 1350–51 (Cal. 1991).

[39]*Id.* (quoting *Neal*, 582 P.2d at 990).

[40]*State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 416–17 (2003).

> verdicts to express biases against big businesses, particularly those without strong local presences." Our concerns are heightened when the decisionmaker is presented, as we shall discuss, with evidence that has little bearing as to the amount of punitive damages that should be awarded. Vague instructions, or those that merely inform the jury to avoid "passion or prejudice," do little to aid the decisionmaker in its task of assigning appropriate weight to evidence that is relevant and evidence that is tangential or only inflammatory.[41]

The Court shares AKH's concerns about the due process implications of a jury instruction that dictates a finding of unlimited net worth based on this language in the *State Farm* case. While it is true that the recommended instruction would only apply if the factfinder awarded punitive damages in the first instance, once read, it would encourage the jury to render an award based on passion or prejudice, potentially violating the Fourteenth Amendment.

The Court instead modifies Judge Gale's recommended disposition and agrees to provide adverse inference instructions that the jury may draw a negative inference for purposes of punitive damages from the fact that AKH withheld or obfuscated information that it moved or transferred all its assets out of AKH to avoid liability or a damages award in this case. Moreover, if the jury finds in favor of UUIC on its fraud claims, and if it finds in favor of UUIC on the alter ego claim, the Court will further instruct the jury that in setting the amount of punitive damages against AKH, it may consider the combined net worth of all counter-defendants when it considers the wealth of the defendant. The Court believes that these adverse inference instructions,[42] coupled with UUIC's ability to name AKH's alleged alter egos and argue a fraudulent conveyance theory, effectively serve to sanction AKH for the violations identified by Judge Gale and provide proportionate relief to UUIC for AKH's misconduct.

---

[41]*Id.* at 417–18 (quoting *Honda Motor Co. v. Orberg*, 512 U.S. 415, 432 (1994)) (citations omitted).

[42]These are in addition to the adverse inference instruction already recommended as to another issue, set forth in Judge Gale's January 29, 2016 Order on sanctions. Doc. 375, adopted by Doc. 400.

**IT IS THEREFORE ORDERED BY THE COURT** that UUIC's Motion for Review of Magistrate Judge Gale's October 24, 2017 Order (Doc. 498) is **granted**. UUIC shall file its proposed Fifth Amended Answer and Counterclaim forthwith. The parties shall be allowed an additional period of no longer than six (6) weeks to conduct discovery on the new claims alleged in the Fifth Amended Answer and Counterclaim. The scope of permissible discovery will be set forth by the Court in a subsequent order. Any motion to dismiss these new claims or parties for lack of jurisdiction shall be filed no later than thirty days after service on the new parties. Responses are due fourteen (14) days after the motion; replies are due seven (7) days after service of the response. These briefs shall be limited to ten (10) pages in length. This case can now move forward with the setting of a pretrial conference, at Judge Gale's discretion.

**IT IS FURTHER ODERED** that AKH's Objection to Magistrate Judge Gale's Order Dated November 24, 2017 (Doc. 501) is **granted in part**. The Court modifies the recommended adverse inference instructions as set forth in this Order.

**IT IS SO ORDERED.**

Dated: April 30, 2018

<div style="margin-left:40%">

S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE

</div>