**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| AKH COMPANY, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>UNIVERSAL UNDERWRITERS INSURANCE CO.,<br><br>    Defendant,<br><br>and<br><br>UNIVERSAL UNDERWRITERS INSURANCE CO.,<br><br>    Counter-Claimant<br><br>v.<br><br>AKH COMPANY, INC., ANDONIAN ENTERPRISES, INC., 55, INC., TIRENETWORK GROUP, INC., TRADE CO., LLC, ANDY ANDONIAN, AND HRATCH ANDONIAN,<br><br>    Counter-Defendants. | Case No. 13-2003-JAR-KGG |

## MEMORANDUM AND ORDER

Before the Court is Counter-Defendants Andonian Enterprises, Inc., 55, Inc., TireNetwork Group, Inc., Andy Andonian, Hratch Andonian, and Trade Co., LLC's Motion for Reconsideration of Memorandum and Order Regarding Motion for Sanctions (Doc. 646). The motion is fully briefed and the Court is prepared to rule. As described more fully below, the Court grants in part the motion by supplementing its March 19, 2019 Memorandum and Order

with more specific findings as to the movants, and makes clear that its sanctions order does not apply to Trade Co., LLC.

## I. Background

The Court incorporates by reference the relevant background information set forth in its March 19, 2019 Memorandum and Order granting in part Defendant/Counterclaimant Universal Underwriters Insurance Company's ("UUIC") motion for sanctions, and supplements that background information as follows.

On April 30, 2018, after five years of litigation between UUIC and Plaintiff/Counter-Defendant AKH, Inc., this Court granted UUIC's motion to amend its counterclaim to add Counter-Defendants Andy and Hratch Andonian, 55, Inc., TireNetwork Group, Inc. ("TireNetwork"), and Andonian Enterprises, Inc. ("AEI"), and to add counterclaims against AKH and these new parties for fraudulent conveyance and alter-ego liability.[1] The motion was granted upon a showing by UUIC that AKH and its owners, Andy and Hratch Andonian, attempted to shield AKH from liability after this suit was filed by transferring AKH's assets to themselves, or to newly created corporate entities that are each owned by one of the Andonians, rendering AKH a shell corporation. UUIC further alleges that the Counter-Defendants' funds are commingled and that they lack corporate records to document the many transfers between them that have occurred since 2013. The Amended Counterclaim was filed on May 2, 2018. On June 5, 2018, new counsel entered appearances on behalf of AKH. On June 22, 2018 and July 2, 2018, that same counsel appeared at a telephonic scheduling conference before Magistrate Judge Kenneth Gale on behalf of the new Counter-Defendants.[2]

---

[1]Doc. 514.
[2]Doc. 539.

The newly added Counter-Defendants filed a motion to dismiss for lack of personal jurisdiction, and the Court fast-tracked the briefing and decision on that motion to avoid any further delay in this case. On August 29, 2018, the Court denied the motion to dismiss.[3] Discovery was not stayed while this motion was pending.[4] Judge Gale set an initial disclosure deadline of July 20, 2018.[5] Supplemental disclosures under Fed. R. Civ. P. 26(e) were to be served forty days before the discovery deadline.[6] The Scheduling Order set a discovery deadline of November 2, 2018; by stipulation of the parties, that date was eventually extended to February 13, 2019.[7]

On July 24, 2018, UUIC issued its First Request for Production ("RFP") to the newly added Counter-Defendants, which included requests for net-worth documents from 2011 to the present, and for documents sufficient to show the value or worth of any transfers between AKH and each Counter-Defendant.[8] UUIC also issued a Sixth set of RPFs to AKH that included requests for net worth and transfer information.[9] AKH provided its initial responses to the Sixth set of RFPs on August 23, 2018.[10] The other Counter-Defendants provided their initial responses to the First RFPs in early October 2018, soon after they filed their answers.[11]

---

[3] Doc. 553.

[4] The Counter-Defendants sought a stay while the Court decided the motion to dismiss, but that motion was rendered moot by the Court's August 29, 2018 ruling. Doc. 554.

[5] Doc. 539 at 3.

[6] *Id.*

[7] Doc. 574.

[8] *See* Docs. 610-1 through 610-5; 602-20.

[9] Doc. 602-20.

[10] Doc. 550.

[11] Docs. 570, 575.

In August 2018, UUIC noted in a letter to AKH that ledger and accounting software records were missing from AKH's production. And during phone calls in September and November 2018, UUIC asked AKH for a proposal by which AKH could produce summary information that would not require UUIC to review bank statements and canceled checks to determine net-worth and transfer information. The Counter-Defendants supplemented their responses to the First RFPs on November 29, 2018.[12] AKH supplemented its response to the Sixth Set of RFPs on December 17, 2018.[13]

Counsel for UUIC sent a letter to Counter-Defendants' counsel on December 21, 2018, addressing, *inter alia*, AKH's supplemental responses and objections to UUIC's sixth set of RFPs, and the other Counter-Defendants' supplemental responses and objections to UUIC's first set of RFPs. UUIC's counsel notified Counter-Defendants' counsel in this letter that certain documents recently produced by AKH contradicted AKH's longstanding claim that it did not have a ledger or accounting report that would allow UUIC to more easily determine check payees.[14] In addition to lacking a check ledger and deposit list for AKH, UUIC complained that the Counter-Defendants' production "made it difficult, if not impossible, for Universal to determine whether the Counter-Defendants have produced all checks associated with all of their bank accounts."[15] UUIC therefore requested a summary document for each bank account used by the new Counter-Defendants. Counsel for Counter-Defendants agreed to "produce a manual check register per your request," in a responsive letter dated January 7, 2019.

---

[12]Doc. 588.

[13]Doc. 591.

[14]Doc. 602-9.

[15]*Id.* at 3.

According to the certificates of service, AKH and the other Counter-Defendants supplemented their productions again on January 4, 2019.[16] UUIC represented in its motion for sanctions that on January 9 and 18, 2019, AKH produced for the first time, check registers for 2011 to 2018, and deposit lists for 2013 to 2018. UUIC argued that sanctions were warranted because this new production created even more questions, and now that discovery was effectively closed, it was unable to resolve the inconsistent and incomplete documentation through depositions or other follow-up discovery, causing substantial prejudice. In its motion, UUIC offered examples of these issues by submitting several of the check registers and deposit lists submitted by the new Counter-Defendants.

On March 19, 2019, this Court issued a Memorandum and Order granting in part UUIC's Motion for Sanctions. The Court agreed with UUIC that the Counter-Defendants' delay in producing their check ledgers and deposit lists constituted a discovery violation because those documents were responsive to multiple RFPs yet were not timely produced. In AKH's case, the Court found that the documents should have been produced as early as 2015.[17] The Court imposed the following sanctions on the Counter-Defendants for their delayed production: (1) payment of reasonable attorneys' fees and costs in litigating the motion, and the reasonable fees UUIC incurred retaining an expert to evaluate the bank statements and canceled checks, under Fed. R. Civ. P. 37(c)(1)(A); and (2) adverse-inference instructions that the Counter-Defendants failed to timely produce these records under Fed. R. Civ. P. 37(c)(1)(B), and that when determining punitive damages, fraudulent conveyance, and alter-ego liability, any

---

[16]Docs. 595–96.

[17]The Court's Order ruled on two other alleged discovery violations by AKH. Because the motion to reconsider does not challenge those rulings, the Court cabins its discussion to the issue of check ledgers and deposit lists.

inconsistencies in the check registers and deposit lists provided by the Counter-Defendants may be resolved in UUIC's favor.[18]

The new Counter-Defendants[19] move for reconsideration of the Court's adverse-inference instructions related to the check ledger and deposit list issue. They argue that the Court's adverse-inference findings apply to AKH only and thus the instructions should be modified by removing references to the new Counter-Defendants. UUIC added one more counter-defendant after discovery without objection, Trade Co., LLC.[20] The motion for sanctions does not apply to this Counter-Defendant given that it was not yet a party at the time UUIC filed its motion for sanctions.

**II.  Standard**

D. Kan. Rule 7.3(b) governs motions to reconsider non-dispositive orders, while Fed. R. Civ. P. 59 and 60 govern motions to reconsider dispositive orders.[21] Under D. Kan. Rule 7.3, a motion to reconsider a non-dispositive order must be based on: "(1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error or prevent manifest injustice."[22] "Thus, a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law."[23] Such a motion does not permit a losing party to rehash arguments previously addressed or to present new legal

---

[18]Doc. 628 at 33. The Court emphasizes its choice of the word "may" in this adverse-inference instruction. The jury will not be instructed that it must draw and adverse-inference, and Counter-Defendants are free to elicit testimony from witnesses that explain any inconsistencies and apparent omissions in their production.

[19]The Court's references to the "new Counter-Defendants" are to AEI, 55, Inc., TireNetwork, Andy Andonian, and Hratch Andonian.

[20]Docs. 612, 616–17.

[21]D. Kan. R. 7.3; *Coffeyville Res. Ref. & Mktg., LLC v. Liberty Surplus Ins. Corp.*, 748 F. Supp. 2d 1261, 1264 (D. Kan. 2010).

[22]D. Kan. R. 7.3(b). In their motion, Counter-Defendants challenge only a non-dispositive sanction—the scope of one of the Court's adverse inference rulings.

[23]*Id.* (citing Fed. R. App. P. 40(a)(2)).

theories or facts that could have been raised earlier.[24] A party's failure to present its strongest case in the first instance does not entitle it to a second chance in the form of a motion to reconsider.[25] Whether to grant a motion to reconsider is left to the court's discretion.[26]

## II. Discussion

The new Counter-Defendants argue that the Court clearly erred in applying the adverse inference rule to them. They maintain that while the Court's predicate findings were specific to AKH, it did not make specific enough findings to support adverse-inference instructions as to them. They argue that unlike AKH, they timely produced their check registers and deposit lists within four months of filing their answers, and that the Court erred by premising adverse inference instructions on AKH's behavior prior their addition to this case. UUIC responds that the Court made sufficient findings to trigger the adverse-inference rule as to all Counter-Defendants.

As described more fully below, the Court finds no clear error in its adverse inference instructions. However, the Court grants reconsideration to supplement the record with more specific findings as to the new Counter-Defendants. The Court also clarifies that its adverse-inference instructions do not apply to Trade Co., LLC, which had not yet been added as a Counter-Defendant at the time the motion for sanctions was filed.

---

[24]*Steele v. Young*, 11 F.3d 1518, 1520 n.1 (10th Cir.1993); *see also* Charles Alan Wright, et al., Federal Practice & Procedure: Civil 2d § 2810.1 (footnotes omitted) ("The Rule 59(e) motion may not be used . . . to raise arguments or present evidence that could have been raised prior to the entry of judgment.").

[25]*BHC Dev., L.C. v. Baily Gaming, Inc.*, 985 F. Supp. 2d 1276, 1295–96 (D. Kan. 2013).

[26]*Coffeyville Res. Refining & Mktg., LLC*., 748 F. Supp. 2d at 1264 (citing *In re Motor Fuel Temp. Sales Practices Litig.*, 707 F. Supp. 2d 1145, 1166 (D. Kan. 2010)).

### A. Violation

As to the discovery violation, the Court emphasized in its prior order that AKH delayed producing its check ledgers and deposit lists that were responsive to a RFP that was originally served back in 2015. The new Counter-Defendants argue that unlike AKH, their production was timely because they produced the check ledgers and deposit lists by the post-amendment supplementation deadline. According to the certificate of service filed by the Counter-Defendants, their most recent Rule 26(e) supplemental production was on January 4, 2019—exactly forty days before the discovery deadline, which was the deadline for supplementing under Rule 26(e). Only after Counter-Defendants finally supplemented their productions in January, after UUIC's letter confronting all Counter-Defendants about their failure to respond to various discovery requests, was it apparent to UUIC that the Counter-Defendants' documentation was inconsistent and incomplete. Moreover, while the issue of alter-ego liability is an open legal question in this case, common counsel for the Counter-Defendants were certainly aware of AKH's history of denying the existence of summary financial documents, and of UUIC's position that such documents were responsive to the net-worth and transfer RFPs. It is simply disingenuous to suggest that the Counter-Defendants were not aware that the check ledgers and deposit lists would be responsive to UUIC's First RFPs at the time of their first two productions.

Moreover, the Court's finding of a discovery violation by the new Counter-Defendants was not limited to untimely production. The Court also credited UUIC's argument that their check ledgers and deposit lists were incomplete. The new Counter-Defendants responded to these net worth and transfer RFPs by objecting that they were overly broad and stating that AKH had previously produced responsive documents. The responses do not indicate that the new

Counter-Defendants produced any responsive documents to those requests, in contravention of Fed. R. Civ. P. 34(b)(2)(C).

The discovery violation identified by the Court in its prior order certainly involved the untimely production of these documents, particularly with respect to AKH, but the Counter-Defendants' incomplete production amounted to a violation of Rule 37(c)(1), as well. In finding discovery violations, the Court rejected the Counter-Defendants' argument that their more than 21,000-page production regarding the flow of money among themselves could not possibly be insufficient given its volume, and because the documents were produced as they are kept in the ordinary course of business. Again, the Court incorporated by reference the many issues identified by UUIC in its motion for sanctions. These issues involve inconsistencies and questions of completeness with respect to not just AKH's summary documents, but the Counter-Defendants' documents as well.[27] In sum, to the extent the Court was not clear in its March 19 Order, it now clarifies: the Counter-Defendants' failed to produce responsive documents to UUIC's First RFPs at the time they were initially due. While they met the supplementation deadline, UUIC was able to demonstrate that the supplementation was incomplete and internally inconsistent.

**B.     Sanctions**

In determining whether adverse-inference instructions were appropriate, the Court considered whether the following factors were present:

> (1) it appears that the documentary evidence exists or existed; (2) the suppressing party has possession or control of the evidence; (3) the evidence is available to the suppressing party, but not to the

---

[27]Doc. 628 at 7 (listing issues, including the fact that several of the new Counter-Defendants' check registers and deposit lists are either missing or incomplete, and that they are inconsistent with one another).

party seeking production; (4) it appears that there has been actual suppression or withholding of evidence.[28]

The Court also considered whether the parties acted in bad faith.[29]

To the extent the Court's findings on these factors were not specific to the new Counter-Defendants, it supplements those findings as follows. The RFPs issued by UUIC to all Counter-Defendants sought net-worth and transfer documents. The Counter-Defendants objected to the net-worth and transfer requests as overly broad and declined to produce responsive documents other than those previously produced by AKH, acknowledging the interrelatedness of the parties, at least with respect to these categories of documents.[30] They never denied that the documents existed, or that the Counter-Defendants had control of the evidence. In fact, eventually AKH relied on the other Counter-Defendants' bank records to explain how much the Counter-Defendants paid one another for various assets at issue in this case.[31] There is no evidence that the Counter-Defendants' check ledgers and deposit lists were otherwise available to UUIC.

The Court also finds that there was actual suppression or withholding of evidence. In October 2018, the new Counter-Defendants' counsel was aware that almost identical RFPs had been directed to AKH, and that UUIC had repeatedly clarified over a several-year period that it sought summary bank account information as part of these requests. Yet, those documents were not produced with the new Counter-Defendants' initial or first supplemental responses. By December 21, 2018—several months after the RFP responses were due—UUIC had determined

---

[28]*Gilbert v. Cosco Inc.*, 989 F.2d 399, 406 (10th Cir. 1993) (quoting *Evans v. Robbins*, 897 F.2d 966, 970 (8th Cir.1990)).

[29]Doc. 628 at 10; *cf. Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1149–50 (10th Cir. 2009) (requiring a showing of bad faith to support adverse-inference instruction for spoliation of evidence).

[30]*See, e.g.*, Doc. 610-1 at 2–3, 6 (October 1, 2018 AEI response).

[31]*See* Doc. 602 at 8–9 (quoting Doc. 602-16, AKH's Supplemental Resp. and Obj. to UUIC's Third Set of Interrogatories to AKH).

that check images were produced by all Counter-Defendants in a manner that "made it difficult, if not impossible, for Universal to determine whether the Counter-Defendants have produced all checks associated with all of their bank accounts," and requested clarifying, summary information.[32] In January 2019, AKH and the Counter-Defendants supplemented their productions with the check registers and deposit lists, causing UUIC to identify the inconsistencies and incomplete productions that triggered in part its motion for sanctions.

By the time AKH's and the Counter-Defendants' summary documents were finally produced, it was too late for UUIC to conduct follow-up discovery to resolve the inconsistencies between AKH's and the new Counter-Defendants' productions. The check ledgers and deposit lists existed, and the Counter-Defendants possessed that information in October 2018 yet did not make the documents available to UUIC until January 2019, after UUIC demanded these documents by letter as responsive to the RFPs. Notably, the Counter-Defendants do not claim in their motion for reconsideration that the January 2019 production was complete; they do not address UUIC's claims that certain check registers and deposit lists are missing. As the Court stated in its March 19, 2018 Order,

> The Counter-Defendants explain the different systems they used to maintain these lists over the years but fail to explain how these different systems explain the many issues identified by UUIC in its motion. For example, how does the fact that the entities maintained check registers in different software systems explain the wholesale failure to produce those check registers for certain years? As UUIC effectively sets forth in its briefing, this is but one of many questions raised by this late production, after years of AKH denying that such documents existed at all. Importantly, the biggest question raised by this production—the inconsistencies between the various Counter-Defendants' financial documents—is not addressed at all by the Counter-Defendants' response brief.[33]

---

[32]Doc. 602-9 at 4.

[33]Doc. 628 at 9.

The Court disagrees with the Counter-Defendants' characterization that it "completely ignore[d] any separation between AKH and Counter-Defendants" in making its adverse-inference findings.[34] While it is true that the ultimate issue of alter-ego liability is an open legal question in this case, it is undisputed that the Counter-Defendant business entities are owned by the same two individuals—Counter-Defendants Andy and Hratch Andonian—that own AKH. And it is undisputed that there were many transfers of assets between these companies after the original Complaint was filed by AKH in 2013 that form the basis for UUIC's counterclaims. The Counter-Defendants are represented by common counsel. There was no confusion about the fact that net-worth and transfer documents would be highly relevant to UUIC's counterclaims, that UUIC sought summaries of these parties' bank account information, that Judge Gale had previously granted a motion to compel such information with respect to AKH, and these documents were indeed requested as part of UUIC's First RFPs to the new parties. The Court finds that the Counter-Defendants withheld their complete check ledgers and deposit lists, like AKH, in bad faith.

For these reasons, the Court finds no error in sanctioning the new Counter-Defendants by providing adverse-inference instructions to the jury that all Counter-Defendants except for Trade Co., LLC failed to timely produce check ledgers and deposit lists, and that for purposes of determining punitive damages, fraudulent conveyance, and alter-ego liability, any inconsistencies in the check registers and deposit lists provided by the Counter-Defendants other than Trade Co., LLC may be resolved in UUIC's favor.

**IT IS THEREFORE ORDERED BY THE COURT** that the Counter-Defendants' Motion for Reconsideration (Doc. 646) is **granted in part and denied in part**. The Court

---

[34]Doc. 646 at 3.

supplements its findings in the March 19, 2019 Order as described in this opinion and makes clear that its sanction does not apply to Trade Co., LLC. The motion is otherwise denied.

**IT IS SO ORDERED.**

Dated: May 29, 2019

S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE
